<table>
<tr><td>

Circuit Civil, #87<br>
901 Main St., Ste. 201<br>
Phone: (865) 992-5493

</td><td>

# STATE OF TENNESSEE CIVIL SUMMONS
page 1 of 1

</td><td>

Case Number

**3114**

</td></tr>
</table>

### LEWIS, et al v. ALMEIDA, et al

Served On:

| CARMAX . . . , INC | c/o Corporation Service Company, 2908 Poston Ave., Nashville, TN 37203-1312. |
|---|---|

You are hereby summoned to defend a civil action filed against you in Circuit Civil, Union County, Tennessee. Your defense must be made within thirty (30) days from the date this summons is served upon you. You are directed to file your defense with the clerk of the court and send a copy to the plaintiff's attorney at the address listed below. If you fail to defend this action by the required date, judgment by default may be rendered against you for the relief sought in the complaint.

Issued: **10/29/13**

Clerk / Deputy Clerk – Circuit Civil

Attorney for Plaintiff:  Richard L. Lewis
P. O. Box 365, Maynardville, TN 37807

## NOTICE OF PERSONAL PROPERTY EXEMPTION

TO THE DEFENDANT(S): Tennessee law provides a ten thousand dollar ($10,000) personal property exemption as well as a homestead exemption from execution or seizure to satisfy a judgment. The amount of the homestead exemption depends upon your age and the other factors which are listed in TCA §26-2-301. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed: these include items of necessary wearing apparel (clothing) for your self and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to execute it, you may wish to seek the counsel of a lawyer. Please state file number on list.

Mail list to    Barbara Williams, Circuit Civil Clerk, Union County

901 Main Street, Suite 201, Maynardville, TN 37807

## CERTIFICATION (IF APPLICABLE)

I, Barbara Williams, Clerk of Union County do certify this to be a true and correct copy of the original summons issued in this case.

Date: _____

Clerk / Deputy Clerk – Circuit Civil

OFFICER'S RETURN: Please execute this summons and make your return within ninety (90) days of issuance as provided by law.

I certify that I have served this summons together with the complaint as follows:

Date: _____                                      By: _____

RETURN ON SERVICE OF SUMMONS BY MAIL: I hereby certify and return that on _____ I sent postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in the above styled case, to the defendant _____ On _____ I received the return receipt, which had been signed by _____ on _____. The return receipt is attached to this original summons to be filed by the Court Clerk.

Date: _____

Notary Public / Deputy Clerk (Comm. Expires _____ )

Signature of Plaintiff _____

Plaintiff's Attorney (or Person Authorized to Serve Process)

**(Attach return receipt on back)**

*ADA: If you need assistance or accommodations because of a disability, please call **Ann Dyer at** ADA Coordinator, at **(865) 992-3061**.*

*Rev. 8/05/10*

COPY

FILED

OCT 29 2013

CIRCUIT COURT
CLERK

1  RICHARD LEWIS, in *PROPRIA PERSONA*
2  and *EX REL* as a Private Attorney General
   For the Citizens of Tennessee and the
3  People of the United States of America
   P. O. Box 365
4  Maynardville, TN 37807
5  For Plaintiffs:
   RICHARD LEWIS;
6  RICHARD L. LEWIS III;
7  LORRAINE K. LEWIS;
   SCOTT E. LEWIS;
8  MINOR CHILD NO. 1;
   MINOR CHILD NO. 2;
9  MINOR CHILD NO. 3;
   MINOR CHILD NO. 4;
10 NELLE S. PAEGEL;
11 THOMAS W. PAEGEL;
   THOMAS W.V. PAEGEL;
12 THE BODY COMPANY SPORTS, INC.

13

14  EIGHTH JUDICIAL DISTRICT OF TENNESSEE
    UNION COUNTY CIRCUIT COURT AT MAYNARDVILLE

15  RICHARD LEWIS, an individual in *propria*   ) JURY DEMAND
16  *persona* and *ex rel* as Private Attorney General; )
    LORRAINE K. LEWIS, an individual;          ) CASE DOCKET NO: 3114
17  RICHARD L. LEWIS III, an individual;       )
18  SCOTT E. LEWIS, an individual;             ) THIS CASE IS TO BE CLASSIFIED
    MINOR CHILD 1,  age 6, an individual;      ) AS "COMPLEX"
19  MINOR CHILD 2,  age 8, an individual;      )
    MINOR CHILD 3,  age 3, an individual;      ) UNLIMITED CIVIL; EXHIBITS 1-95;
20  MINOR CHILD 4,  age 7, an individual;      ) REQUEST FOR GAG ORDER;
21  NELLE, Esq., a licensed California attorney and ) MOTION FOR PRELIMINARY
    individual;                                ) INJUNCTION
22  THOMAS W. PAEGEL, an individual;           )
    THOMAS W.V. PAEGEL, an individual;         ) JUDGE: Hon. John D. McAfee
23  THE BODY COMPANY SPORTS, INC, a            ) HRG. DATE:
24  Nevada corporation;                        ) TIME:
            and DOES 1-300 inclusive.          )
25                          Plaintiffs         ) COMPLAINT FOR  DAMAGES FOR
26  v.                                         ) THE FOLLOWING CAUSES OF
                                               ) ACTION:
27  PETE E. ALMEIDA, an individual;            ) 1) OBSTRUCTION OF JUSTICE
                                               )    (INCLUDING, BUT NOT
28  AMERICAN EXPRESS TRAVEL RELATED            )    LIMITED TO: JUDICIAL

COMPLAINT                                                          Page 1

| | |
|---|---|
| SERVICES COMPANY, INC., a New York corporation and their agents and Affiliates; | ) ) | RACKETEERING; JUDICIAL BIAS; COLLUSION; FAILING TO |
| BIBI BAC, mediator in Charlotte County, Florida; | ) ) ) | ADJUDICATE, TECHNOLOGY HACKING, WIRE TAPPING ATTEMPTED MURDER; |
| JEAN-RENE BASLE, San Bernardino County Counsel; | ) ) ) ) | DUE PROCESS; CONSPIRACY; PERJURY; BRIBERY; DEFAMATION; FALSE REPORTING; TAX FRAUD; ASSAULT; ELDER |

1) RACKETEERING; JUDICIAL BIAS; COLLUSION; FAILING TO ADJUDICATE, TECHNOLOGY HACKING, WIRE TAPPING ATTEMPTED MURDER; DUE PROCESS; CONSPIRACY; PERJURY; BRIBERY; DEFAMATION; FALSE REPORTING; TAX FRAUD; ASSAULT; ELDER ABUSE; EXTRINSIC FRAUD)

SERVICES COMPANY, INC., a New York corporation and their agents and Affiliates;

BIBI BAC, mediator in Charlotte County, Florida;

JEAN-RENE BASLE, San Bernardino County Counsel;

BEVERLY HILLS POLICE DEPARTMENT, the police department of the City of Beverly Hills;

WILLIAM BEATY, an individual;

CORBIN BLEU, an individual;

THOMAS JAMES BORRIS, an individual and Orange County Superior Court Presiding Judge, California;

KENNETH GEORGE CAMPION, an individual and DBA: KENNETH G. CAMPION, a California professional corporation;

CARMAX AUTO SUPERSTORES, INC, AKA: CARMAX AUTO SUPERSTORES SERVICES, INC., a Virginia Corporation;

HON. LISA HART COLE, an individual and Los Angeles Superior Court Judge, California;

LYDIA CORNELL AKA: LYDIA CORNELL KORNILOFF, and unlicensed DBAs: LYDIA CORNELL ENTERPRISES; GODSHOTS™ L.L.C. (unregistered as a trademark or L.L.C.); GODSHOTS.ORG; RECOVERY GODSHOTS; LC ENTERTAINMENT GROUP; VENUS FILMS AND PRODUCTIONS; MILITARY GODSHOTS, LYDIA CORNELL KORNILOFF VENUS FILMS AND PRODUCTIONS; and all other unlicensed and unregistered DBAs;

MEKI COX, an individual; AKA MEKI L. COX, MEKI LYNN COX, MERI LYNN COX, MEKI C. JAKLITCH, MEKI JAKLITCH, MEKI L.

2) GRAND THEFT BY FALSE PRETENSES AND FINANCIAL ABUSE OF ELDERLY AND DISABLED
3) CONSPIRACY UNDER RICO
4) EXTORTION, ATTEMPTED EXTORTION AND BLACKMAIL
5) CREDIT/DEBIT CARD FRAUD AND PHISHING
6) CHILD ENDANGERMENT AND CHILD ABUSE
7) UNFAIR AND DECEPTIVE ACTS OR PRACTICES IN COMMERCE.
8) FRAUD BY INTENTIONAL OR FRAUDULENT MISREPRESENTATION AND FALSELY VESTED BANK ACCOUNTS
9) FRAUD BY NEGLIGENT MISREPRESENTATION
10) FRAUD BY FRAUDULENT INDUCEMENT TO ENTER INTO CONTRACT
11) INDUCEMENT TO COMMIT FRAUD
12) CONVERSION
13) GRAND LARCENY THEFT OF PERSONAL PROPERTY
14) GRAND THEFT OF MATERIAL
15) UNFAIR COMPETITION BY TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATION- SHIP; PROCUREMENT OF BREACH OF CONTRACT
16) UNAUTHORIZED PRACTICE OF LAW
17) BREACH OF CONTRACT
18) BREACH OF COVENANT OF

COPY

COXJAKLITSCH, MEKI SELMAN and
unlicensed DBAs: LYRIX ENTERPRISES;
LYRIXENTERPRISES.COM; EVENT
STAFFING PROFESSIONALS;

GEORGE DEL JUNCO, an individual and
unlicensed DBA: GREEN NETWORK;

ELIDA DEL TORO, an individual and
unlicensed DBA: GREEN NETWORK;

LEE SMALLEY EDMON, an individual and Los
Angeles Superior Court, California (formerly
Presiding Judge);

eSTARHD, an internet business of unknown
derivation;

HANY FANGARY, an individual;

FARMER'S INSURANCE COMPANY, INC., a
California corporation, AKA FARMERS;
FARMERS INSURANCE GROUP;

DAVID FLEMING, an individual and officer of
unlicensed DBA: eSTAR.TV

JAMES HILLIS FORD, an individual;

JACK W. GOLDEN, County Counsel of Orange
County, California;

(ALLEN) KELSEY GRAMMER, an individual
and DBAs: GRAMMNET, INC., a California
corporation; GRAMMNET PRODUCTIONS, a
California corporation; GRAMMNET NH
PRODUCTIONS, a California corporation;
GRAMMNET NH, INC., California corporation;
GRAMNET GLOBAL, LLC, a California
limited liability company; SOLSTICE
PROPERTIES, a California corporation;
WORLD CUP COMEDY, LLC, a California
Limited liability company; ASTERISK, LLC, a
California limited liability company (canceled);
C2CHANNEL CHANNEL, LLC, a California
limited liability company; G3 MEDIA, LLC, a

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

GOOD FAITH AND FAIR DEALING
19) INTENTIONAL INTERFERENCE
WITH CONTRACTUAL
RELATIONSHIPS
20) FRAUD AND ABUSE INCLUDING
ELDERLY ABUSE VIA THE
INTERNET;COMPUTER FRAUD
AND ABUSE; ABUSE OF THE
DISABLED
21) INTERNET PIRACY
22) NEGLIGENCE/GROSS
NEGLIGENCE
23) GRAND THEFT BY
EMBEZZLEMENT
24) FALSE LIGHT INVASION OF
PRIVACY, PHISHING
25) COMPUTER FRAUD AND ABUSE,
INTERNET HACKING, PHISHING,
SPOOFING, AND CYBER-CRIMES
26) HARASSMENT AND INTENTIONAL
INFLICTION OF EMOTIONAL
DISTRESS
27) FILING FALSE REPORTS WITH
GOVERNMENT AGENCIES
28) INSURANCE BAD FAITH
29) BUSINESS INTERFERENCE
30) DEFAMATION
31) VIOLATIONS OF STATE AND
FEDERAL RULES OF DISCOVERY
32) INCOME TAX FRAUD AND
EVASION
33) MONEYLAUNDERING
34) COPYRIGHT INFRINGEMENT
35) COPYRIGHT PIRACY
36) FAILURE TO PROPERLY
SUPERVISE/SUBORNATION OF
ILLEGAL ACTS
37) FAILURE TO SELF-REPORT
38) ASSAULT
39) FALSE IMPRISONMENT/ARREST
40) PREDATORY LENDING/USURY

COMPENSATORY DAMAGES AND
ATTORNEYS FEES AND COSTS
(TREBLED); PUNITIVE DAMAGES

COPY

| | |
|---|---|
| California limited liability company; NELSON PAGE ENTERTAINMENT, INC., a California corporation; KELSEY GRAMMER CHARITABLE FOUNDATION a California corporation (suspended); GRAMMNET NH, INC., a California corporation; | ) REQUESTS FOR DECLARATORY ) RELIEF: CONSTRUCTIVE TRUST and ) PRELIMINARY INJUNCTION; ) ) 18 *U.S.C.* §§1961-1968, *et seq.*; FTC Regs.; ) HOBBS Act 18 *U.S.C.* §1951; 18 *U.S.C.* |

ARTHUR HADDOCK, an individual;

RAYMOND HAIGHT, III, an individual and Judge of the San Bernardino Superior Court, California;

PAUL HAYELAND, an individual; AKA PAUL HAYLAND, PAUL AYELAND, PAUL AYLAND, PAUL CORNELL; and unlicensed DBAs: SPORTS ICON ENTERTAINMENT; GODSHOTS.TV, SPORTS ICON IMAGES; GSAXE.COM;

IVAN JACKSON, director, treasurer, and secretary of TSOFTNET, INC;

MARTHA KEHOE, an individual;

CASEY KEITH, an individual and unlicensed DBA: AV COMPUTER DOCTOR;

S. MARTIN KELETI, an individual;

STEPHANIE M. KING an individual and license DBAs: STEPHANIE KING, D.C.; STEPHANIE KING, INC., a California Corporation; and unlicensed DBAs: BODY SLIMMING EXPERTS; ADVANCED HEALTH CONCEPTS; DEDICATEDTOHEALTH.COM;

JOHN KRATTI, County Counsel for Los Angeles County, California;

MARYLAND CASUALTY CO., a Maryland Corporation;

MASTERCARD, INC., a New York corporation; AKA MASTERCARD INTERNATIONAL;

§§201, 202-209; The Federal Extortion and/ or Blackmail Act, 18 *U.S.C.* §§ 872, 875-877; The Identity Theft Enforcement and Restitution Act of 2008, 18 *U.S.C.* §1030; Grand Larceny; Stalking 18 *U.S.C.* 2261A *et seq.*; Mail Fraud 18 *U.S.C.* § 1341; Wire Fraud 18 *U.S.C.* § 1343; Extortion 18 *U.S.C.* § 875; Americans with Disabilities Act of 1990, 42 *U.S.C.* § 12131; U.S.A. Patriot Act of 2001, ) 42 U.S.C § 5195; Homeland Security Act of 2002, 6 *U.S.C.* 101; 18 *U.S.C.* § 1956; 12 *U.S.C.* § 2605(e); (2)(A) and (e)(3), ABA Model Code of Judicial Conduct (CANONS); Model Rules of Attorney Conduct; 18 U.S.C. §§ 2261 *et seq.*, 2262, and 2265; 42 U.S.C. § 1983; T.C.A. § 39-12-201 et seq.; T.C.A. § 39-16-602 et seq.; T.C.A. § 39-16-705; T.C.A. § 39-1 602(b)(4); T.C.A. § 39-14-602(a); T.C.A. § 39-14-101; T.C.A. § 39-14-103 thru 105; T.C.A. § 39-12-201 et seq.; Moneylaundering T.C.A. § 39-14-903 et seq.; Gangs ACT; Tenn. Code § 39-14-112; Tenn. Code §106 (2007); T. C. A. § 39-14-118; Tenn. Code Ann. § 39-14-102(2); Tenn. Code Ann. § 39-14-102(3); Tenn. Code Ann. § 39-11-106(a)(9); Tenn. Code Ann. § 39-11-106(a)(26); Tenn. Code Ann. § 39-14-102(5); Tenn. Code Ann. § 39-11-106(a)(20); Tenn. Code Ann. § 39-11 -301(a)(2); Tenn. Code Ann. § 39-11-106(a)(18); Tenn. Code Ann. § 39-11-106 (a)(28); Tenn. Code Ann. § 39-11-106(a)(34); Tenn. Code Ann. § 39-14-102(10); Tenn. Code Ann. § 39-14-102(4); Tenn. Code Ann. § 39-11-106(a)(13); Tenn. Code Ann. § 39-14-105; Tenn. Code Ann. § 39-14-118(c)(1); Tenn. Code Ann. § 39-14-118(c)(2); T.P.I. – Crim. 4.01 (Attempt); ICAC Program; TCA 39-15-401; T.C.A. § 39-14-127; T.C.A. § 39-

COPY

| | |
|---|---|
| MERITUS PAYMENT SOLUTIONS, a credit card processor of unknown registration; | ) 14-127; §47-18-104; Uniform Deceptive ) Trade Practices Act No. §47-18-101 et seq.; ) Tennessee Consumer Protection Act of 1977 |
| ALLEN S. MILLER, an individual and all aliases and unlicensed DBAs: HITMAN PR; HITMANPR.COM; MILLER FAMILY TRUST; ADVANCED KINEMATIC SOLUTIONS; LABOR MEDICAL MANAGEMENT SYSTEMS; LMMS; | ) § 47-18-104.; FAC statutes for caregiving/ ) caregivers; 2010 Tennessee Code, Title 47, ) Uniform Deceptive Trade Practices Act No. ) §47-18-101 et seq.; Tennessee Consumer ) Protection Act of 1977 § 47-18-104; T.C.A. ) § 39-14-127; §47-18-104; Uniform Deceptive |
| THE MILNER GROUP, LLC, a revoked California limited liability company; | ) Trade Practices Act No. §47-18-101 et seq.; ) Tennessee Consumer Protection Act of 1977 ) § 47-18-104; FL statute for caregiving |
| PHILLIP MULLIGAN, an individual and officer of TSOFTNET, INC.; | ) §39.5085(2)(f); T.C.A. § 39-14-101; FTC ) Regulations; T.C.A. § 40-35-111; ) T.C.A. §§ 56-8-103 through 108; T.C.A. |
| ROBERT MELVIN NEWELL, JR., an individual; | ) § 47-50-109; Uniform Deceptive Trade ) Practices Act § 47-18-104 & 108 ) and Improper Conduct 23-3-103;Tennessee |
| BARBARA NIVEN, AKA Barbara Lee Buholz, an individual; and DBA: BARBARA NIVEN ENTERPRISES, INC., a California corporation; | ) Adult Protection Act of 1978, T.C.A CH. 6, ) PT. 1 §§ 71-6-101 and 120; Ariz. Revised ) Stat. §46-455; Fl. Stat. § 825.102;Ca. ) Welfare and Institutions Code § 15610.07; |
| JAN A. PLUIM, an individual and Judge of the Los Angeles County Superior Court, California (retired); | ) Ca. Code of Civ. Proc. § 527.6; T.C.A. § ) 71-6-120 et seq. Tenn. Adult Protection Act; ) Ca. Fair Political Practices Commission; ) Tenn. Code § 39-13-302; Consumer Credit |
| JAMES D. ROBERTS, an individual; | ) Protection Act (CCPA)and anti-usury laws; ) T.C.A. §56-7-105; T.C.A. § 39-12-101; ) T.C.A. § 39-12-102; T.C.A. § 39-12-103; |
| DAVID M. ROBINSON, an individual and DBAs: THE MILNER GROUP, LLC, THE JUSTICE FIRM, JUSTICE IMMIGRATION, JUSTICE SECURITIES; | ) T.C.A. § 39-13-302; T.C.A. § 39-13-304; ) T.C.A. § 39-14-903; T.C.A. § 39-17-315; ) T.C.A. § 39-17-309; T.C.A. § 39-24-120; ) ) T.C.A. § 39-14-105; T.C.A. § 39-14-602(a); ) T.C.A. § 39-11-118; T.C.A. § 39-16-602 et seq |
| MARK SCHWARTZ, an individual and Detective, City of Beverly Hills Police Department, California; | ) T.C.A. § 39-13-101 et seq; ) T.C.A. § 39-16-102; T.C.A. § 39-16-705; ) T.C.A. § 39-16-702; T.C.A. § 39-12-204; ) T.C.A. § 39-15-401 et seq; |
| RANDALL J. SHERMAN, an individual and Judge of Orange County Superior Court, California; | ) T.C.A. §39-15-101 ) ) ) |
| GENE SIMMONS, an individual and DBA: GENE SIMMONS AXE and unlicensed DBAs: AXE LTD, GSAXE; | ) ) ) ) |

MARSHA SLOUGH, an individual and
Presiding Judge of San Bernardino County
Superior Court, California;

STAROPOLY, LLC, a Nevada limited liability
company managed by TSOFTNET, INC
(revoked);

D'CARREY STELL, an individual

CINDY THOMAS, an individual and clerk of
Los Angeles Superior Court, California;

TSOFTNET, INC, a Nevada corporation;
TODHD, a subsidiary of TSOFTNET, INC, or
other company;

BARBARA VARGAS, an individual and clerk of
Los Angeles Superior Court, California;

ALEX VARONOS, AKA ALEX VARONAS,
ALEX ZARONOS, ALEX ZAMBONI, and all
unknown AKAs, an individual and officer of
VIEWPARTNER CORPORATION;

VIEWPARTNER CORPORATION, a Nevada
corporation;

EDWARD WALSH, an individual;

JAMES MICHAEL WELCH, Judge of
the San Bernardino Superior Court (retired);

WELLS FARGO BANK, LTD., a California
corporation and their agents and Affiliates;
WELLS FARGO SACRAMENTO; a California
company; WELLS FARGO AND COMPANY, a
California corporation; WELLS FARGO BANK
NATIONAL ASSOCIATION CALIFORNIA, a
Tennessee Corporation;

DAVID S. WESLEY, an individual and
Presiding Judge of Los Angeles Superior Court;

LLOYD WESTBROOK, an individual;

COPY

COMPLAINT

COPY

| | |
|---|---|
| 1 | KEITH G. WILEMAN, an individual; ) |
| 2 | ) |
| | CRAIG T. WORMLEY, an individual and ) |
| 3 | DBAs: THE MILNER GROUP, LLC; JUSTICE ) |
| | IMMIGRATION; THE JUSTICE FIRM; ) |
| 4 | ) |
| | XIAOYI YAO, an individual; ) |
| 5 | ) |
| 6 | ZURICH IN NORTH AMERICA, DBA: ) |
| | AMERICAN INSURANCE COMPANY, a ) |
| 7 | California corporation and all ) |
| | Agents, Affiliates, and Subsidiaries; ) |
| 8 | and DOES 1-300 INCLUSIVE, ) |
| | Defendants ) |
| 9 | ) |

## PARTIES

RICHARD LEWIS, P.O. Box 365, Maynardville, TN 37807.

LORRAINE K. LEWIS, address protected, contact RICHARD LEWIS at P.O. Box 365, Maynardville, TN 37807.

RICHARD L. LEWIS III, address protected, contact RICHARD LEWIS at P.O. Box 365, Maynardville, TN 37807.

SCOTT E. LEWIS, address protected, contact RICHARD LEWIS at P.O. Box 365, Maynardville, TN 37807.

MINOR CHILD 1, address protected, contact RICHARD LEWIS at P.O. Box 365, Maynardville, TN 37807.

MINOR CHILD 2, address protected, contact RICHARD LEWIS at P.O. Box 365, Maynardville, TN 37807.

MINOR CHILD 3, address protected, contact RICHARD LEWIS at P.O. Box 365, Maynardville, TN 37807.

MINOR CHILD 4, address protected, contact RICHARD LEWIS at P.O. Box 365, Maynardville, TN 37807.

NELLE S. PAEGEL, 231 S. Glendora Ave, Glendora, CA 91741.

THOMAS W. PAEGEL, 231 S. Glendora Ave, Glendora, CA 91741.

1  **THOMAS W. V. PAEGEL**, 231 S. Glendora Ave, Glendora, CA 91741.

2  **THE BODY COMPANY SPORTS, INC**, 231 S. Glendora Ave, Glendora, CA 91741.

3  **PETE E. ALMEIDA**, c/o Veatch Carlson, L.L.P., 700 S. Flower St., 22nd Fl., Los Angeles, CA

4  90017-4209.

5  **AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.**, c/o CT

6  Corporation System, 111 Eighth Avenue, New York, New York 10011.

7  **BIBI BAC**, Mediation Program, Administrative Office of the Courts, 20th Judicial Circuit of Florida,

8  1700 Monroe Street, Fort Myers, FL 33901.

9  **JEAN-RENE BASLE**, 385 N. Arrowhead Avenue, San Bernardino, CA 92415-0120.

10  **WILLIAM BEATY**, 81 Newport Ave., Santa Ana, CA 92705.

11  **BEVERLY HILLS POLICE DEPARTMENT**, c/o David Snowden, Chief of Police, 464 N.

12  Rexford Dr., Beverly Hills, CA 90210.

13  **CORBIN BLEU** c/o Neil E. Meyer, Stone Meyer, & Genow, 9665 Wilshire Boulevard Suite 510

14  Beverly Hills, CA 90212.

15  **THOMAS JAMES BORRIS**, Presiding Judge, Orange County Superior Court, 700 Civic Center

16  Drive West. Santa Ana, California 92701.

17  **CARMAX AUTO SUPERSTORES, INC**, c/o Corporation Service Company, 2908 Poston Ave.,

18  Nashville, TN 37203-1312.

19  **KENNETH GEORGE CAMPION and DBA**, 10419 Bogardus Avenue, Ste. 100, Whittier, CA

20  90603

21  **LISA HART COLE**, c/o Presiding Judge David S. Wesley, 111 N. Hill St., Los Angeles, CA 90012-

22  3014.

23  **LYDIA CORNELL and all aliases and DBAs**, 300 S. Crescent Street, Beverly Hills, CA 90212.

24  **MEKI COX and aliases and DBAs**, 44519 10th Street, West Lancaster, CA 93534.

25  **GEORGE DEL JUNCO and DBA**, 1643 Larkvane Road, Rowland Heights, CA 91748.

26  **ELIDA DEL TORO and DBA**, 1643 Larkvane Road, Rowland Heights, CA 91748.

27  **LEE SMALLEY EDMON**, c/o Presiding Judge David S. Wesley, 111 N. Hill St., Los Angeles, CA

28  90012-3014.

1 **ESTARHD,** c/o David Fleming, 5016 Kester, Apt. 211, Sherman Oaks, CA 91703.

2 **HANY FANGARY** c/o Velasco Law Group, 100 W. Broadway, Ste. 255, Long Beach, CA 90802.

3 **FARMERS INSURANCE COMPANY, INC.** c/o Doren E. Hohl, 4680 Wilshire Blvd, Los

4 Angeles, CA 90010.

5 **DAVID FLEMING** and DBAs, 5016 Kester, Apt. 211, Sherman Oaks, CA 91703.

6 **JAMES HILLIS FORD,** address unknown.

7 **JACK W. GOLDEN,** 333 W. Santa Ana Blvd, #407, Santa Ana, CA 92702.

8 **(ALLEN) KELSEY GRAMMER,** 11 E. Walton St., Apt. 3002, Chicago, Ill. 60611-5405.

9 **KELSEY GRAMMER DBAs:** c/o Jeff W. Lane, 11400 W. Olympic Blvd., Ste.200, Los Angeles,

10 CA 90064.

11 **ARTHUR HADDOCK,** 3643 47th St. N., St. Petersburg, FL 33713.

12 **RAYMOND L. HAIGHT, III,** c/o Presiding Judge Marsha Slough, 303 W. Third St., 4th Floor,

13 San Bernardino, CA 92415-0302.

14 **PAUL HAYELAND,** aliases and DBAs, c/o Gene Simmons, 2650 Benedict Canyon Dr., Beverly

15 Hills, CA 90210.

16 **IVAN JACKSON** at TSOFTNET, INC. c/o Davine Henderson, LLC, 2533 N. Carson St., Carson

17 City, NV 89076.

18 **MARTHA KEHOE,** 6238 Berkeley St., Englewood, Florida, 34224.

19 **CASEY KEITH and DBA,** 44519 10th St West Lancaster, CA 93534.

20 **S. MARTIN KELETI,** 8340 Melrose Avenue Los Angeles, CA, US 90069-5420.

21 **STEPHANIE KING** and aliases and DBAs, 375 E. Huntington Drive, Ste. B, San Marino, CA

22 91106.

23 **JOHN KRATTI,** 648 Kenneth Hahn Hall of Administration Los Angeles, CA 90012-2713.

24 **MARYLAND CASUALTY CO.,** c/o CSC-Lawyers Incorporating Service Company, 7 St. Paul

25 Street, Ste. 1660, Baltimore, MD 21202.

26 **MASTERCARD WORLDWIDE,** c/o Mastercard Int'l General Counsel, 2000 Purchase Street,

27 Purchase, NY 10577 U.S.A.

28

COMPLAINT

Page 9

1  **MERITUS PAYMENT SOLUTIONS**, 1901 E. Alton Parkway, Ste. 220, Santa Ana, CA 92705-
2  5849.
3  **ALLEN S. MILLER** and all aliases and DBAs, 541 Linwood Ave. Unit "C," Monrovia, CA 91016.
4  **THE MILNER GROUP, LLC** c/o David Robinson, 715 S. Barrington Ave., Apt. D, Los Angeles,
5  CA 90049.
6  **PHILLIP MULLIGAN**, President and Director of TSOFTNET, INC. c/o Davine Henderson, LLC,
7  2533 N. Carson St., Carson City, NV 89076.
8  **ROBERT MELVIN NEWELL, JR.**, c/o Newell, Campbell & Roche, LLP, Biltmore Court, 520 S.
9  Grand Avenue, Suite 390, Los Angeles, CA 90071.
10  **NELSON PAGE ENTERTAINMENT, INC.**, c/o Wayne Page, 1066 Charles St., Pasadena, CA
11  91103.
12  **BARBARA NIVEN ENTERPRISES, INC.**, attn: Barbara Niven, all alias(s) and DBAs, c/o
13  LEGALZOOM.COM, INC., 100 W. Broadway, Ste 100, Glendale, CA 91210.
14  **JAN A. PLUIM**, c/o Presiding Judge David S. Wesley, 111 N. Hill St., Los Angeles, CA 90012-
15  3014.
16  **JAMES D. ROBERTS**, 20301 Ventura Blvd., Ste. 351, Woodland Hills, CA 91364.
17  **DAVID M. ROBINSON and DBAs**, 715 S. Barrington Ave., Apt. D, Los Angeles, CA 90049.
18  **MARK SCHWARTZ**, c/o David Snowden, Chief of Police, City of Beverly Hills Police
19  Department, 464 N. Rexford Dr., Beverly Hills, CA 90210.
20  **RANDALL J. SHERMAN**, c/o Thomas James Borris, Presiding Judge, Orange County Superior
21  Court, 700 Civic Center Drive West. Santa Ana, California 92701.
22  **GENE SIMMONS** and DBAs, c/o Nat'l. Registered Agents, Inc., 818 W. Seventh St., Los Angeles,
23  CA 90017.
24  **MARSHA SLOUGH**, 303 W. Third Street, 4th Floor, San Bernardino, California 92415-0302.
25  **STAROPOLY, LLC**, c/o Laughlin Associates, Inc., 2533 N. Carson Street, Carson City, NV 89706.
26  **D'CARREY STELL**, 2711 Halcyon Time Trail, Houston, TX 77045.
27  **CINDY THOMAS**, c/o Sherri R. Carter, Executive Officer/Clerk, 111 N. Hill St., Rm. 105, Los
28  Angeles, CA 90012-3014.

COMPLAINT

1   **TSOFTNET, INC.,** c/o Davine Henderson, LLC, 2533 N. Carson St., Carson City, NV 89076.

2   **BARBARA VARGAS,** c/o Sherri R. Carter, Executive Officer/Clerk, 111 N. Hill St., Rm. 105, Los

3   Angeles, CA 90012-3014.

4   **ALEX VARONOS** and aliases and DBAs, c/o Viewpartner Corporation's agent for service of

5   process: Laughlin Associates, Inc., 9120 Double Diamond Pkwy., Reno, NV, 89521.

6   **VIEWPARTNER CORPORATION** attn: ALEX VARONOS, President, Director, Secretary,

7   Treasurer c/o Laughlin Associates, Inc., 9120 Double Diamond Pkwy., Reno, NV, 89521.

8   **EDWARD WALSH,** 717 17th Street, Suite 1520, Denver, CO 80202.

9   **JAMES MICHAEL WELCH,** c/o Marsha Slough, Presiding Judge, 303 W. Third St., 4th Floor,

10   San Bernardino, CA 92415-0302.

11   **WELLS FARGO BANK, LTD** and all agents and Affiliates, c/o CSC-Lawyers Incorporating

12   Service, 2710 Gateway Oaks Dr., Ste. 150N, Sacramento, CA 95833.

13   **WELLS FARGO BANK NATIONAL ASSOCIATION CALIFORNIA,** c/o Corporation Service

14   Company, 2908 Poston Ave., Nashville, TN 37203-1312.

15   **DAVID S. WESLEY,** Presiding Judge of LASC, 111 N. Hill St., Los Angeles, CA 90012-3014.

16   **LLOYD WESTBROOK,** 450 S. Acacia Avenue, Apt. 2060, Mesa, AZ 85204.

17   **KEITH G. WILEMAN,** c/o Veatch Carlson, 700 S. Flower St., 22nd Floor, Los Angeles,

18   CA 90017-4209.

19   **WORLD CUP COMEDY, LLC,** c/o Wayne Page, 1066 Charles St., Pasadena, CA 91103.

20   **CRAIG T. WORMLEY,** 1109 Englewild Dr., Glendora, CA 91741.

21   **XIAOYI YAO,** 49 Sycamore Lane, Buena Park, CA 90621.

22   **ZURICH IN NORTH AMERICA,** 1400 American Lane, Tower 2, Floor 5, Schaumburg, IL 60196.

23   **AMERICAN ZURICH INSURANCE CO.,** c/o CSC-Lawyers Incorporating Service, 2710

24   Gateway Oaks Drive, Ste. 150, N. Sacramento, CA 93833.

25   **PLAINTIFFS:**

26       Plaintiffs, RICHARD LEWIS in *pro per* and *ex rel,* ("LEWIS"); LORRAINE K. LEWIS,

27   ("LORRAINE") RICHARD L. LEWIS III ("LEWIS III"), SCOTT E. LEWIS ("SCOTT"); MINOR

28   CHILD 1 ("MINOR 1"), MINOR CHILD 2 ("MINOR 2"), MINOR CHILD 3 ("MINOR 3"), and

1  MINOR CHILD 4 ("MINOR 4") (collectively "MINORS") NELLE ("NELLE"), THOMAS W.

2  PAEGEL ("THOMAS"), THOMAS W.V. PAEGEL ("TOMMY"), (collectively "PAEGELS"), THE

3  BODY COMPANY SPORTS, INC. ("TBCS"), file this Complaint and alleges against Defendants as

4  follows:

5  **DEFENDANTS:**

6  PETE E. ALMEIDA ("ALMEIDA"); AMERICAN EXPRESS TRAVEL RELATED SERVICES

7  COMPANY, INC., ("AEX" and all financial institutions collectively "FIN INST"); JEAN-RENE

8  BASLE ("BASLE"); BIBI BAC ("BAC"); BEVERLY HILLS POLICE DEPARTMENT

9  ("B.H.P.D.");WILLIAM BEATY ("BEATY"); CORBIN BLEU ("BLEU"); THOMAS JAMES

10  BORRIS ("BORRIS"); KENNETH G. CAMPION and DBA ("CAMPION"); CARMAX AUTO

11  SUPERSTORES, INC ("CARMAX"); HON. LISA HART COLE ("COLE"); LYDIA CORNELL

12  and all aliases and DBAs (collectively "CORNELL"); MEKI COX, and all aliases and DBAs:

13  (collectively "COX"); GEORGE DEL JUNCO and DBA (collectively "JUNCO"); ELIDA DEL

14  TORO and DBA (collectively "TORO"); LEE SMALLEY EDMON ("EDMON"); ESTARHD

15  ("eSTAR"); HANY FANGARY ("FANGARY"); FARMER'S INSURANCE COMPANY and all

16  DBAs ("FARMERS" and all insurers collectively "INS"); DAVID FLEMING ("FLEMING");

17  JAMES HILLIS FORD ("FORD"); JACK W. GOLDEN ("GOLDEN"); (ALLEN) KELSEY

18  GRAMMER and all DBAs:, corporations, and limited liability companies (collectively

19  "GRAMMER"); ARTHUR HADDOCK ("HADDOCK"); RAYMOND HAIGHT, III ("HAIGHT");

20  PAUL HAYELAND and all aliases and DBAs: (collectively "HAYELAND"); IVAN JACKSON and

21  DBA TSOFTNET (collectively "JACKSON"); MARTHA KEHOE ("KEHOE"); CASEY KEITH

22  and DBA (collectively "KEITH"); S. MARTIN KELETI ("KELETI"); STEPHANIE M. KING and

23  all aliases and DBAs (collectively "KING"); JOHN KRATTI ("KRATTI"); MARYLAND

24  CASUALTY CO. ("MARYLAND" and all insurers collectively "INS") MASTERCARD

25  WORLDWIDE ("MC" and all financial institutions collectively "FIN INST"); MERITUS

26  PAYMENT SOLUTIONS ("MERITUS" and all financial institutions collectively "FIN INST");

27  ALLEN S. MILLER and all aliases and DBAs: (collectively "MILLER"); THE MILNER GROUP,

28  LLC ("MILNER"); PHILLIP MULLIGAN and DBA TSOFTNET, collectively "MULLIGAN");

ROBERT MELVIN NEWELL, JR. ("NEWELL"); BARBARA NIVEN ("NIVEN"); JAN A. PLUIM ("PLUIM"); JAMES D. ROBERTS ("ROBERTS"); DAVID M. ROBINSON, and all DBAs ("ROBINSON"); MARK SCHWARTZ ("SCHWARTZ"); RANDALL J. SHERMAN ("SHERMAN"); GENE SIMMONS and all aliases and DBAs: ("SIMMONS"); MARSHA SLOUGH ("SLOUGH"); STAROPOLY, LLC ("STAROPOLY"); D'CARREY STELL ("STELL"); CINDY THOMAS ("THOMAS"); TSOFTNET, INC ("TSOFTNET"); TODHD ("TODHD"); BARBARA VARGAS ("VARGAS"); ALEX VARONOS and all aliases, DBAs, corporations, and limited liability companies ("VARONOS"); VIEWPARTNER CORPORATION ("VIEWPARTNER"); EDWARD WALSH, Esq. ("WALSH"); MICHAEL WELCH "(WELCH"); WELLS FARGO N.A. and all agents and Affiliates, ("FARGO" and all financial institutions collectively "FIN INST"); DAVID S. WESLEY ("WESLEY"); LLOYD WESTBROOK ("WESTBROOK"); KEITH G. WILEMAN ("WILEMAN"); CRAIG T. WORMLEY and DBAs (collectively "WORMLEY"); XIAOYI YAO ("YAO"); ZURICH INSURANCE, N.A. and Agents, Affiliates, and Subsidiaries ("ZURICH" and all insurers collectively "INS").

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Now comes Richard LEWIS, Plaintiff in *propria persona* and *ex rel.* for the people of the United States of America and the Citizens of Tennessee as Private Attorney General under the Civil RICO Act 18 USC §1961-1968 and particularly 18 USC § 1964 - Civil remedies including Sections 1962 (a), (b), (c), and (d); The HOBBS Act §1958; 18 USC §201; JUDICIAL CANONS 1-3; Racketeer Influenced and Corrupt Organizations Act of 1970; the Tennessee Civil RICO Act; Tennessee RICO act; Tennessee GANG BILL; Money laundering 18 *U.S.C.* § 1956; Americans with Disabilities Act of 1990, 42 *U.S.C.* § 12102; U.S.A. Patriot Act; Homeland Security Act; Elder Abuse Laws; The Adam Walsh Child Protection and Safety Act of 2006; and statute 42 U.S.C. §1983 that provides a federal remedy for the violation of federally protected rights (collectively the "ACTS"), the Tennessee Terrorism Prevention Act, and Tennessee statutory and common law.

This case arises in part as a direct result of certain Defendants impeding LEWIS'S prior investigations of RICO violations.

> "[A] 'racketeering investigation' means any inquiry conducted by any racketeering investigator for the purpose of ascertaining whether **any person** has been involved in any violation of this chapter or of any final order, judgment, or decree of any court of the United States, duly entered in any case or proceeding arising under this chapter."
> 18 *U.S.C.* § 1961(8). [Bold emphasis added]

On May 7, 2012, LEWIS was added as a plaintiff in California superior court case number GC047909 and subsequently submitted a Supplement (herein submitted as EXHIBIT 1) on August 6, 2012, which expressly asserted his intent to investigate RICO violations as authorized by the Civil RICO Act as the private attorney general. LEWIS'S efforts in that case were impeded by certain Defendants in this case, which includes thirty-five (35) causes of action and a growing number of Defendants who have each committed and continue to commit multiple violations of the RICO Act and other federal acts including, but not limited to: child endangerment, judicial racketeering, money laundering, tax fraud and evasion, corruption, collusion, conspiracy, perjury, bad faith, violations of fiduciary duties, mail tampering, mailbox tampering, interstate transportation of stolen property, internet fraud and piracy, theft, bribery, graft, conflicts of interest, extortion, blackmail, grand larceny, stalking, harassment, defamation, death threats, mail fraud, wire fraud, violations of due process, and the common laws of the United States of America, Tennessee, California, and Florida.

Under Section 1962(c), the RICO "person" and the RICO "enterprise" cannot be one and the same, however under Sections 1962(a) and (b), "enterprise" and "person" may be the same and need not be separate and distinct. *In re Burzynski*, 989 F.2d 733 (5th Cir.1993*); Landry v. Air Line Pilots Association, et al.*, 901 F.2d 404 (5th Cir.1990). See also, *Liquid Air Corporation v. Rogers, et al.*, 834 F.2d 1297 (7th Cir.1987); *Petro-Tech, Inc. v. The Western Company of North America*, 824 F.2d 1349 (3d Cir.1987); *Haroco v. American National Bank and Trust Company of Chicago, et al.*, 747 F.2d 384 (7th Cir.1984); *Bowman v. Western Auto Supply Company, et al., 773 F.Supp.* 174 (W.D.Mo.1991); *Harrison v. Dean Witter Reynolds, Inc., et al.*, 695 F.Supp. 959 (N.D.Ill.1988).

> "(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any

interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

18 U.S.C. Section 1962 (a)-(d).

## ORIGINAL JURISDICTION

This case falls under the jurisdiction of the federal statutes and the state of Tennessee, which includes the county of Union, with original jurisdiction.     The  State of Tennessee, Union County shall have original jurisdiction to prevent and restrain violations of section 1962 of the Civil RICO Act and the (ACTS) by issuing appropriate orders, including, but not limited to: 1)  Ordering any person to divest himself of any interest, direct or indirect, in any enterprise, 2) Imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce, and/or 3) Ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

///

///

# RACKETEERING AND ORGANIZED CRIME—CIVIL RICO

**General Provisions**

RICO, 18 U. S. C. §§1961-1968 (1994 ed. and Supp. III) (Racketeering Influence and Corrupt Organization) makes it criminal "to conduct" an "enterprise's affairs through a pattern of **racketeering activity**," 18 U. S. C. §1962(c), defined as behavior that violates certain other laws, either enumerated federal statutes or state laws addressing specified topics and bearing specified penalties, 18 U. S. C. §1961(1) (Supp. III). "Pattern" is also a defined term requiring "at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U. S. C. §1961(5).

**Civil RICO specifically has a purpose of** *encouraging* **potential private plaintiffs to investigate diligently**. *Rotella v. Wood*, 528 U.S. 549 (2000). [Emphasis added.] The Civil RICO Acts contain **no express limitations** for civil enforcement actions. (Clayton Act analogy, §4b, as added, 69 Stat. 283, 15 U. S. C. §15b, See, e.g., *Grimmett v. Brown* , 75 F. 3d 506, 511 (CA9 1996); *McCool v. Strata Oil Co.* , 972 F. 2d 1452, 1464-1465 (CA7 1992); *Rodriguez v. Banco Central Corp.*, 917 F. 2d 664, 665-666 (CA1 1990); *Bankers Trust Co. v. Rhoades* , 859 F. 2d 1096, 1102 (CA2 1988); *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.* , 828 F. 2d 211, 220 (CA4 1987)).

The administrative director of the courts is authorized to establish any policies and procedures that may be necessary to assist courts with compliance with the Americans with Disabilities Act, 42 U.S.C. § 12131 *et. seq.* T.C.A. §16-3-803. The Supreme Court shall approve any such policies and procedures prior to implementation. Participants in the judicial system shall comply with any policies and procedures that may be implemented. This rule shall apply to all courts in this state, including without limitation, municipal courts, general sessions courts, juvenile courts, circuit courts, chancery courts, criminal courts, and the respective appellate courts. *Id.*

**Hobbs Act**

The Hobbs Act,18 USC § 1951 governs the interference with commerce by threats or violence. It is described in RICO itself, 18 U.S.C. § 1961(1)(A).

*///*

---

**Judicial Racketeering**

The California Judicial System has received inordinate attention in recent years for corruption. Furthermore, U.S. attorneys and courts have protected participants by thwarting appeals. According to former U. S. Prosecutor **Richard I. Fine, Ph.D.**, ninety percent (90%) of California judges actively participate in on-going racketeering. On August 13, 2013 California parents brought RICO charges against San Diego, CA judges.

ARTICLE ENTITLED: "10-10-01 United Nations Human Rights Council Records for 2010 Review (UPR) of Human Rights in the United States - referring to "corruption of the courts and the legal profession" in California."

"Human Rights Alert's report pertaining to **corruption of the courts, the legal profession, and law enforcement in Los Angeles County, California**, was noted by the United Nations. Los Angeles, October 2 - Human Rights Alert (NGO), a young organization, with no resources at all, got a mention and a reference in the report staff report of the Human Rights Council (HRC) of the United Nations, [1] as part of the Universal Periodic Review (UPR) of Human Rights in the United States. Page 8: HRAlert referred to **corruption in the courts and the legal profession, and discrimination of US law enforcement in California**. 69 Notes: 69 HRAlert, pages 1-5. See submission for cases cited. The evidence provided by Human Rights Alert pertained to large-scale false imprisonment at the criminal courts, and real estate fraud **in collusion with large financial institutions and law-firms at the civil courts**. The HRC report reference was somewhat cryptic regarding **"discrimination of US law enforcement in California."** It pertained to allegations in the Human Rights Alert report of discrimination by law enforcement against Los Angeles County, California, for at least two decades, through **refusal of US law enforcement to address overwhelming evidence of racketeering by judges of the Los Angeles Superior Court**. Discrimination against a region of the country is a violation of Human Rights, in and of itself. The Human Rights Alert report to the United Nations provided evidence of such discrimination through conduct of KENNETH KAISER -FBI Assistant Director for Criminal Investigations, and KENNETH MELSON - former Director of US Department of Justice Office of US Attorneys. The report also provided **evidence of patronizing of the conduct of the Los Angeles Superior Court by the United States courts** - National Tribunals for Protection of Rights pursuant to the Universal Declaration of Human Rights - **from the US District Court, Central District of California, through the US Court of Appeals, 9th**

**Circuit, to the Supreme Court of the United States.** Much larger organizations, and even Joint Reports of consortia of organizations got no mention at all. The HRC report was issued as part of the UPR process, established by the General Assembly of the United Nations in 2006. In April 2010, over 100 organizations filed reports as "stakeholders" as part of the review process. In August 2010 the US State Department filed its response. Albeit, the State Department report simply ignored the reports of stakeholders and the HRC staff, and was largely self-congratulatory. Review session regarding Human Rights in the United States is scheduled for November 5, 2010 in Geneva. **Human Rights Alert (NGO) is dedicated to discovering, archiving, and disseminating evidence of Human Rights violations by the justice systems of the State of California and the United States in Los Angeles, California, and beyond.** Special emphasis is given to the unique role of computerized case management systems in the precipitous deterioration of integrity of the justice system. LINKS [1] 10-01-10 United Nations Human Rights Council Records for 2010 Review (UPR) of Human Rights in the United States http://www.scribd.com/doc/38566837/

Published by: Human Rights Alert, NGO on Oct 02, 2010. [Bold emphasis added]

Plaintiffs anticipate that many of the 300 DOE Plaintiffs will enter this suit based solely upon instances of judicial racketeering. Owing to the widespread corruption of courts located in California, it has become futile to expect justice there.

**Statute of Limitations**

A cause of action brought under the Civil RICO Act must be brought within four years of the predicate act giving rise to the "complaint," however, the statute of limitations for a defendant's liability extends to the previous ten years. All of Plaintiffs' original causes of action are being brought well within the four year statute of limitations. However, LEWIS fully intends to investigate Defendants' activities for the full ten year period as authorized by the Act. In fact, the statutes **require** that LEWIS engage in aggressive discovery and report his findings to the appropriate authority (ies) for criminal prosecution.

**Private Attorney General**

The Private Attorney General is authorized under the Civil RICO Act to investigate under this section and report his findings to the proper authorities for any and all criminal actions they may take. Pending final determination thereof, the court may at any time enter such restraining orders or

prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

**Damages, Cost of Suit, Attorney Fees**

"Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court or the State of Tennessee—which has original jurisdiction thereof—and **shall recover threefold the damages s/he sustains and the cost of the suit, including a reasonable attorney's fee**, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final." *See* Tennessee RICO Statute 1989; Applied to TN "Gangs Act" Jan. 23, 2012; Ch. 3917 1981; 18 U.S.C. § 1962, *et seq.*

**Subsequent Actions and Jurisdiction**

A final judgment or decree rendered in favor of the United States and the State of Tennessee in any criminal or civil proceeding brought by the Private Attorney General shall estop the defendant from denying the essential allegations of the criminal or civil offense in any subsequent proceeding brought by the United States. 18 U.S.C. § 1964(d).

Civil RICO statutes are supplemented by 2 Human Rights Treaties—the Universal Declaration of Human Rights and the International Covenant on Civil and Political Rights—both of which are rendered supreme law by virtue of the Supremacy Clause (similar to the Bill of Rights).

The latter Covenant's Reservations enacted by Congress expressly reserve original jurisdiction to State and local governments, to the end that their competent authorities may take appropriate measures for the fulfillment of the Covenant.

**TENNESSEE TERRORISM PREVENTIONAND RESPONSE ACT 2010 TN. CODE, TITLE 39, CHAPTER 13, OFFENSES AGAINST PERSON PART EIGHT, TERRORISM PREVENTION AND RESPONSE ACT OF 2002 .) 39-13-805 COMMISSION OF AN ACT OF TERRORISM (TERRORISM PREVENTION AND RESPONSE ACTS OF 2002 CH. 849,1**

It is an offense for any person to commit any act of terrorism in Tennessee. An act of terrorism is a class "A" felony. Tennessee has become the first state to fight terrorism statewide. Until now, Tennessee was the first terrorist-free state in the nation. Under the transportation security administration, Tennessee is the first state to deploy the visible intermodal prevention and response (VIPR) counter-terrorism act known as the Tennessee Terrorism Prevention and Response Act, which has direct authority for and protection from terrorism-related events.

The Tennessee office of homeland security has a primary responsibility and authority for directing statewide activities pertaining to the prevention of and protection from terrorist-related events. This responsibility includes the development and implementation of a comprehensive and coordinated strategy to secure the state from terrorist threats and acts. Further, the office of homeland security serves as a liason between federal, state, and local agencies and private sector on matters relating to the security of the state of Tennessee and its citizens.

## LEWIS AS PRIVATE ATTORNEY GENERAL

**Under 18 USC § 1964(c), a Private Attorney General ("PAG") may appear in court without the license to practice law that is required of all State Bar members.** The State of Tennessee and the Superior Court of Union, Tennessee has jurisdiction under 18 USC 1964(c), which Congress passed to enable **any person** who has been injured by a Civil RICO Act violation to sue. That person can request an order for damages and injunctions (such as a restraining order). Under his authority as the Private Attorney General, Plaintiff LEWIS in *propria persona* and as *ex rel* is also requesting a restraining order against all defendants at this time, to prevent future violations. **The ACTS provide that the plaintiff can recover *treble* damages, expenses, attorney fees, and costs; LEWIS herein requests same at a minimum as well as exemplary/punitive damages in order to discourage these Defendants and parties similarly so situated.** Furthermore, The ACTS provide that the plaintiff must submit all findings of fact and discovery to the appropriate legal authority (ies) for prosecution.

**This case is a perfect example of how obstruction of justice and acts that could be categorized as "domestic terrorism" are perpetrated by and through organized crime.** Appropriate local and federal agencies are actively investigating certain defendants. Amongst the

Defendants herein are members of the judiciary in the states of Florida and California who *ignored*

*federal, state, and local rules and provisions of the United States Constitution* in order to make

biased and unsupportable rulings in favor of criminal acts by Defendants in cases GC047909, 11-CV-

08810GW(SHx), PROPS0700007, 30-2012-00609008-PR-TR-CJC, 30-2012-00609235-PR-TR-CJC,

SS022572, PAS 11S00624 in several California courts and 11S00624ca in Florida family court.

Exhibits 1-92 include documents from hearings in cases presided over by defendants that are

members of the judiciary.

All statements are being made under penalty of perjury according to my information and

belief.

DATED: _____ SUBMITTED BY: _____

**RICHARD LEWIS,** in *propria persona* **and** *ex rel* **as a Private Attorney General for Plaintiffs RICHARD LEWIS, RICHARD LEWIS III; LORRAINE LEWIS, SCOTT E. LEWIS, MINORS 1, 2, 3, 4; THOMAS W. PAEGEL; NELLE S. PAEGEL; THOMAS W.V. PAEGEL; THE BODY COMPANY SPORTS, INC.**

///
///
///
///
///
///
///
///
///
///
///
///
///
///

# STATEMENT OF ACTION

**Request for Judicial Notice**

    This matter arises out of pre-litigation and litigation occurrences from twelve prior cases in Tennessee, Florida, Arizona and California. Plaintiffs request this Court take Judicial Notice of the transcripts and files of the following case numbers: 13875, 13899, 13895 (Tennessee) GC047909, 11-CV-08810GW(SHx), PROPS0700007, 30-2012-00609008-PR-TR-CJC, 30-2012-00609235-PR-TR-CJC, SS022572, 11S00624, BC495150, PAS 11S00624 (California) and 12001807ca (Florida) showing *inter alia* how many of the Defendants endangered children, abused adults, harassed the elderly, financially abused the elderly, submitted to courts corrupted records and documents, perjury, misrepresentations to the Courts, manufactured evidence, persecuted Plaintiffs and their families, stalked and threatened.

    Owing to the complex nature of the allegations and intertwining of parties, LEWIS requests that this case be categorized as "complex" and as such requests this Court initiate and implement efficient supervision and control of the litigation proceedings from the beginning of the process to ensure a fair resolution of the complex litigation issues before it.

**Request for Fingerprinting**

    Due to prior experiences with many of the Defendants are prone to frivolous filings, clogging courts, and twisting facts and law. As a result, **LEWIS requests an order to have all Defendant individuals AND their counsel fingerprinted by the Maynardville Sheriff no later than one week prior to submitting any response or "answer."** This request is considered *essential* to this litigation process as true identities are unknown. Each individual must also bring a valid form of photo identification and certified birth certificate.

    All statements are being made under penalty of perjury according to information and belief.

DATED:        SUBMITTED BY: _____

                               **RICHARD LEWIS, in *propria persona* and *ex rel* as a Private Attorney General for Plaintiffs RICHARD LEWIS, RICHARD LEWIS III; LORRAINE LEWIS, SCOTT E. LEWIS, MINORS 1, 2, 3, 4; THOMAS W. PAEGEL; NELLE S. PAEGEL; THOMAS W.V. PAEGEL; THE BODY COMPANY SPORTS, INC.**

Plaintiffs herein named and DOES 1-300 inclusive allege as follows:

## GENERAL ALLEGATIONS

1.     LEWIS is informed and believes that Defendants intertwined and correlated their activities into three common criminal schemes" in order to defraud Plaintiffs and the public at large; these schemes are herein delineated as: "Criminal Scheme 'A,'" "Criminal Scheme 'B,'" and "Criminal Scheme 'C.'"

2.     LEWIS is informed and believes that Criminal Scheme "A" consists of the underlying fraudulent common plans and schemes used by certain of the Defendants to defraud the Plaintiffs and the public at large via mass marketing and internet fraud.

3.     LEWIS is informed and believes that Criminal Scheme "B" consists of conspiracies through a common plan and actions by certain Defendants who obstructed justice by committing fraud upon the court and the plaintiffs.

4.     LEWIS is informed and believes that Criminal Scheme "C" consisted of conspiracies through a common plan by many

Defendants to obstruct justice by so harassing Plaintiffs as to coerce Plaintiffs into stop seeking their legal remedies through judicial processes.

5.     LEWIS is informed and believes that various Defendants and their actions were intertwined between Criminal Schemes A, B, and C, each of which is delineated and identified by the appropriate cause(s) of action.

6.     LEWIS is informed and believes, and based herein alleges, Defendants, and each of them, were agents, servants, representatives, and/or employees of one or more other Defendant(s) herein named.

7.     LEWIS is informed and believes, and based herein alleges, that CORNELL, COX, HAYELAND, KEITH, KING, MILLER, VARONOS, FLEMING, JACKSON, KEHOE, MULLIGAN, ROBINSON, SIMMONS, and WORMLEY regularly conducted business through internet websites that were not registered or legitimate in order to avoid taxation and other liabilities in order to further their common plan(s) and/or schemes.

8.     LEWIS is informed and believes, and based herein alleges, that the Defendants were interrelated in one or more ways; that there was a distinct correlation between each of the Defendants and at least one other Defendant.

9.     LEWIS is informed and believes, and herein alleges, that Defendants actively participated in on-going and evolving Criminal Schemes involving two or more predicate acts by individuals and enterprises including, but not limited to members of: 1. The world-wide banking industry, 2. the world-wide insurance industry, 3. the legal profession, 4. law enforcement agencies, and 5. the California State Court System all of which have violated one or more of the ACTS.

10.    LEWIS is informed and believes, and herein alleges that many Defendants conspired to impede an ongoing Civil RICO investigation.

11.    LEWIS is and at all times mentioned herein, a citizen of the United States and resident of Union County, Tennessee.

12.    LEWIS is informed and believes that LEWIS is the father of LEWIS III, SCOTT and LORRAINE.

13.    LEWIS is informed and believes that LEWIS is the Grandfather of MINORS 1, 2, 3, and 4.

14.    LEWIS is informed and believes that LORRAINE is at all times mentioned herein a citizen of the United States and resident of Charlotte County Florida and is the mother MINORS 1 and 2.

15.    LEWIS is informed and believes that LORRAINE and MINORS 1 and 2 visited LEWIS at his home.

16.    LEWIS is informed and believes that LEWIS III is at all times mentioned herein a resident of Charlotte County, Florida and is the father of MINORS 3 and 4.

17.    LEWIS is informed and believes that LEWIS III and MINORS 3 and 4 visited LEWIS at his home.

18.    LEWIS is informed and believes that MINORS 1, 2, 3, and 4, were at all times mentioned herein citizens and residents of the United States, however their current addresses

are under protection due to their ages.

19.     LEWIS is informed and believes that The PAEGELS were and at all times mentioned herein residents of Los Angeles County, California and principals of TBCS.

20.     LEWIS is informed and believes that TBCS is the Body Company Sports, Inc. and was at all times mentioned herein, a Nevada corporation with its principle place of business in Los Angeles County, California.

21.     LEWIS is informed and believes that NELLE was the attorney of record for plaintiffs in the Los Angeles Superior Court Cases discussed *supra*.

22.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein that Defendant VARONOS was a principle and main force behind the illegal acts of VIEWPARTNER, TSOFTNET, STAROPOLY, TODHD, and eSTAR.TV, all of which have conducted business in multiple states of the U.S. and via the internet.

23.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein Defendants TORO and JUNCO misrepresented themselves as married to each other, were residents of Los Angeles County, California, and are the owners and operators of GREEN.

24.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein Defendant CORNELL was an individual and resident of Los Angeles County, California and is the operator of the fraudulent "businesses" known as: LCE; GODSHOTS ™L.L.C.; GODSHOTS.ORG; RECOVERY GODSHOTS; MILITARY GODSHOTS; LC ENTERTAINMENT GROUP; VENUS FILMS AND PRODUCTIONS and LYDIA CORNELL KORNILOFF VENUS FILMS AND PRODUCTONS that are used to sell products, gather donations, rent rooms in her home, and steal money and property without paying taxes on the income.

25.     LEWIS is informed and believes that CORNELL misrepresented GODSHOTS ™L.L.C., RECOVERY GODSHOTS and MILITARY GODSHOTS to be charities.

26.     LEWIS is informed and believes that HAYELAND was CORNELL'S husband and business partner.

27.     LEWIS is informed and believes that HAYELAND fraudulently operated(s) GSAXE,

AXE LTD., GODSHOTS.TV, and SPORTS ICON ENTERTAINMENT.

28.     LEWIS is informed and believes that CORNELL signed her name as a witness to the will of Virginia J. Nicklins, prior to her marriage to HAYELAND.

29.     LEWIS is informed and believes that HAYELAND was the executor of the Virginia J. Nicklins estate prior to his marriage to CORNELL.

30.     LEWIS is informed and believes that CORNELL and HAYELAND were investigated for fraud on the Virginia Nicklins estate in 2006 as husband and wife; they are now divorced.

31.     LEWIS is informed and believes that CORNELL and HAYELAND operated SIE and LCE.

32.     LEWIS is informed and believes that HAYELAND was an employee of SIMMONS.

33.     LEWIS is informed and believes that SIMMONS sells his likeness and products on GSAXE and AXE LTD.

34.     LEWIS is informed and believes that HAYELAND sold SIMMONS'S the internet via the SIE website.

35.     LEWIS is informed and believes that neither GSAXE nor AXE LTD were organized or licensed businesses.

36.     LEWIS is informed and believes that SIE was not an organized or licensed business.

37.     LCE was not an organized or licensed business.

38.     LEWIS is informed and believes that LEWIS is informed and believes that FIN INST were regulated by federal law and the banking industry.

39.     LEWIS is informed and believes that BEATY was an agent of the FIN INST. known as MERITUS.

40.     LEWIS is informed and believes that KEHOE was at all times mentioned herein a resident of Charlotte County, Florida

41.     LEWIS is informed and believes that FORD was a personal friend of CORNELL.

42.     LEWIS is informed and believes that WALSH was a personal friend of CORNELL.

43.     LEWIS is informed and believes that WALSH met, threatened and defamed LEWIS via the internet.

44.     LEWIS is informed and believes that ROBERTS was a licensed California attorney at law.

45.     LEWIS is informed and believes that HADDOCK was a personal friend of KEHOE, the father of MINORS 1 and 2, and ex-husband of LORRAINE.

46.     LEWIS is informed and believes that NIVEN, MILLER and KING were business partners who sold services and products over the internet and at unlicensed California locations without paying taxes.

47.     LEWIS is informed and believes that FLEMING introduced MILLER as a business partner and public relations "expert" despite that MILLER has no skills in public relations.

48.     LEWIS is informed and believes that MILLER represented himself as a public relations "expert" and sold his services through HITMANPR, hitmanpr.com, and/or HITMAN PUBLIC RELATIONS none of which was registered, licensed, or organized.

49.     MILLER advertised HITMANPR on his internet website hitmanpr.com and in person.

50.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein that TODHD, STAROPOLY, and ESTAR TV were never legitimate business ventures, but rather devised by VARONOS, FLEMING, GRAMMER, BLEU, CORNELL, ROBINSON, WORMLEY, JUNCO, TORO, KING and MILLER for the express purpose of furthering the goals and objectives of Criminal Schemes.

51.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein MILLER and KING lived together as residents of Monrovia in Los Angeles County, California.

52.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein MILLER and KING were partners in multiple Criminal Schemes.

53.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein that KING was a licensed and practicing chiropractor in the city of San Marino and a member of the TODHD Criminal Scheme.

54.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein FLEMING was a resident of Los Angeles County, California and was a partner of

VARONOS, JACKSON, MULLIGAN, MILLER, KING, and GRAMMER.

55.     GRAMMER, VARONOS and FLEMING created TODHD, STAROPOLY, and ESTAR websites that portrayed multiple fake "businesses ventures" which were used to defraud targeted individuals and the public at large and acquire funds "tax free."

56.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein ROBINSON was a resident of Los Angeles County, California; President of Defendant MILNER; a business partner of WORMLEY; a disbarred California attorney; an agent of Defendants VARONOS, FLEMING, JUNCO, TORO, MILLER, GRAMMER, KING; and member of the Criminal Scheme.

57.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein Defendant WORMLEY was a resident of Los Angeles County, California, a suspended California attorney; and a partner of JUNCO, TORO, ROBINSON, VARONOS and FLEMING.

58.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein that KING, MILLER, VARONOS, FLEMING, GRAMMER, BLEU, CORNELL, ROBINSON, WORMLEY, JUNCO, TORO, HAYELAND, SIMMONS, KEHOE, JACKSON, MULLIGAN, FIN INST, and INS colluded to defraud their "victims" through the internet via fake companies and false identities as part of a Criminal Scheme.

59.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein that EXP was a FIN INST in collusion with VARONOS, FLEMING, GRAMMER, MERITUS, BEATY, FARGO and MC to commit credit card fraud as a member of that Criminal Scheme.

60.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein Defendant BEATY was a resident of Orange County, California.

61.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein Defendant FARGO was a global FIN INST.

62.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein Defendant MC was a FIN INST located in New York, New York.

COMPLAINT

63.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein Defendant ZURICH was an insurer doing business in North America by and through itself, FARMERS and MARYLAND.

64.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein GRAMMER was a resident of Los Angeles County, California and/or Chicago, Illinois and owner of all GRAMMER companies.

65.     LEWIS is informed and believes that FIN INST and BEATY conspired with VARONOS, FLEMING, KING, MILLER, JUNCO, TORO, HAYELAND, SIMMONS, ROBINSON, WORMLEY, MILNER, CORNELL, JACKSON, and MULLIGAN to receive funds from defrauded victims and knowingly participated in credit card fraud and money laundering.

66.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein STELL, CAMPION, WELCH, and HAIGHT colluded to cover up STELL'S interstate transportation of stolen property, breach of contract, breach of fiduciary duty, violations of numerous state and federal laws including, but not limited to, perjury.

67.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein that FANGARY colluded with SHERMAN to cover up violations of discovery, mail tampering, mailbox tampering, harassment, perjury.

68.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein JUNCO and TORO were agents and owners of GREEN, a fraudulent business.

69.     LEWIS is informed and believes, and herein alleges, that CORNELL, VARONOS, MILLER, WILEMAN, KELETI, FLEMING, ROBINSON, WORMLEY, KING, TORO, and JUNCO received "judicial protection" from EDMON, WESLEY, KRATTI, PLUIM, THOMAS, and VARGAS as members of Criminal Schemes.

70.     LEWIS is informed and believes that FANGARY received "judicial protection" from BORRIS, GOLDEN and SHERMAN as members of Criminal Schemes.

71.     LEWIS is informed and believes that STELL and CAMPION received "judicial protection" from SLOUGH, BASLE, HAIGHT, and WELCH as members of Criminal

Schemes.

72.     LEWIS is informed and believes that CARMAX and FARGO conspired to falsely claim that LEWIS stole his automobile in order to obtain a mug shot of LEWIS available on the internet.

73.     LEWIS is informed and believes that CORNELL received "judicial protection" from WESLEY, KRATTI, and COLE as members of Criminal Schemes.

74.     LEWIS is informed and believes that HADDOCK received "mediator protection" from BAC as members of Criminal Schemes.

75.     LEWIS is informed and believes, and herein alleges, that SCHWARTZ, CORNELL and B.H.P.D. colluded to invade NELLE'S privacy in order to defame LEWIS.

76.     LEWIS is informed and believes, and herein alleges, that WESLEY, EDMON, SLOUGH, BORRIS, BASLE, GOLDEN and KRATTI colluded to ignore widespread misapplication of the law by HAIGHT, PLUIM, SHERMAN, COLE, and WELCH in furtherance of Criminal Schemes.

77.     LEWIS is informed and believes, and herein alleges, that each and every Defendant colluded with one or more other Defendant in one or more Criminal Schemes to defraud Plaintiffs and the public using threats, coercion, harassment, bribery, defamation, and personal or familial attacks on a global scale.

78.     LEWIS is informed and believes, and herein alleges, that CORNELL, COX, MILLER, HADDOCK, KEHOE, KEITH, VARONOS, FLEMING, WILEMAN, KING, GRAMMER, PLUIM, THOMAS, VARGAS, TORO and JUNCO conspired to and/or hacked into one or more Plaintiffs' computers and government databases.

79.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein CORNELL, COX, MILLER, HADDOCK, KING, BLEU, FIN INST, INS, PLUIM, THOMAS, VARGAS, WILEMAN, WILEMAN, KELETI, NEWELL, YAO, KEHOE, WESTBROOK, GRAMMER, ROBERTS, TORO, WALSH, FORD, ROBERTS, ROBINSON, WORMNEY, VARONOS, FLEMING, JUNCO, FANGARY, and SHERMAN conspired to defame, interfere with, defraud, extort, blackmail, threaten, harass, stalk, hack,

and steal from one or more Plaintiffs.

80.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein CORNELL, COX, MILLER, HADDOCK, HAYELAND, KING, COLE, PLUIM, THOMAS, VARGAS, WILEMAN, GRAMMER, WALSH, FORD, KELETI, ROBERTS, VARONOS, FLEMING, TORO, WESTBROOK, KEHOE, INS, FIN INST, and JUNCO conspired to impede LEWIS'S investigations as PAG.

81.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein NEWELL was the attorney of record for KING who never withdrew from her representation.

82.     LEWIS is informed and believes, and herein alleges, that at all times mentioned herein NEWELL conspired with KING, WILEMAN, YAO, MILLER, PLUIM, THOMAS, VARGAS, ROBINSON, and INS in furtherance of one or more Criminal Schemes to commit illegal acts in defense of KING.

83.     The true names and capacities, whether individual, corporate, associate, representative or otherwise, of the Plaintiffs identified herein as DOES 1-300, inclusive, are currently unknown to Plaintiffs, who therefore represents them by said fictitious names. LEWIS will amend this complaint to allege the true names and capacities of Plaintiff DOES 1-300 who will have same or similar complaints against related defendants.

84.     The true names and capacities, whether individual, corporate, associate, representative or otherwise, of the Defendants identified herein as DOES 1-300, inclusive, are currently unknown to Plaintiffs, who therefore represents them by said fictitious names. LEWIS will amend this complaint to allege the true names and capacities of Defendant DOES 1-300 who will have same or similar allegations made against them. LEWIS is ignorant of the true names and capacities of the Defendants sued herein as DOES 1- 300. Plaintiffs will seek leave of Court to amend this Complaint to set forth their true names and capacities thereof, when same haves been ascertained.

85.     LEWIS is informed and believes, and based herein alleges, that at all times mentioned in this Complaint, each of the Defendants, including Defendant DOES 1-300 inclusive, were acting in concert and/or conspiracy with at least one other Defendant in furtherance of one or

more Criminal Schemes.

86. Plaintiffs LEWIS, LORRAINE, LEWIS III, SCOTT, MINORS, TBCS, and PAEGELS are joined because the facts and parties are so intertwined that complete relief cannot otherwise be granted.

87. LEWIS is informed and believes that on or about March, 2009, Brian Williams ("WILLIAMS") was first introduced to TODHD [known at that time as MYEZTV] by an agent of VARONOS. WILLIAMS was solicited to bring advertisers to the TODHD "network" and was told that Defendants GRAMMER, CORNELL, and BLEU were all channel holders, investors and promoters in the "company."

88. LEWIS is informed and believes that WILLIAMS established contact with VARONOS and on November 15, 2010, BRIAN WILLIAMS, as an independent contractor, brokered a one hundred thousand dollar ($100,000.00) sponsorship agreement between Defendant TODHD and Defendant VARONOS by and on behalf of the well-known "trade" publication Daily Variety ("Variety"), for sponsorship rights arising from the Variety Power of Comedy Event ("EVENT") that took place on December 4, 2010. EXHIBIT 24-A thru K. VARONOS, JACKSON, MULLIGAN and TSOFTNET received the benefits and failed to pay on the agreement.

89. LEWIS is informed and believes that the terms of said agreement gave Defendant TODHD a "Premier Level Sponsorship" package for the Event in exchange for a $100,000.00, tax-deductible donation, payable by Defendant TODHD/ VARONOS to Brian Williams and due by December 1, 2010, through an invoice from Brian Williams. EXHIBIT 24-C & D.

90. LEWIS is informed and believes that under the terms of the Brian Williams/VARONOS Agreement, VARONOS would pay Brian Williams, $100,000.00 in exchange for numerous and extensive advertising concessions by Variety.

91. LEWIS is informed and believes that the sponsorship package included, inter alia, extensive advertising with the "TODHD" logo in a full page 4-color ad in Variety (EXHIBIT 33), guest passes at the EVENT, and an "Opportunity to have TODHD host, on the red carpet

and backstage, to capture by videotape unique clips with the comedians/performers."
EXHIBIT 24-A & B.

92.     LEWIS is informed and believes that VARONOS and FLEMING breached the contract by failing to pay the money for the EVENT'S advertising.

93.     LEWIS is informed and believes that GRAMMER promised to "take care of this," indicating that he would pay on the agreement, but GRAMMER failed to do so.

94.     LEWIS is informed and believes that GRAMMER and CORNELL reaped the benefits of the "free" advertising as their photos appeared in Variety. EXHIBIT 33.

95.     LEWIS is informed and believes that Defendant STAROPOLY was advertised to be a "multi-level" marketing company, but in actuality it is a Pyramid Scheme devised by GRAMMER, VARONOS, FLEMING, BLEU and CORNELL for the purpose of stealing money, credit card information, and other personal property (phishing) and information from its victims.

96.     LEWIS is informed and believes that GRAMMER, BLEU and CORNELL freely advertised the TODHD and STAROPOLY Criminal Schemes through websites and sales materials as members of the Criminal Scheme.

97.     LEWIS is informed and believes that as GRAMMER'S public relations attorney disclaimed STAROPOLY and TODHD as "scams" that stole $1.0 million from GRAMMER, GRAMMER continued to be a spokesperson for STAROPOLY and TODHD.

98.     GRAMMER never took any action against those he claimed defrauded him—VARONOS and FLEMING.   According to "insider" Gary Arbaugh, GRAMMER was the *originator* of the TODHD scam. EXHIBIT 92-A.

99.     LEWIS is informed and believes that GRAMMER, FLEMING, MILLER, KING, JACKSON, MULLIGAN and VARONOS advertised TODHD as "Kelsey's Network."

100.     GRAMMER and BLEU were Administrators of TODHD. *See* EXHIBIT 92-H.

101.     STAROPOLY'S site and sales and marketing materials featured GRAMMER on "conference calls" and numerous photographs of GRAMMER. EXHIBIT 56. One photo had

COMPLAINT                                                                Page 33

his name alongside the words "The World's First Monetized Social Network of the Stars." EXHIBIT 56-B.

102.     LEWIS is informed and believes that STAROPOLY was advertised as: "The WORLD'S FIRST MONETIZED SOCIAL NETWORK of the Stars!" and the "exclusive worldwide marketing arm for TODHD." EXHIBIT 19-A thru C.  The ad features photos of GRAMMER, BLEU and CORNELL.  In fact, TODHD and STAROPOLY were "fronts" for the Criminal Schemes to commit credit card fraud and other theft.  EXHIBIT 19-D & E show the PayPal sign-up button.

103.     LEWIS is informed and believes that GRAMMER issued an invitation to the public at large to join him on the STAROPOLY "launch call."  EXHIBIT 22.

104.     LEWIS is informed and believes that CORNELL recruited LEWIS as a STAROPOLY Associate, for which he paid and lost money in the scheme.

105.     LEWIS is informed and believes that the STAROPOLY "sales pitch" was skillful, pressured and preyed on those suffering financially in a bad economy.    Defendants GRAMMER, CORNELL, BLEU, VARONOS and FLEMING guaranteed that STAROPOLY was going to unite small businesses across the country and bring back the American economy.

106.     LEWIS is informed and believes that GRAMMER and CORNELL personally phoned LEWIS to encourage his enrollment saying that "STAROPOLY was an excellent business opportunity."

107.     LEWIS is informed and believes that GRAMMER, BLEU and CORNELL knew or should have known that people and fans would rely on their celebrity; hundreds if not thousands enrolled in one of the Criminal Scheme as a result.

108.     LEWIS is informed and believes that GRAMMER, BLEU and CORNELL enrolled and promoted STAROPOLY in notices to millions of fans on TWITTER, FACEBOOK, and all over the World Wide Web ("WEB").

109.     LEWIS is informed and believes that STAROPOLY conference calls featured GRAMMER, who personally promoted STAROPOLY.  EXHIBIT 20.

110.     LEWIS is informed and believes that on or about September, 2009, Plaintiffs TBCS

and its owners, the PAEGELS, were approached by JUNCO and TORO with a business "opportunity" that would assist said Plaintiffs in monetizing their new internet-based venture. JUNCO and TORO were the owners of GREEN, which they promoted as their business in partnership with VARONOS, FLEMING, BLEU, CORNELL, JACKSON, MULLIGAN and GRAMMER. TBCS and the PAEGELS were swindled by said Defendants as members of a well-organized Criminal Scheme. All of the Defendant's assertions were false.

111.     LEWIS is informed and believes that JUNCO and TORO stole nearly $80,000.00 from Plaintiffs by selling them a "sub-channel" on the TODHD "network" under their fake "business," GREEN. EXHIBIT 16-V thru AM & EXHIBIT 26.

112.     LEWIS is informed and believes that after TBCS and the PAEGELS discovered the swindle of JUNCO and TORO, they were persuaded by VARONOS and FLEMING to "ignore JUNCO and TORO and do business with the *source*," meaning themselves. VARONOS and FLEMING continued the swindle by selling TBCS and the PAEGELS what appeared to be a "better opportunity." In reality, said Plaintiffs were just being "passed around" to other members of the Criminal Scheme.

113.     LEWIS is informed and believes that VARONOS and FLEMING stole another $23,000.00 when they sold Plaintiffs PAEGELS and TBCS their "own" channel on TODHD. EXHIBIT 16-B thru L.

114.     LEWIS is informed and believes that eventually, MILLER, NIVEN and KING were employed to add their "marketing expertise." FLEMING introduced the PAEGELS to MILLER and introduced him as an advertising expert. MILLER introduced PAEGELS to NIVEN and KING. Because MILLER, NIVEN and KING operated in furtherance of one or more Criminal Schemes, it finally became clear that MILLER, NIVEN and KING were just the final stop in the chain of the "swindle."

115.     LEWIS is informed and believes that MILLER, NIVEN and KING ultimately stole not only money, but invaluable property with virtually unlimited monitizing potential as the material they stole was new and unique to the marketplace.

116.     LEWIS is informed and believes that MILLER and KING also ruined numerous pre-

existing business relationships that TBCS owned as assets.

117.     LEWIS is informed and believes that GRAMMER, CORNELL, BLEU, VARONOS, FLEMING, ROBINSON, WORMLEY, JUNCO, TORO, MILLER, NIVEN and KING conspired to steal $200,000 in cash, invaluable property, and business partners from TBCS/PAEGELS.

118.     LEWIS is informed and believes that when TBCS, the PAEGELS and others sued said Defendants in California, PLUIM, THOMAS, and VARGAS conspired with WILEMAN, MILLER, CORNELL, KELETI, VARONOS, ROBERTS, FIN INST, INS, KING, FLEMING, JUNCO, TORO and other members of the Criminal Scheme to unjustifiably dismiss the case.

119.     LEWIS is informed and believes that ALL Defendants have conspired with one or more other members of a Criminal Scheme to commit at least two acts of corruption.

120.     LEWIS is informed and believes that said Criminal Schemes—originating in California, Florida, Colorado, Massachusetts and Arizona—reached into the state of Tennessee to victimize LEWIS.

121.     LEWIS is informed and believes that these Criminal Schemes have operated for decades and are responsible for wreaking devastation upon numerous other individuals and businesses in much the same or similar ways as they have done to Plaintiffs in this matter.

122.     As the Private Attorney General, LEWIS intends to "corral" members of these Criminal Schemes, seek justice and punishment for the harm they have caused, and put an end to their activities for the sake of the people of the United States and the citizens of its affected states.

123.     Damages for these Criminal Schemes are itemized in ¶ 958.

///
///
///
///
///

# FIRST CAUSE OF ACTION

**OBSTRUCTION OF JUSTICE (INCLUDING, BUT NOT LIMITED TO: JUDICIAL RACKETEERING, ATTEMPTED MURDER, COLLUSION, CONSPIRACY, PERJURY, DEFAMATION, FALSE REPORTING, FAILING TO ADJUDICATE, BRIBERY, ASSAULT & TECHNOLOGY HACKING AND WIRE TAPPING) asserted by Plaintiffs LEWIS, LORRAINE, LEWIS III, PAEGELS, TBC SPORTS, and DOE Plaintiffs 1-300 against INS, FIN INST, CARMAX, GRAMMER, CORNELL, FLEMING, FARMERS, ZURICH, MARYLAND, MILLER, KING, NEWELL, VARONOS, WILEMAN, YAO, PLUIM, SHERMAN, COLE, WELCH, HAIGHT, VARGAS, THOMAS, WALSH, FORD, KEHOE, KELETI, COX, HADDOCK, ROBERTS, JUNCO, TORO, WORMLEY, BEATY, INS, STELL, CAMPION, SCHWARTZ, FARGO, BORRIS, BASLE, SLOUGH, NEWELL, WESLEY, GOLDEN, KRATTI, EDMON, COLE, FANGARY, INS, FIN INST, BEATY, ROBINSON, YAO, KELETI, ALMEIDA, JACKSON, MULLIGAN, B.H.P.D., BLEU, HADDOCK, NIVEN, WESTBROOK, KEHOE, B.H.P.D and DOE Defendants 1-300 inclusive.**

**(18 *U.S.C.* § 1962(c); The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; U.S. Const. amends. VIII and XIV; 18 U.S.C. 2510 & 2511 *et seq.*; T.C.A. § 39-12-201 et seq.; T.C.A. § 39-16-602 et seq.; T.C.A. § 39-16-705; T.C.A. § 39-14-602(b)(4); T.C.A. § 39-14-602(a); Judicial Canons 1 and 2; Tennessee Adult Protection Act of 1978, T.C.A CH. 6, PT. 1 §§ 71-6-101 and 120; Ariz. Revised Stat. §46-455; Fl. Stat. § 825.102; Ca. Welfare and Institutions Code § 15610.07; Ca. Code of Civ. Proc. § 527.6; T.C.A.71-6-120 et seq. Tenn. Adult Protection Act; T.C.A. § 39-12-101; T.C.A. § 39-12-102; T.C.A. § 39-12-103; T.C.A. § 39-17-315; T.C.A. § 39-17-309; T.C.A. § 39-17-120; T.C.A. § 39-16-702; T.C.A. § 39-12-204.)**

124.     By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing paragraphs 1-123 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

DEFINITION OF CRIMINAL SCHEME "A" PREDICATE ACTS:   THOSE ACTS COMMITTED DURING COMMISSION OF WRONGFUL ACTS AND THE UNDERLYING FRAUDS FOR WHICH LEGAL ACTION WAS ORIGINALLY BROUGHT.

125.     VARONOS, FLEMING, MILLER, KING, CORNELL, GRAMMER, BLEU, FIN INST, INS, ROBINSON, WORMLEY, JUNCO, TORO, and BEATY actively engaged in fraud and corruption by lying, cheating and stealing Plaintiffs money and property, either directly or indirectly.

126.     WILEMAN has a history of obstructing justice through fraud, perjury and avarice. EXHIBIT 5-S thru W is *Firestone* where the appellate court admonished him for

misrepresentations of fact and law.

127.    SHERMAN obstructed justice and conspired with FANGARY to subvert the U.S. Constitution Due Process and state and federal laws by suborning FANGARY'S wrongful acts: perjury, discovery violations, and federal mail/mailbox tampering by FANGARY.

128.    SHERMAN awarded FANGARY sanctions against NELLE for insisting that FANGARY follow proper procedures of law. Despite SHERMAN'S lesson to FANGARY on what he was entitled to, SHERMAN nonetheless sanctioned NELLE for offering FANGARY a true and complete *copy* of the files instead of the *original*.

129.    FANGARY and SHERMAN failed to sign the court's order, precluding appeal.

130.    FANGARY misinformed NELLE as to SHERMAN'S ruling.

131.    SHERMAN, PLUIM, COLE, WELCH, and HAIGHT obstructed justice by refusing to adjudicate/ignoring Plaintiffs' properly-filed motions and petitions.

132.    SHERMAN, PLUIM, COLE, WELCH, and HAIGHT obstructed appellate justice by persistently failing to rule on proper motions and petitions.

133.    SHERMAN, COLE, PLUIM, WELCH and HAIGHT obstructed justice by misrepresenting financial information on their Fair Political Practices Form 700 ("700's"). EXHIBIT 78 are copies of this form for the last 7 years for each said Defendant.

134.    On the 700's, SHERMAN, COLE, PLUIM, WELCH and HAIGHT each represented that they did not own retirement accounts except that PLUIM claimed 12 new retirement accounts in 2012.

135.    On her 700's, COLE misrepresented her husbands' business and income despite having filed "Amendments" for each of the last 7 years.

136.    HAIGHT obstructed justice by ruling that STELL and CAMPION did not owe a duty to the heirs of an intestate decedent.

137.    HAIGHT conspired with STELL and CAMPION to deprive heirs of their $250,000.00 inheritance through perjury, avarice, and countless violations of federal and state law.

138.    CORNELL, COLE, SCHWARTZ and B.H.P.D. obstructed justice by conspiring against LEWIS via perjury, due process violations, defamation, false warrant, and invasion of

privacy.

139.     CARMAX and FARGO conspired to falsely claim that LEWIS owed $10,000.00 on his automobile in order to get the Knoxville Sheriff to arrest LEWIS.

140.     Said arrest was for the sole purpose of obtaining a mug shot of LEWIS in furtherance of the Criminal Scheme.

141.     For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

DEFINITION OF SCHEME "B" PREDICATE ACTS: Criminal acts incurred by Defendants in court during litigation of underlying cases. no.'s GC047909, 13875, 13899, 13895, GC047909, 11-CV-08810GW(SHx), PROPS0700007, 30-2012-00609008-PR-TR-CJC, 30-2012-00609235-PR-TR-CJC, SS022572, 11S00624, BC495150, PAS 11S00624.

142.     The transcripts and/or minute orders clearly show that PLUIM, THOMAS, VARGAS, VARONOS, ROBERTS, WILEMAN, STELL, CAMPION, WELCH, BORRIS, BASLE, SLOUGH, WESLEY, GOLDEN, KRATTI, EDMON, COLE, HAIGHT, JUNCO, CORNELL, TORO, KING, KELETI, FANGARY, SHERMAN, INS, FIN INST, BEATY, ROBINSON and MILLER conspired in furtherance of the Criminal Schemes. *See generally,* EXHIBITS 1-92.

143.     The transcripts prove that PLUIM tried to prevent NELLE and LEWIS from disputing the multitude of lies told by KING, WILEMAN, MILLER, ROBERTS, VARONOS, JUNCO, INS, FIN INST on the record. *See generally* EXHIBIT 2 showing innumerable instances of PLUIM obstructing justice by preventing NELLE and LEWIS from speaking as to defendant's false statements and clearly expressing bias.

144.     VARONOS, MILLER, PLUIM and ROBERTS conspired to deceive the court and Plaintiffs on pretext that VARONOS had not been served at all. VARONOS was not only served personally, but also numerous times through a Nevada resident agent as a principle in one of more corporations. Despite that NELLE proved that VARONOS, ROBERTS, and MILLER were lying about the service being invalid, PLUIM dismissed VARONOS from the entire suit without any offer of proof by VARONOS being made or giving NELLE an

1     opportunity to object.

2 145.     ROBERTS served as counsel to the Criminal Scheme by representing JUNCO,
3     TORO, VARONOS, and FLEMING in case no. GC047909.

4 146.     ROBERTS, JUNCO, VARONOS and MILLER lied to the court on December 14,
5     2012 and January 18, 2013. EXHIBIT 2-CJ thru CM and DC thru DQ.

6 147.     ROBERTS perjured himself about VARONOS, JUNCO, TORO, and FLEMING not
7     having been served with the summons and complaint—despite that both JUNCO and TORO
8     had "answered" it on September 14, 2011. VARONOS and FLEMING were not only served,
9     but FLEMING'S service was video-recorded and VARONOS'S service was acknowledged
10     by MILLER in court on October 14, 2011. PLUIM obstructed justice when he violated
11     NELLE'S right to be heard.

12 148.     At the December 14, 2012 hearing PLUIM and WILEMAN both admitted to bribery
13     in the form of a "flat fee." EXHIBIT 2-CM thru CN. ROBERTS acknowledged same by
14     expressing that it was "the gift that kept on giving."

15 149.     WILEMAN furthered the Criminal Scheme by speaking in court on behalf of ALL
16     Defendants when he lacked standing. His attendance created pressure on PLUIM, THOMAS
17     and VARGAS to adhere to the Criminal Scheme.

18 150.     WILEMAN attended hearings despite having *no* legitimate reason for being there.
19     NEWELL furthered the activities of the Criminal Scheme by conspiring with KING,
20     WILEMAN, INS to permit WILEMAN to act on KING'S behalf without formal substitution.

21 151.     NEWELL gave perjured testimony in federal court on December 8, 2011 about his
22     representation of KING.

23 152.     MILLER assaulted PAEGEL'S process server with a gun.

24 153.     MILLER and WILEMAN admitted to owning numerous unregistered firearms.
25     EXHIBIT 14-AT.

26 154.     PLUIM, THOMAS and VARGAS ignored any and all pleadings that proved
27     wrongdoing by WILEMAN, MILLER, VARONOS, GRAMMER, ROBERTS, JUNCO,
28     TORO, FLEMING, KING, INS., FIN INST, NEWELL, CORNELL, YAO, and KELETI.

155. PLUIM refused to accept exculpatory evidence about LEWIS.

156. PLUIM, VARGAS and THOMAS conspired and colluded with the Defendants in furtherance of illegal actions in—and out of—court.

157. CORNELL, PLUIM, VARGAS, THOMAS, NEWELL, KING, INS, WILEMAN and YAO conspired to protect WILEMAN, YAO, MILLER and KING and ensure uninterrupted success of the Criminal Scheme. *See generally* EXHIBIT 2.

158. PLUIM openly coached defendants as to how to get a dismissal. *See generally,* EXHIBIT 2.

159. PLUIM and WILEMAN conspired to obstruct justice via perjury, due process, and on rulings.

160. WILEMAN, MILLER, INS, KING, JUNCO, CORNELL, KELETI, YAO, PLUIM, THOMAS, VARGAS, COLE, ROBERTS, VARONOS and attorneys of record for FIN INST conspired to obstruct justice via perjury. *See generally,* EXHIBIT 2.

161. ALMEIDA actively participated in the Criminal Scheme by refusing to respond in any responsible way to inquiries about WILEMAN'S representation; ALMEIDA refused to corroborate that WILEMAN legitimately represented KING. EXHIBIT 16-AN thru AQ.

162. PLUIM and THOMAS conspired and violated federal conflict of interest statutes by coordinating their efforts against LEWIS in a number of ways, including, but not limited to, dismissing LEWIS'S SUPPLEMENT where PLUIM and THOMAS were both named defendants. EXHIBIT 2-BC, trans. Sept. 14, 2012. And most of the plaintiffs and defendants were dismissed *sua sponte* on Dec. 14, 2012. EXHIBIT 3-H & I.

163. PLUIM and THOMAS regularly conspired to generally deny parties their rights to due process. THOMAS regularly conducted ALL Court Call hearings instead of PLUIM. While PLUIM'S name is on the Court Call list, clerk THOMAS handled all such hearings instead. Callers regularly refer to her as "your honor," which THOMAS failed to correct.

164. Numerous times using CourtCall, THOMAS was heard making "deals" with certain attorneys. THOMAS was heard negotiating for special favors that *inter alia* contravened the LASC "fast track" system. One such case involved an attorney who requested more time to

prepare for trial. THOMAS said she couldn't grant the request, however she suggested that being assigned to mediation would cause at least a 60-day delay. As a result, the "court" [THOMAS] assigned the case to mediation, giving that attorney what he wanted—at the court's and parties expense.

165.     PLUIM, THOMAS, and VARGAS conspired with defendants and CORNELL to dismiss case no. GC047909, despite 14 defaults. EXHIBIT 2-AT thru AV and adopted by PLUIM, EXHIBIT 2-AY.

166.     On December 14, 2012, PLUIM, THOMAS and VARGAS conspired to deny LEWIS and NELLE due process through CourtCall changing a status conference to *sua sponte* dismissals of most defendants. EXHIBIT 2-CB thru CW; EXHIBIT 3-H thru I; and EXHIBIT 4, CourtCall cancellations.

167.     PLUIM, VARGAS and THOMAS actively participated in the Criminal Scheme by giving legal "protection" from liability through the Los Angeles Superior Court System; PLUIM regularly ignored the California Codes, Rules of Court, the Civil RICO ACT and common law. *See generally,* EXHIBIT 2 and the Tentative Rulings in EXHIBIT 3.

168.     PLUIM dismissed case no. GC047909 against 31 Defendants despite irrefutable and uncontroverted proof that Defendants defrauded Plaintiffs and committed 33 other offenses against them. *See generally,* EXHIBIT 2-DU thru DV for dismissal rationale.

169.     The extent of PLUIM'S involvement in the conspiracy is so blatant that he even refused to order WILEMAN "cease and desist" harassing LEWIS and his disabled brother at LEWIS'S personal residence. *See* EXHIBIT 2-BO thru BR., EXHIBIT 3-D thru G. PLUIM ignored WILEMAN'S continued harassment and invasion of LEWIS'S privacy despite WILEMAN'S in-court admission that he telephoned LEWIS'S home and questioned LEWIS'S disabled brother.

170.     CORNELL conspired with said Defendants to discredit LEWIS by lying, stealing, hacking, assaulting, threatening, and endangering him and his children and grandchildren. EXHHIBIT 54.

171.     CORNELL admitted to being in collusion with GRAMMER "since July," but didn't

say of what year! Given the facts and circumstances, CORNELL colluded with GRAMMER beginning before the case was filed in August, 2011. EXHIBIT 7. In fact, CORNELL—while posing as a plaintiff—colluded with the Defendants as a co-conspirator in furtherance of the Criminal Scheme. Ultimately, CORNELL'S cooperation with Defendants cost Plaintiffs millions of dollars in litigation costs.

172.    As planned, on September 13, 2012 ALL the Defendants unanimously waived CORNELL'S liability in the case when she asked PLUIM to dismiss her as a Plaintiff.

173.    CORNELL obstructed justice via perjury, fraud, deceit, and misrepresentations to PLUIM, COLE, SCHWARTZ, and plaintiffs; CORNELL has an on-going and well-established pattern of publicly lying to/about others.

174.    MILLER obstructed justice via perjury to the courts and by filing false reports against NELLE with the Walnut, CA Sheriff's dept., the Glendora police dept., and the CA state bar.

175.    WILEMAN, YAO, KELETI, INS., JUNCO, MILLER, KING, VARONOS, FIN INST and ROBERTS actively participated in Criminal Scheme B via perjury.

176.    FARMERS obstructed justice by concealing the date of when it hired WILEMAN.

177.    WILEMAN'S constant, on-going, and continuous lack of knowledge of the rules and his misrepresentations of law has caused LEWIS to doubt his status as an attorney.

178.    At the time that WILEMAN removed California case no. GC047909 to federal jurisdiction (case no.11-cv-08810-GW), he so corrupted the original complaint as to cause it to become incomprehensible. TBCS/PAEGELS did not make the discovery until just prior to the remand.

179.    WILEMAN altered 206 pages of complaint GC047909 and committed perjury by *swearing* that he was submitting a "true and exact" copy. EXHIBIT 6 is a comparative analysis between the original complaint filed by TBCS/PAEGELS and the corrupted complaint submitted by WILEMAN at the time he removed the case to federal court. WILEMAN never refuted this allegation.

180.    YAO and KELETI conspired with WILEMAN to then complain about being unable to decipher the corrupted complaint.

181. WILEMAN was not any attorney of record at the time he removed the case; he abjectly ignored the state and federal requirements for substituting as the attorney of record; he nevertheless clogged the courts with pleadings.

182. CORNELL, PLUIM, THOMAS, VARGAS, VARONOS, MILLER, JUNCO, INS, FIN INST, KING, NEWELL, YAO, KELETI, and WILEMAN conspired and colluded to defraud plaintiffs by wasting time, clogging, and lying about facts and law at hearings and in pleadings.

183. PLUIM, THOMAS, and VARGAS denied TBCS/PAEGELS their constitutional rights to due process by ignoring their pleadings, discriminating against them with respect to hearings, and conspiring with WILEMAN, NEWELL, ROBERTS, MILLER, VARONOS, JUNCO and CORNELL to vex, defame, mislead and harass NELLE in court.

184. PLUIM regularly granted Defendants' motions and denied Plaintiffs' motions without reading them or knowing the contents of same or being able to articulate any rationale. Numerous transcripts showed PLUIM'S on-going bias and apparent bribery. *See generally* EXHIBIT 2.

185. PLUIM, KELETI and THOMAS denied LEWIS'S timely petitions for peremptory challenge based upon PLUIM'S overt act of bias for ordering LEWIS to "shut up, get out of my courtroom, and never come back," which PLUIM said without any provocation whatsoever.

186. PLUIM, KELETI and THOMAS denied NELLE'S statement for disqualification based on bias.

187. WILEMAN, MILLER and PLUIM colluded to put on a pretext in court to "serve" MILLER with a third copy of the complaint; he had already been served by the Sheriff and LEWIS. PLUIM ordered NELLE to re-serve MILLER with a corrupt copy of the complaint supplied by WILEMAN in order to legitimize the corrupted complaint and/or cause NELLE to commit a felony as part of the Criminal Scheme. See EXHIBIT 2-Y:12-13 in particular where PLUIM asks NELLE to mail MILLER with a "correct" copy. All present knew that MILLER had already been served with two correct copies of the complaint.

188.    YAO was hired by ALMEIDA to represent KING and to draft pleadings, however YAO regularly misstated facts and laws. She criticized the [corrupted] "complaint" as "incomprehensible" and called Plaintiffs' counsel names ("contumacious") for submitting a complaint in that condition to the court. The complaint she was referring to was the version that had been altered by WILEMAN. This was a fraudulent attempt to mislead the court.

189.    LEWIS and NELLE spent an inordinate amount of time correcting the legal errors replete in pleadings filed by WILEMAN, YAO and KELETI.

190.    WILEMAN and YAO refused to comply with Plaintiff's subpoena for YAO'S "working copy" of the complaint she was referring to in drafting her pleadings. PLUIM ignored PAEGEL'S motion to compel YAO to produce her working copy of the complaint.

191.    Subsequently, YAO notified NELLE that she was no longer working on the case via an e-mail to NELLE. YAO failed to file proper withdrawal paperwork.

192.    MILLER conspired with WILEMAN to try to have NELLE arrested by the Glendora Police Dept. by filing a false report against her. WILEMAN then sued NELLE in Superior Court for same incorporating MILLER'S false police report. EXHIBIT 61.

193.    For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS:

DEFINITION OF SCHEME "C" PREDICATE ACTS: Criminal Scheme C consisted of activities engaged in by Defendants for the express purpose of impeding LEWIS'S investigations as PAG under the Civil RICO Act.

194.    CORNELL obstructed justice by stealing LEWIS'S social security card, veteran's administration medical card, and two cell phones in order to access his private information and create a false defamatory profile of LEWIS that PLUIM, THOMAS, VARGAS, WILEMAN, MILLER, VARONOS, ROBERTS, JUNCO and CORNELL used against LEWIS in court in order to discredit him and his pleadings. EXHIBIT 8-A & B.

195.    CORNELL, MILLER, KEHOE, HADDOCK, COX and FORD spread said false profile to some 5000 internet websites.

196.    CORNELL obstructed justice by filing false reports against LEWIS with

SCHWARTZ, B.H.P.D., the Temple City Police Dept., and COLE.

197.    CORNELL conspired with PLUIM, MILLER, WILEMAN, INS, and FIN INST to defame LEWIS and NELLE in hearing.

198.    PLUIM, THOMAS, and VARGAS denied LEWIS his constitutional rights to due process by ignoring his pleadings, discriminating against him, and conspiring with WILEMAN, KELETI, YAO, MILLER, VARONOS, and CORNELL to vex, harass, threaten and endanger his life.

199.    COLE obstructed justice by conspiring with CORNELL against LEWIS to accept evidence without due process.

200.    CORNELL, COX, HADDOCK, KEHOE, and MILLER endangered LEWIS, LEWIS III, LORRAINE, and MINORS 1, 2, 3, and 4 by exposing them all to predators. This was done by putting their names, addresses and maps to their homes and work addresses over the internet. *See example*, EXHIBIT 9, for CORNELL'S admission to same on her Facebook.

201.    CORNELL, WILEMAN, ROBERTS, VARONOS, YAO, INS., FIN. INST., WALSH, FORD, KEHOE, COLE, KELETI, KING, PLUIM, JUNCO and MILLER obstructed justice by conspiring to falsely accuse LEWIS of committing illegal acts.

202.    CORNELL, PLUIM, THOMAS, VARGAS, VARONOS, MILLER, JUNCO, INS, FIN INST, KING, NEWELL, YAO, KELETI, and WILEMAN obstructed justice by conspiring to defraud LEWIS by wasting time, clogging dockets, and lying about facts and law.

203.    CORNELL admitted to hacking LEWIS'S Facebook.

204.    CORNELL hacked into LEWIS'S Bank of America checking account, his 2012 I.R.S. tax return, his Facebook, Linked-In, and e-mails. EXHIBIT 10, A – K.

205.    At hearing on October 19, 2012, at the direct request of WILEMAN, VARGAS phoned the sheriff's office to send three Sheriffs to intimate LEWIS and NELLE who were in regular attendance there. PLUIM instructed the Sheriffs to keep LEWIS and NELLE from being "heard" under the threat of immediate incarceration.

206.    THOMAS tried to keep LEWIS from court by telling him, "You have guts coming

back here." This statement was made at the hearing following PLUIM'S order for LEWIS to "Shut up, get out, and never come back."

207. PLUIM ignored LEWIS'S motion and complaints for relief from harassment of his family. Instead, PLUIM actively encouraged harassment of LEWIS, LEWIS III, LORRAINE, and further endangered the MINORS.

208. PLUIM further harassed and intimidated LEWIS by threatening to have him incarcerated, but refused to state any facts constituting a reason as to why. PLUIM, THOMAS, and VARGAS conspired to pretend to issue a "no-bail warrant" for LEWIS'S arrest ostensibly based solely on WILEMAN'S request without any proof. EXHIBIT 8.

209. PLUIM conspired with WILEMAN to continue the hearing on October 19, 2012 because WILEMAN said he "wasn't ready" despite PLUIM'S scheduling 1 hour of time. PLUIM had threatened LEWIS with contempt if he didn't attend despite knowing that LEWIS'S doctor forbid his travel to California. This charade was a ruse to harass LEWIS and obstruct justice by denying due process.

210. PLUIM furthered the Criminal Scheme by ignoring LEWIS and PAEGEL'S/TBCS motions and pleadings that demanded evidence of the allegations made by PLUIM, CORNELL, VARONOS, WILEMAN, JUNCO, KELETI and ROBERTS.

211. PLUIM granted all of defendants' motions without any offers of proof of any kind.

212. All Plaintiffs have been harassed, threatened, stalked, hacked, defrauded, defamed, and blackmailed by one or more of Defendants CORNELL, MILLER, COX, WILEMAN, PLUIM, THOMAS, VARONOS, TORO, JACKSON, MULLIGAN, JUNCO, ROBERTS, WALSH, FORD, SCHWARTZ, B.H.P.D., FANGARY, STELL, CAMPION, WELCH, HAIGHT, COLE, SHERMAN, HADDOCK, KING, NIVEN, COX, ROBINSON, WESTBROOK WORMLEY, and KEHOE.

213. PLUIM, VARGAS, and THOMAS destroyed evidence belonging to Plaintiffs in court—on the record—on January 18, 2013 by dismantling PAEGEL'S/TBCS conformed copy of a document they already had without her permission—for no apparent reason. EXHIBIT 2-DE thru DF.

214. COLE, WELCH, HAIGHT, SHERMAN, GOLDEN, KRATTI, BORRIS, BASLE, SLOUGH, WESLEY, EDMON, PLUIM, THOMAS and VARGAS regularly decided matters in ways that were illogical and unrelated to rules of law and cannons of judicial conduct.

215. PLUIM, VARGAS and THOMAS continuously denied LEWIS and PAEGEL their constitutional rights to due process during hearings, in docketing pleadings, and in refusing to properly process requests for default.

216. THOMAS and VARGAS regularly and habitually practiced law without a license by giving legal advice, drawing legal conclusions, making rulings, and conducting telephonic hearings with attorneys and other parties outside PLUIM'S hearing.

217. VARONOS threatened LEWIS'S life on the record by stating that LEWIS was a "dead man." PLUIM said and did absolutely nothing about VARONOS'S threat.

218. PLUIM, THOMAS, VARGAS, WILEMAN, KELETI, MILLER, FORD, WALSH, CORNELL, COX, KEHOE, WESTBROOK and VARONOS conspired to extricate LEWIS'S involvement in the case via various means including but not limited to: threatening, intimidating, defaming, endangering, denying due process, issuing a no-bail warrant, invading his privacy, ignoring his pleadings, and generally harassing him. *See generally,* EXHIBIT 2; excerpt of docket, EXHIBIT 11- D; and EXHIBIT 12.

219. PLUIM, VARGAS and THOMAS ignored three letters from LEWIS'S doctor that he was not to travel. The distance between Tennessee and California exceeds 2200 miles and LEWIS is not allowed to fly. EXHIBIT 13. Nevertheless, LEWIS was denied access to hearings via CourtCall. PLUIM issued an order for LEWIS to appear in his court room on October 19, 2012, which LEWIS complied with, despite his doctor's orders, only to be denied his right to be heard. PLUIM, THOMAS, VARGAS, WILEMAN, VARONOS, MILLER, INS, FIN INST, JUNCO and KELETI were all aware that LEWIS was in treatment for Leukemia—and that he was supposed to be in treatment in Florida on October 19, 2012 instead of in a California courtroom. *See* EXHIBIT 2-P:14-16.

220. PLUIM, VARGAS and THOMAS conspired to deny LEWIS and TBCS/PAEGELS their constitutional rights to due process by specifically singling them out to refuse to allow

them access to the December 14, 2012 hearing via CourtCall and then lying about it on the record. As a result of LEWIS'S absence, PLUIM was effectively able to get LEWIS out of his court, to shut up, and never to come back or face immediate arrest WITHOUT BAIL despite it being unwarranted and illegal. Even if LEWIS had practiced law without a license, a misdemeanor such as that hardly justifies a no-bail warrant. Incarceration would have deprived LEWIS of medical treatment and amounted to a death sentence for LEWIS. LEWIS herein alleges that this was the true purpose of this Criminal Scheme.

221.     The scenario described in the preceding paragraph constitutes "attempted murder" of LEWIS by CORNELL, PLUIM, WILEMAN, VARONOS, WESTBROOK, KELETI, THOMAS, and VARGAS.

222.     For one hearing, LEWIS suffered two heart attacks on his way from Tennessee to California in response to PLUIM'S order to appear.

223.     At a "meet and confer" on January 16, 2012, MILLER, WILEMAN and JUNCO conspired to verbally assault and abuse NELLE. *See generally,* EXHIBIT 14.

224.     MILLER admitted to spreading lies and filth about NELLE and LEWIS on at least 5,000 sites on the internet, inviting her to sue him if she didn't like it. See EXHIBIT 14, pg. Y [last entry]. By such acts, MILLER intentionally caused destruction of the PAEGEL'S livelihood.

225.     CORNELL obstructed justice by defaming LEWIS and claiming that he was not a veteran despite having his engraved purple-heart set and veterans I.D. cards, which CORNELL had stolen from LEWIS.

226.     MILLER and CORNELL conspired to create a Google "Wikipedia listing" of LEWIS giving all of his personal information in such a way as to make it appear to have been put there by LEWIS. CORNELL drew attention to the site on her Facebook page.

227.     MILLER, KEHOE, COX, HADDOCK and CORNELL exposed the identities and addresses of all of the MINORS on their various and numerous internet sites, ignoring demands for immediate removal.

228.     MILLER put a map to Plaintiff LORRAINE'S workplace on his HITMAN internet

site and blog, intentionally exposing her and two MINORS to predators and causing her to quit her job and move her residence.

229.     MILLER put a map to Plaintiff LEWIS III'S workplace on his HITMAN internet site and blog, exposing him and his two MINORS to predators.

230.     CORNELL and COX made a false report about LEWIS III to his employer that resulted in his termination.

231.     WILEMAN, VARONOS, MILLER, ROBERTS, KELETI, JUNCO, and CORNELL perjured themselves at every hearing they attended. The attorneys representing FIN INST made no in-court statements at all; it was obvious that WILEMAN was selected as the group's "spokesperson." WILEMAN'S false statements in court were tacitly adopted by all Defendants, who were also seen with CORNELL as the center of attention in the hallway outside of PLUIM'S courtroom on September 13, 2012 after NELLE'S withdrawal from her representation.

232.     KING perjured herself in pleadings submitted by NEWELL, WILEMAN, YAO, and KELETI in state and federal court.

233.     To impede LEWIS'S investigations, CORNELL perjured herself by claiming that LEWIS committed criminal acts against her and her son, Jack. *See* EXHIBIT 15.

234.     CORNELL, COX, KEHOE and WESTBROOK tried to obstruct LEWIS'S investigations by deliberately harming LEWIS'S mother, an 82 year old woman with a heart condition.

235.     CORNELL attempted to murder LEWIS when he wanted his money, laptop computer, and purple-heart set returned.

236.     WESTBROOK intended to obstruct LEWIS by placing defamatory material about SCOTT on his Facebook page.

237.     WESTBROOK phoned SCOTT and spoke with LEWIS calling him names and threatening to "ruin him."

238.     WESTBROOK admitted to speaking with CORNELL, KEHOE, and COX about LEWIS and confirmed that said Defendants conspired to defame LEWIS and harass his

mother and son, SCOTT.

239.     WESTBROOK threatened LEWIS on October 6, 2013.

240.     LEWIS'S mother received 8 (eight) phone calls from WESTBROOK during the night of October 5, 2013 and left defamatory messages about LEWIS on her phone. Said messages and calls resulted in a complaint being filed with the Sarasota, Fl. County Sheriff's Dept. That Report No. is "13-68164."

241.     LEWIS'S mother reported that she was "scared to death" and told WESTBROOK to stop calling her, which he ignored.

242.     WESTBROOK told LEWIS'S mother that he intended to see to it that LEWIS and SCOTT "go to jail." LEWIS'S mother became very upset.

243.     WESTBROOK, a "gay" man was spurned by SCOTT who had considered rooming with WESTBROOK until SCOTT discovered that WESTBROOK planned on being SCOTT'S "lover." SCOTT is not gay. EXHIBIT 93.

244.     WESTBROOK was aware of LEWIS'S and LEWIS'S mother's delicate medical condition.

245.     For damages as a result of this Criminal Scheme, see ¶ 958. *See*

## CRIMINAL SCHEMES "A," "B," AND "C" PREDICATE ACTS

246.     Each Defendant is liable *directly* or *indirectly* for the entire Criminal Scheme as a member of same, which began as theft of money, property, or other illegal act by GRAMMER, CORNELL, VARONOS, FLEMING, JUNCO, TORO, MILLER, INS, FIN INST, ROBINSON, JACKSON, MULLIGAN, NIVEN, BEATY, BLEU, WORMLEY, KING, FANGARY, and STELL and ended in the court systems of California, Florida and Tennessee with the *additional* collusive, coordinated and conspiratorial efforts of WILEMAN, KELETI, YAO, KEITH, PLUIM, THOMAS, VARGAS, KEHOE, COX, YAO, HADDOCK, ROBERTS, INS, FIN INST, HAIGHT, WELCH, CAMPION, COLE and SHERMAN, BORRIS, BASLE, SLOUGH, WESLEY, EDMON, KRATTI and GOLDEN.

247.     For damages as a result of these Criminal Schemes, see ¶ 958.

///

# SECOND CAUSE OF ACTION

## GRAND THEFT BY FALSE PRETENSES AND FINANCIAL ABUSE OF ELDERLY AND DISABLED asserted by Plaintiffs LEWIS, TBCS, LEWIS III, PAEGELS and DOES 1-300 against Defendants CARMAX, VARONOS, GRAMMER, BLEU, KING, MILLER, FLEMING, TORO, JUNCO, NIVEN, CORNELL, COX, BEATY, PLUIM, VARGAS, THOMAS, WILEMAN, YAO, FIN INST, ROBINSON, ROBERTS, WORMLEY, KEHOE and DOES 1-300.

**(The ACTS; Civil RICO; T.C.A. § 39-14-101; T.C.A. § 39-14-103—105; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; FTC Regulations; 18 U.S.C. §§ 2261 et seq., 2262, and 2265; Tennessee Adult Protection Act of 1978, T.C.A CH. 6, PT. 1 §§ 71-6-101 and 120; Ariz. Revised Stat. §46-455; Fl. Stat. § 825.102; Ca. Welfare and Institutions Code § 15610.07; Ca. Code of Civ. Proc. § 527.6; T.C.A.71-6-120 et seq.)**

248.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-247 inclusive of this Complaint as if the same were hereat set forth in full.

249.     Demands for return of stolen money, property and information by Defendants have ALL been completely ignored. EXHIBIT 16.

## CRIMINAL SCHEME "A" PREDICATE ACTS:

250.     Said Defendants stole money and/or property from said Plaintiffs by making false statements and misrepresentations to or about said Plaintiffs, either directly or indirectly.

251.     Plaintiffs LEWIS and/or PAEGELS, directly or indirectly, entered into agreements with Defendants VARONOS, JACKSON, MULLIGAN, FLEMING, FIN INST, BEATY, ROBINSON, WORMLEY, MILLER, JUNCO, TORO and KING in good faith and in reliance on the perceived honesty of GRAMMER, CORNELL, BLEU and the credentials of KING and NIVEN all of which were asserted under false pretenses.

252.     GRAMMER, CORNELL and BLEU were "the celebrities of TODHD" in a charity fundraiser where the donations "disappeared." See EXHIBIT 17.

253.     GRAMMER'S actions and the deposition of Gary Arbaugh confirm both the existence of the Criminal Schemes and GRAMMER'S personal involvement in them. Clearly, GRAMMER was an organizer at the highest level.

254.     GRAMMER, CORNELL and BLEU were the "faces" on TODHD, STAROPOLY and

ESTAR.TV, which were internet schemes to defraud the public and commit large scale credit card and identity theft.

255.     "Agreements" were initiated directly or indirectly by CORNELL, GRAMMER, JUNCO, TORO, VARONOS, FLEMING, ROBINSON, WORMLEY, FIN INST, TODHD, STAROPOLY, BLEU, BEATY, KING and MILLER with said Plaintiffs and hundreds, if not thousands, of other "victims" under false pretenses to take and permanently deprive all of them of their money and/or property as part of an on-going and evolving series of Criminal Schemes. EXHIBIT 18 is CORNELL'S STAROPOLY sign-up "pitch." EXHIBIT 19 is GRAMMERS', BLEUS', CORNELLS', and FLEMINGS' STAROPOLY sales materials.  EXHIBIT 20 is GRAMMER'S conference call reminder.  EXHIBIT 21 is HAYELANDS' ad on LinkedIn. EXHIBIT 22 is GRAMMER'S TODHD ad on PRWeb.  EXHIBIT 23 is MILLER/HITMAN agreement with TBCS showing his connectedness to KING—same addresses, phones, and advertising.    EXHIBIT 24 is the Variety-WILLIAMS-VARONOS/TODHD agreement. EXHIBIT 25 is ROBINSON/MILNER agreement.   EXHIBIT 26 is an excerpt of the TORO/GREEN agreement with TBCS. EXHIBIT 27 shows that at the time that JUNCO showed TBCS the video of BLEU advertising MYEZTV, VIEWPARTNER had already abandoned MYEZTV and Gary Arbaugh made clear that the video was false. EXHBIT 92-J.

256.     GRAMMER, BLEU and CORNELL all falsely advertised and solicited for the Criminal Schemes fabricated by VARONOS, FLEMING, GRAMMER, KING, BLEU and MILLER under the "business" models: TODHD, STAROPOLY and eSTAR.TV with the specific intent of taking money and property under false pretenses. EXHIBIT 28 is an excerpt taken from MILLER'S on-line advertising campaign for HITMAN marketing services. EXHIBIT 29 is the VIEWPARTNER'S agreement drafted for TBCS with TODHD. EXHIBIT 30 is an excerpt from eSTAR.TV agreement. EXHIBIT 31 consists of ad pieces by VARONOS and FLEMING.

257.     Said Defendants specifically intended that Plaintiffs and others would rely on the perceived integrity and tacit protections against fraud of the FIN INST and GRAMMER, BLEU, CORNELL, NIVEN and KING; the participation of these Defendants was material to

making their business decisions in this matter.

258.    None of said Defendants took any action to cease their illegal advertising and support from TODHD, STAROPOLY and ESTAR.TV despite their having direct knowledge that they were involved with illegal schemes. Clearly, said Defendants are members of the same Criminal Scheme.

259.    On December 4, 2010, PAEGELS/TBCS videotaped EVENT such as the red carpet, rehearsal, show, and back stage interviews for their use that were stolen by MILLER and KING. EXHIBIT 49.

260.    At Nuke The Fridge Con, PAEGELS/TBCS videotaped presentations for their use that MILLER stole under false pretenses and subsequently offered them for sale on the internet. EXHIBIT 58.

261.    Said Plaintiffs PAEGELS and TBCS were not hired or compensated by anyone to videotape the productions; all taping was for the express purpose of benefitting PAEGELS/TBCS.

262.    Through trickery and false promises, CORNELL, VARONOS, NIVEN, KING, FLEMING, and MILLER stole TBCS/PAEGEL'S money and property—21 videotapes of the Variety Power of Comedy Event ("EVENT") that included rehearsals, program, back stage interviews with celebrity comedians, and red carpet "step and repeat" interviews. A constructive trust was created between TBCS/PAEGELS with said Defendants that Defendants violated.

263.    CORNELL, VARONOS, KING, FLEMING, TODHD and MILLER stole TBCS/PAEGEL'S services by tricking TBCS/PAEGELS into supplying the labor, supplies, and equipment to film the "step and repeat," the EVENT itself, and the back-stage interviews, which Defendants MILLER and KING personally took under false pretenses and kept them permanently.

264.    CORNELL told PAEGELS that if they didn't willingly give MILLER and KING the tapes of the EVENT, MILLER would take them by force, indicating that MILLER had a gun.

265.    MILLER, KING, and CORNELL, took the tapes through trickery promising to "digitize" and return them the following week. EXHIBIT 32. They took the tapes with the

COMPLAINT

1    intent of keeping them permanently and they have done so.

2    266.    VARONOS intended to defraud Brian Williams and Variety Magazine at the time the

3    advertising agreement was signed. VARONOS signed the contract with Variety whereby

4    TODHD would receive numerous advertising benefits from Variety in exchange for a tax

5    deductible donation to the foundation. VARONOS breached that agreement by failing to pay

6    the sponsorship fee, $100,000.00—however, TODHD, GRAMMER and CORNELL all

7    received the benefits of said advertising and still do. EXHIBIT 33-A & B is a full-page

8    Variety ad dated Dec. 3, 2010; EXHIBIT 33- C & D show that TSOFTNET, GRAMMER and

9    CORNELL continued to take advantage of the free advertising.

10    267.    On December 30, 2009, JUNCO and TORO "sold" TBCS a TODHD sub-channel

11    under false pretenses. TBCS/PAEGELS paid said Defendants seventy-seven thousand five

12    hundred forty-six dollars and sixty-two cents dollars ($77,546.62) toward a two hundred and

13    fifty thousand dollar ($250,000) contract before learning the truth.

14    268.    Unbeknownst to TBCS, the sub-channel capability did not exist at the time of said

15    Agreement and TORO and JUNCO committed grand theft under false pretenses for

16    fraudulently selling something that did not exist. TBCS did not know for nearly a year

17    thereafter that TODHD itself was a Criminal Scheme for the sole purpose of committing theft

18    under false pretenses by GRAMMER, CORNELL, BLEU, VARONOS, FLEMING, JUNCO,

19    MILLER, KING, and TORO.

20    269.    GRAMMER, CORNELL and BLEU intended to induce victims into investing in

21    multiple Criminal Schemes by being the PRIMARY "face" of the TODHD "network of

22    channels," on STAROPOLY, and eSTAR. All of the schemes consisted of nothing more than

23    artwork created by FLEMING, GRAMMER'S close personal friend. There were never any

24    *actual* businesses that BLEU, CORNELL and GRAMMER promoted and endorsed.

25    270.    BLEU was featured on the **promotional video** demonstrating the alleged

26    "technological wonders of TODHD" (then MYEZTV). Said video was shown to

27    TBCS/PAEGELS by JUNCO.

28    271.    Defendants, VARONOS and FLEMING further induced Plaintiffs to invest in

TODHD by falsely listing the well-known television networks: Kelseylive, Lydialive, ABC, CBS, NBC, CNN, BBC, ESPN and others on the TODHD channel guide in order to give the impression that these well-known networks were already clients of TODHD. These representations as to ABC, CBS, NBC, CNN, BBC, and ESPN were completely false as none of the major networks were ever affiliated with TODHD. EXHIBIT 34 is the channel guide used by GRAMMER, VARONOS, BLEU and FLEMING to "lure" investors and the public.

272.    In mid-June, 2010, Defendants VARONOS and FLEMING scheduled a meeting with TBCS owners, for the first time, at D.G. Entertainment, a well-known film and recording studio in Los Angeles, California, to discuss terms of a new channel for them. FLEMING represented TODHD and introduced himself and MILLER at the meeting. MILLER showed the PAEGELS photos of his "stable of clients" from his Ipad. All representations were false.

273.    Soon thereafter, Plaintiff TBCS reached an agreement to pay Defendant VARONOS a one-time channel fee of ten thousand dollars ($10,000.00) plus monthly fees of one thousand dollars ($1,000.00) per month plus "bandwidth use" for their channel. The money was deposited directly to a FARGO account.

274.    FLEMING did artwork for TBCS'S "channel." The money was directly deposited to a FARGO account.

275.    Payments of $23,000.00 were made into FARGO account numbers given to TBCS/PAEGELS by VARONOS and FLEMING.

276.    BEATY and MERITUS processed credit/debit cards for STAROPOLY Associates as a "registered ISO/MSP of Wells Fargo Bank, NA 1209." MERITUS is not registered with the California Secretary of State. EXHIBIT 35-A. BEATYS' E-mail is dated 9/17/10 however, STAROPOLY was revoked as a business entity by the Nevada Secretary of State on 8/31/10. *See* EXHIBIT 35-B. *See* also, BEATY'S e-mail and attached MERITUS application sent *subsequent* to STAROPOLY'S revocation. EXHIBIT 35-G incorporates all FIN INST in the Criminal Scheme.

277.    MILLER pursued an agreement with TBCS to act as its public relations "specialist" for the supposed purpose of getting programming for, and aired, on their TODHD channel.

278.     MILLER presented a public relations proposal that had GRAMMER'S photograph on the front. The proposal made outlined MILLER'S plan to increase the success of TBCS. He also guaranteed that he obtained prior commitments from several of his "contacts" to place programming on the TBCS channel exclusively, in anticipation of a HITMAN PR/TBCS Agreement. Based upon MILLER'S false statements and perceived legitimacy, the Agreement was signed on September 21, 2010. All of MILLER'S assertions were false and made solely to defraud Plaintiffs TBCS and the PAEGELS.

279.     TBCS/PAEGELS paid MILLER $43,000 before learning that he had lied about everything; the meeting staged with FLEMING was a farce, because HITMAN was nothing more than a web page pretending to promote a real business and MILLER had no stable of clients or public relations skills. MILLER subsequently admitted that HITMAN was just a "webpage."

280.     MILLER believed that although he stole Plaintiffs valuable property, breached his agreement, and never performed any part of his promises or services Plaintiffs should continue paying him on a contract that was void *ab initio* and further attempted to extort more money from them. MILLER retaliated for refusing to pay his extortion by defaming NELLE as an attorney on 5,000 websites, filing false reports about NELLE with the Walnut Sheriff Dept., the Glendora Police Dept., twice with the California State Bar, and flooded the internet with filth and lies about all of the PAEGELS, but most specifically about NELLE. He also hacked into the PAEGEL'S computer.

281.     MILLER conspired with other members of the Criminal Scheme to hack into Plaintiffs' e-mails, government databases, and social media networking sites including but not limited to Facebook, Linked-In, and Twitter.

282.     MILLER listed his business address as 375 Huntington Drive, Ste. B, San Marino, California. This office was in reality KING'S chiropractic address. KING knew of MILLER'S use of her address for the purpose of giving a false impression. KING and MILLER testified that MILLER merely "rented" her business address, however neither can supply proof of same.

283.    MILLER has no marketable public relations skills; his sole purpose is to cheat people of money and property with no return to them.

284.    The material taped at the Variety EVENT was done exclusively by the Plaintiffs PAEGELS and TBCS; there is no question as to their ownership of it. Together at the end of the EVENT, MILLER and KING stole the material, taking it under false pretenses because VARONOS, who was also there, said he needed the tapes to be digitized for "use on TBCS channel." Because the channel had no such capability, together CORNELL, VARONOS, MILLER and KING all conspired to concoct a story by which they could steal the material from the hands of the PAEGELS. CORNELL even told the PAEGELS that MILLER had a pistol in his waistband if they resisted in handing over the tapes.

285.    On or about November 15, 2010, VARONOS had already planned to give copies of the EVENT videos to the skin-care company, Pure Chemistry, in exchange for satisfying the "gift bag" term of the Variety/TODHD Agreement showing that his "intent" to put the material on TBCS'S channel was made under false pretenses.

286.    CORNELL, claiming to have been defrauded by MILLER, VARONOS, and FLEMING was included as a plaintiff in the GC047909 LASC suit. In actuality, CORNELL was a member of the Criminal Scheme concocting a story for the purpose of becoming an "informer" for the defense.

287.    CORNELL continued to fraudulently advertise her "work" at the EVENT, deriving continued benefit from the Criminal Scheme to defraud Variety.

288.    CORNELL attempted to involve LEWIS in several of her Criminal Schemes, which LEWIS rejected. Since then, CORNELL has stalked LEWIS mercilessly and enlisted others, such as WESTBROOK, WALSH, and FORD to do the same.

289.    CORNELL and HAYELAND have a history of fraud and theft. Between the years 2001-2006, CORNELL and HAYELAND were investigated by the Los Angeles Police Dept. individually and together in a fraud and theft scheme. EXHIBIT 36 is the front page news story describing how CORNELL and HAYELAND stole $300,000.00 and a Los Angeles residence valued at $750,000.00 from the rightful beneficiary to the estate that HAYELAND

administered. EXHIBIT 36.

290. JUNCO, TORO, ROBINSON, WORMLEY, MILLER, KING, FLEMING and VARONOS have ignored TBCS/ PAEGEL demands to return their videotapes and money taken under false pretenses.

291. MILLER attempted to extort an additional $20,158.16 [400% interest] by threatening to file complaints and reports to credit bureaus despite that his small claims case was dismissed without prejudice to take it to arbitration. EXHIBIT 37-A, B & D.

292. GRAMMER personally telephoned LEWIS, at CORNELL'S request, to talk LEWIS into becoming a STAROPOLY "associate." Later, after LEWIS became suspicious about the efficacy of STAROPOLY, GRAMMER refused to speak with him.

293. CORNELL stole $3,666.00 from LEWIS under false pretenses that it was a "loan" to be paid back within three (3) months. Her intent was always to steal the money.

294. SIMMONS and HAYELAND sold items via the internet from GSAXE, AXE LTD, and SIE sites.

295. A charity fundraiser was advertised and occurred in July 2010. GRAMMER is the only member affiliated with TODHD and STAROPOLY known to own a charitable company. The funds raised disappeared and were never distributed according to the promise made.

296. All said Defendants participated directly or indirectly in Criminal Scheme A.

297. HAIGHT, STELL and CAMPION conspired to deprive the rightful heirs of their $250,000.00 inheritance.

298. STELL committed the federal crime of interstate transportation of stolen property by claiming a retirement account located in Illinois and transporting it through the mail to Texas. STELL perjured himself in order to take the account valued at $44,000.00. EXHIBIT 81.

299. CAMPION and STELL conspired to cover-up the theft by false pretenses. CAMPION denied that this account was in existence; heirs had to obtain proof through a subpoena in order to learn the truth. CAMPION breached his fiduciary duty to the heirs many times and ultimately the heirs suffered a total loss of the estate through the collusion of STELL and CAMPION.

300. HAIGHT and WELCH refused to enforce subpoenas for information and motions to compel discovery. One heir could not even receive proof of her own mother's insurance proceeds owing to the collusion by HAIGHT, CAMPION and STELL.

301. BASLE and SLOUGH failed to properly track and supervise WELCH and HAIGHT.

302. CARMAX defrauded PAEGELS by overcharging for their automobile loan.

303. For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "B" PREDICATE ACTS:**

304. MILLER financially abused NELLE and TOM in violation of California Welfare laws by his actions to destroy NELLE'S career and try to get her disbarred and arrested.

305. INS, WILEMAN, YAO, KELETI, CORNELL, MILLER, KING, JUNCO, TORO, FIN INST, PLUIM, THOMAS, VARGAS, VARONOS, ROBERTS, NEWELL, and FIN INST conspired to corrupt the judicial system costing LEWIS, TBCS/PAEGELS and WILLIAMS the value of litigation in GC047909, which exceeded $100,000,000.00.

306. CORNELL organized meetings to discuss the legal bases for initiating case no. GC047909 at her home. Unbeknownst to the PAEGELS, CORNELL also invited COX and other members of the Criminal Scheme whose sole purpose was to discourage filing that suit. At the same meeting, one of the members of the Criminal Scheme tried to sell Plaintiffs on yet another Scheme, located in Japan.

307. CORNELL'S purpose in being a plaintiff in case GC047909 was to inform the other members of the Criminal Scheme about Plaintiffs' activities, strategies, and to gather information for the defendants. CORNELL defrauded plaintiffs by stealing money, time, and litigation strategies under false pretenses; she finally admitted to same.

308. All but three defendants were in default on the $100,000,000.00 suit September 14, 2011, yet PLUIM, VARGAS, and THOMAS saw to it that the defendants were ultimately dismissed in January, 2012.

309. WILEMAN was allowed to repeatedly clog the docket with unnecessary pleadings and hearings knowing that—owing to court reporters being terminated by LASC—that plaintiffs would be forced to—and did—personally hire a court reporter in order to have any record of

the travesties that occurred there. PLUIM denied NELLE'S requests to consolidate hearings.

310.    PLUIM ignored all or nearly all of LEWIS'S and NELLE pleadings; he failed to rule on most of their motions and petitions. In fact, from the transcripts it was apparent that PLUIM never knew specifically the contents of any pleading he did rule on; he merely denied all plaintiffs requests and motions and granted all of defendants' requests and motions.

311.    KRATTI, WESLEY and EDMON failed to properly advise and supervise PLUIM.

312.    For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS:

313.    PLUIM, THOMAS, and VARGAS had sheriffs stand behind LEWIS and NELLE at hearing to intimidate them and cause emotional distress.

314.    PLUIM, THOMAS, and VARGAS forced LEWIS and NELLE to appear at hearings in person by disallowing him to participate in hearings via CourtCall.

315.    PLUIM, THOMAS, and VARGAS knew that LEWIS was not allowed to travel—having received three notes from LEWIS' physicians.

316.    PLUIM ordered LEWIS to get out of his courtroom and never return.

317.    PLUIM allowed WILEMAN to harass LEWIS in the hope that LEWIS would cease investigating them and clerks THOMAS and VARGAS.

318.    PLUIM, THOMAS and VARGAS acted in a manner that constituted self-dealing by sabotaging plaintiffs case against themselves and WILEMAN in the SUPPLEMENT filed by LEWIS. EXHIBIT 1.

319.    By spying on her fellow plaintiffs for the defendants, CORNELL undermined their case, which exponentially increased the costs and fees.

320.    For damages as a result of this Criminal Scheme, see ¶ 958.

## THIRD CAUSE OF ACTION

CIVIL CONSPIRACY UNDER RICO asserted by ALL PLAINTIFFS and DOE Plaintiffs 1-300 against ALL DEFENDANTS and DOE Defendants 1-300 Inclusive.

(The ACTS; RICO; Hobbs Act; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; T.C.A. § 39-12-201 et seq.; Moneylaundering T.C.A.§ 39-14-903 et seq.; Gangs ACT; Tennessee Adult Protection Act of 1978, T.C.A CH. 6, PT. 1 §§ 71-6-101 and 120; Ariz.

Revised Stat. §46-455; Fl. Stat. § 825.102; Ca. Welfare and Institutions Code § 15610.07; Ca. Code of Civ. Proc. § 527.6; T.C.A.71-6-120 et seq. Tenn. Adult Protection Act.)

321. By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-320 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS:

322. CARMAX and FARGO conspired to get LEWIS arrested.

323. JUNCO, TORO, VARONOS, FLEMING, MILLER, KING, VARONOS, JACKSON, MULLIGAN, GRAMMER, ROBINSON, BEATY, BLEU, ROBERTS, SIMMONS, WORMLEY, FIN INST, INS, CORNELL, NIVEN, HAYELAND, NIVEN, KEITH, and COX conspired to endanger MINORS and defraud Plaintiffs and the public at large of money, property, and credit card information.

324. HAIGHT, WELCH, SHERMAN, COLE, PLUIM, THOMAS, VARGAS, WILEMAN, KELETI, YAO, NEWELL, BASLE, GOLDEN, KRATTI, BORRIS, WESLEY, SLOUGH, FANGARY, ROBERTS, SCHWARTZ, B.H.P.D., BAC, and CAMPION conspired to subvert state and federal laws, the U.S. Constitution and the rules of ethics to knowingly corrupt the justice system as members of one or more Criminal Schemes.

325. HADDOCK, KEHOE and CORNELL conspired to endanger the safety of MINORS by putting their names and maps to their homes on the internet.

326. WILEMAN, PLUIM, KELETI, THOMAS, VARGAS, WALSH and FORD conspired with CORNELL to threaten and defame LEWIS on the internet.

327. STELL, CAMPION, WELCH and HAIGHT conspired to deprive heirs of their money and property.

328. FIN INST conspired with BEATY, VARONOS and FLEMING in furtherance of their Criminal Schemes.

329. CORNELL and HAYELAND conspired to embezzle property and money from the rightful beneficiary of an estate.

330. WESTBROOK threatened to "ruin" LEWIS and told him "I hope you die of your Leukemia too." The only means by which WESTBROOK could have known about LEWIS'S

medical condition is from CORNELL, COX and KEHOE.

331.    WESTBROOK admitted to getting LEWIS'S mother's phone number from KEHOE.

332.    For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "B" PREDICATE ACTS:**

333.    WILEMAN, ALMEIDA, MILLER, KING, NEWELL, JUNCO, TORO, PLUIM, THOMAS, VARGAS, KELETI, YAO, CORNELL, VARONOS, FIN INST, and INS conspired to get case no GC047909 dismissed in its entirety through perjury and subversion.

334.    WILEMAN has a well-established pattern for misleading courts by twisting and abjectly misstating law and facts.   PLUIM, THOMAS, VARGAS, MILLER, KING, NEWELL, VARONOS, ROBERTS, YAO, KELETI and INS conspired with WILEMAN to continue—and blindly accept—that conduct. EXHIBIT 5.

335.    PLUIM, THOMAS, VARGAS, MILLER, KING, VARONOS, WILEMAN, YAO, KELETI, ALMEIDA, NEWELL and INS conspired to have KING dismissed as a Defendant despite that she was already in default.

336.    PLUIM, WILEMAN, YAO and MILLER conspired to defame NELLE.

337.    MILLER, KING, NEWELL, WILEMAN, ALMEIDA, YAO, KELETI and INS conspired to commit insurance bad faith and fraud.

338.    MILLER, WILEMAN and JUNCO conspired to verbally assault NELLE PAEGEL.

339.    INS conspired with WILEMAN, YAO, KING, and KELETI by giving false information.

340.    For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "C" PREDICATE ACTS:**

341.    CORNELL, MILLER, WILEMAN, GRAMMER, INS, KING, PLUIM, THOMAS, VARGAS, VARONOS, KRATTI, EDMON, FIN INST, and KELETI conspired against LEWIS to have him removed as a plaintiff, arrested without bail, his life endangered, and the Supplement dismisssed without cause and in derogation of federal law, the U.S. Constitution, and the rules.

342.    WILEMAN, WALSH, FORD, CORNELL, COX, KEITH, KEHOE, MILLER and

HADDOCK conspired to threaten and defame LEWIS.

343.     WILEMAN, CORNELL, COX, KEITH, KEHOE, MILLER and HADDOCK conspired to endanger the lives and livelihood of LEWIS, LEWIS III, LORRAINE and MINORS via the internet.

344.     MILLER, KING, GRAMMER, VARONOS, WILEMAN, PLUIM, CORNELL, COX, KEHOE, KEITH, HADDOCK, THOMAS, NEWELL, YAO, KELETI, VARGAS and ROBERTS conspired to harass, intimidate, threaten, defame, commit perjury and cause severe emotional and physical distress to LEWIS, LEWIS III, LORRAINE, and the PAEGELS.

345.     WESTBROOK, CORNELL, KEHOE, and COX conspired to deliberately harm LEWIS'S mother.

346.     For damages as a result of this Criminal Scheme, see ¶ 958.

## FOURTH CAUSE OF ACTION

**EXTORTION/ATTEMPTED EXTORTION & BLACKMAIL asserted by Plaintiffs LEWIS, LEWIS III, LORRAINE, MINORS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against Defendants MILLER, CORNELL, COX, KEHOE, GRAMMER, PLUIM, WILEMAN, KING, INS, THOMAS, VARGAS and DOE Defendants 1-300 Inclusive.**

**(The ACTS; CIVIL RICO; Tennessee Code 39-14-112, and 106 (2007);The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; FTC Regulations; Tennessee Adult Protection Act of 1978, T.C.A CH. 6, PT. 1 §§ 71-6-101 and 120; Ariz. Revised Stat. §46-455; Fl. Stat. § 825.102; Ca. Welfare and Institutions Code § 15610.07; Ca. Code of Civ. Proc. § 527.6; T.C.A.71-6-120 et seq. Tenn. Adult Protection Act.)**

347.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-346 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS:

348.     More than once, MILLER attempted to extort money from the PAEGELS in exchange for getting their own property back. EXHIBIT 37 shows that following PLUIM'S dismissal of MILLER'S small claims action against the PAEGELS, MILLER continued to extort money—an outrageous amount—in exchange for their own property.

349.     MILLER attempted to extort money from the PAEGELS through threats to their

credit.

350.     MILLER attempted to blackmail NELLE by threatening to file a bar complaint against her despite that NELLE had never done any legal work for him or violated any ethics rule.

351.     MILLER retaliated against NELLE for refusing to submit to his extortions and blackmail by filing bar complaints, police and sheriff complaints, and by defaming NELLE as an attorney on 5,000 websites and press releases.  See EXHIBIT 38 for an example of same.

352.     MILLER used extortion in an attempt to coerce NELLE into giving up the lawsuit through methods commonly used by members of the Criminal Scheme.

353.     Hoping LEWIS would cease investigating her as the PAG of his Supplement, CORNELL instigated a true "hate" and defamation campaign against LEWIS in collusion with MILLER, WILEMAN, KELETI, PLUIM, THOMAS, VARGAS, FIN INST, INS, COLE, KRATTI, EDMON, WESLEY, WALSH, FORD, KEHOE and COX to cause LEWIS extreme bodily harm.  LEWIS suffered two heart attacks on his way from Tennessee to California for a hearing.

354.     PLUIM conspired with MILLER to defame NELLE by refusing to hear NELLE'S objections to MILLER'S false in-court statements on October 14, 2011.  EXHIBIT 2-J thru L.

355.     CORNELL attempted to extort LEWIS by engaging in on-line, in-court, and telephonic attacks on LEWIS'S character and reputation.

356.     CORNELL presented a "contract" to LEWIS in which she wanted him to agree to gift her 50% of his litigation "proceeds."  In retaliation for LEWIS'S refusal to sign said "contract," CORNELL defamed and endangered the lives of LEWIS, LEWIS III, SCOTT, LORRAINE, and MINORS and made numerous defamatory statements about LEWIS.

357.     CORNELL, COX and MILLER caused LEWIS III and LORRAINE to lose or quit their jobs by putting their private information over the internet and by calling their employers.  LEWIS III'S employers, FEMA and Albert Shipova, were contacted by Defendants; the direct result of the contact was to terminate LEWIS III'S employment.  LEWIS III'S FEMA card was cancelled for the sole purpose of extortion against LEWIS.

358.     Similarly, a woman claiming to be a reporter with the Los Angeles Times Newspaper

called—several times—the workplace of LORRAINE. That newspaper's city desk denied any such contacts. Organized crime commonly attacks the family members of resistant extortion "targets." LORRAINE was forced to move her residence and quit her job as a direct result of said Defendants' actions.

359.    CORNELL created and distributed a false profile of LEWIS and distributed it as "factual" over the internet and to WILEMAN, MILLER, COX, KEHOE, HADDOCK, COLE, WALSH, FORD, SCHWARTZ, PLUIM, THOMAS, VARGAS, the F.B.I. and other law enforcement agencies. All said Defendants used the profile to further defame LEWIS and deprive him of his civil rights. The profile contained a photo that was *not* of LEWIS, however, which detracted from its authenticity. To correct this defect, FARGO—in furtherance of the Criminal Schemes—filed a false police report against LEWIS on an automobile loan that was paid in full in order to get him arrested; the result of the arrest was to obtain a true photo of LEWIS, which said Defendants used to create another false profile of LEWIS. EXHIBITS 59 and 64.

360.    SCHWARTZ e-mailed the second false profile to NELLE. EXHIBIT 59. NELLE receive no response from SCHWARTZ or B.H.P.D. for this invasion of her privacy and defamation of LEWIS.

361.    CORNELL further retaliated against LEWIS by filing two false petitions for restraining orders in an attempt to prevent LEWIS'S investigations. The court first granted mutual restraining orders, however COLE later changed it to only prejudice LEWIS, knowingly violating his civil rights.

362.    WESTBROOK extorted SCOTT and LEWIS when he posted defamatory messages over the internet in trying to get SCOTT to become his gay lover. EXHIBIT 93.

363.    For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "C" PREDICATE ACTS:**

364.    As a result of CORNELL'S illegal actions, LEWIS named her as a Defendant in his Supplement. CORNELL impeded LEWIS'S Civil RICO investigation. CORNELL tried to blackmail LEWIS into quitting his investigations by falsely stating on the internet and in

1  courts that LEWIS threatened to kill her and her son on July 29th 2012.

2  365.  At that time, LEWIS realized that CORNELL was actually a "ringleader" in the

3  Criminal Scheme.

4  366.  CORNELL'S falsities about LEWIS and his family were distributed by MILLER,

5  WILEMAN, SCHWARTZ, KELETI, COX, KEHOE, WESTBROOK, WALSH, and FORD.

6  367.  CORNELL and FORD conspired to blackmail LEWIS via a phone call in the middle

7  of the night.

8  368.  FORD admitted to LEWIS that he was affiliated with "organized crime."

9  369.  For damages as a result of this Criminal Scheme, see ¶ 958.

10  ## FIFTH CAUSE OF ACTION

11  **CREDIT/DEBIT CARD FRAUD and PHISHING** asserted by Plaintiffs LEWIS, TBCS,
PAEGELS, and DOE Plaintiffs 1-300 against Defendants VARONOS, GRAMMER, BLEU,
12  KING, MILLER, FLEMING, JACKSON, SCHWARTZ, B.H.P.D., MULLIGAN,
13  HAYELAND, CORNELL, BEATY, FIN INST, SIMMONS, TODHD, PLUIM and DOE
Defendants 1-300 Inclusive.
14

15  **(The ACTS; CIVIL RICO; Tenn. Code Ann. § 39-14-118; Tenn. Code Ann. § 39-14-102(2);
Tenn. Code Ann. § 39-14-102(3); Tenn. Code Ann. § 39-11-106(a)(9); Tenn. Code Ann. § 39-11-**
16  **106(a)(26); Tenn. Code Ann. § 39-14-102(5); Tenn. Code Ann. § 39-11-106(a)(20); Tenn. Code
Ann. § 39-11-301(a)(2); Tenn. Code Ann. § 39-11-106(a)(18); Tenn. Code Ann. § 39-11-**
17  **106(a)(28); Tenn. Code Ann. § 39-11-106(a)(34); Tenn. Code Ann. § 39-14-102(10); Tenn. Code
Ann. § 39-14-102(4); Tenn. Code Ann. § 39-11-106(a)(13); Tenn. Code Ann. § 39-14-105; Tenn.**
18  **Code Ann. § 39-14-118(c)(1); Tenn. Code Ann. § 39-14-118(c)(2); T.P.I. -- Crim. 4.01 (Attempt))**
19

20  370.  By this reference, LEWIS herein incorporates each and every allegation of the

21  foregoing paragraphs 1-369 inclusive of this Complaint as if the same were hereat set forth in

22  full.

23  **CRIMINAL SCHEME "A" PREDICATE ACTS:**

24  371.  Said Defendants conspired with each other to defraud hundreds, if not thousands, of

25  "victims" of their money through the fraudulent use of credit/debit cards, directly or

26  indirectly.

27  372.  Becoming an "Associate" of STAROPOLY involved giving certain private

28  information and payment of fees via credit or debit card; said fees were charged initially and

---

COMPLAINT

Page 67

monthly. EXHIBIT 39. FIN INST processed the credit cards.

373.     Money that an Associate earned via STAROPOLY was to be credited to them on a Payoneer card issued by MC. EXHIBIT 40.

374.     No Associate received credits. EXHIBIT 41 shows commissions being "held."

375.     Credit card charges continued even after an Associate resigned from STAROPOLY. BEATY and FIN INST failed to disclose the terms of the charges.

376.     FIN INST took receipt of the money that was fraudulently taken by said Defendants.

377.     During an abusive tirade, MILLER tried to force PAEGELS to pay him money via credit card through KING'S processor.

378.     Also, MILLER tried to get NELLE/TBCS to pay for artwork MILLER ordered from a Russian National, Nickolay Zdanevich, through Payoneer, moneybookers.com or westernunion.com. EXHIBIT 42.

379.     The artwork was paid for via western union, however TBCS/PAEGELS never received it from either the Russian or from MILLER.

380.     When SCHWARTZ and the City of Beverly Hills was confronted about sending a defamatory e-mail to NELLE about LEWIS, the City called the e-mail the result of Phishing. However, a second demand from NELLE to B.H.P.D. and SCHWARTZ resulted in a false warrant for LEWIS'S arrest. EXHIBIT 76.

381.     For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "B" PREDICATE ACTS:**

382.     PLUIM used his position as a judge in the LASC court system to protect those who committed the credit card fraud when he dismissed GC047909 against FIN INST, and those Defendants who were behind the credit card fraud, VARONOS, FLEMING, GRAMMER, BLEU, CORNELL, KING, and MILLER without any justification.

383.     For damages as a result of this Criminal Scheme, see ¶ 958.

///

///

///

COMPLAINT

Page 68

## SIXTH CAUSE OF ACTION

**CHILD ENDANGERMENT AND CHILD ABUSE** asserted by Plaintiffs LEWIS, LORRAINE, LEWIS III, MINORS and DOE Plaintiffs 1-300 against CORNELL, COX, KEHOE, MILLER, PLUIM, THOMAS, VARGAS, WILEMAN, HADDOCK, KEITH and DOE Defendants 1-300 inclusive.
(42 USC 17601, et seq.; ICAC Program; 42 *U.S.C.A.* § 5106 (g); The Child Safety Act of 2005, HR 3132; The Adam Walsh Child Protection and Safety Act of 2006 HR 4472 (109th, 2005-2006) (Mandated by federal authorities) and The Protect Act of 2003, 18 U.S.C. 2252 (B) (b); The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030, TCA 39-15-401; T.C.A. § 39-15-401 et seq; T.C.A. §39-15-101.)

384.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-383 inclusive of this Complaint as if the same were hereat set forth in full.

**CRIMINAL SCHEME "C" PREDICATE ACTS:**

385.     To "impede" LEWIS, the health, safety, and welfare of MINORS were endangered by CORNELL, COX, KEHOE, MILLER, PLUIM, THOMAS, VARGAS, WILEMAN, HADDOCK, and KEITH who placed, directly or indirectly, private information about them on numerous internet sites.

386.     The MINORS were harmed as part of the conspiracy to harass and attempt to extort LEWIS.

387.     HADDOCK abducted two of the MINORS from their custodial parent, LORRAINE; HADDOCK gave LORRAINE a false address as to where the children could be found. For several months, LORRAINE had no idea where—or if—her children were even alive.

388.     HADDOCK was motivated by wishing to avoid paying child support and to take possession of the social security funds received by MINOR 2, who is disabled, which he used for his own purposes and not for the needs of MINOR 2.

389.     HADDOCK abused MINORS 1 and 2 by forcing them to sleep on furniture, instead of in a bed.

390.     HADDOCK abused MINORS 1 and 2 by failing to provide them with minimum clothing, such as school shoes.

391.     CORNELL, HADDOCK, and KEHOE supplied their co-conspirators, MILLER,

COMPLAINT                                                                    Page 69

COX, and KEITH, with all of the particular personal information that appeared on their sites.

392.     PLUIM, THOMAS and VARGAS used and abused judicial authority to    excuse those responsible for endangering MINORS by dismissing LEWIS'S Supplement, because it named them as defendants.

393.     CORNELL ignored LORRAINE'S pleas that she "cease and desist" placing objectionable material on the internet.

394.     HADDOCK and KEHOE forced MINORS 1 and 2 to lie about LORRAINE and her fiancé.

395.     For damages as a result of this Criminal Scheme, see ¶ 958.

## SEVENTH CAUSE OF ACTION

**ILLEGAL PRACTICE OF BUSINESS AND FALSE ADVERTISING** asserted by Plaintiffs **LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against Defendants FIN INST, BEATY, BLEU, CORNELL, COX, JUNCO, TORO, FLEMING, GRAMMER, HAYELAND, JACKSON, KING, MILLER, MULLIGAN, NIVEN, ROBINSON, VARONOS, WORMLEY, ALMEIDA, COLE, KEHOE, KING, KEITH, WILEMAN, YAO, KELETI, INS, and DOE Defendants 1-300 Inclusive.**

**(T.C.A. § 39-14-127; T.C.A. § 39-14-127; §47-18-104; Uniform Deceptive Trade Practices Act No. §47-18-101 et seq.; Tennessee Consumer Protection Act of 1977 § 47-18-104.; FL statute for caregiving § 39.5085(2)(f) and other FAC statutes for caregiving/caregivers; Federal Trade Commission Act ("FTC") Regulations, the Clayton Act; The ACTS; CIVIL RICO; Federal Health and Human Resources.)**

396.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-395 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

397.     Said Defendants deceptively represented themselves and others in the Criminal Scheme in commerce, both in person and on the WEB, via "fake" commercial concerns.  *See* EXHIBITS 43-44, 81, 87-92.

398.     CORNELL, MILLER, KING, VARONOS, FLEMING, GRAMMER, BLEU, ROBINSON, JACKSON, MULLIGAN, WORMLEY, KING, TORO, JUNCO, and NIVEN falsely advertised and/or made false representations to the public at large and Plaintiffs TBCS

and PAEGELS in particular that TODHD was "the first branded social media entertainment network" having "revolutionary technology" and offering programming and merchandising opportunities.

399.     On July 19, 2012, HITMAN/MILLER released a PRLOG about KING'S Cavi-Lipo Device that falsely implied that Cavi-Lipo endorsed KING. EXHIBIT 43.

400.     FLEMING was the "Chief Design Operator" for TODHD, STAROPOLY, and ESTAR. EXHIBIT 31-A.

401.     Because the Criminal Schemes of TODHD, STAROPOLY, and ESTAR consist of ONLY artwork on the internet, FLEMING is construed as the "master creator" of them.

402.     FLEMING is a close personal friend of GRAMMER, CORNELL, HAYELAND, MILLER, VARONOS, and SIMMONS.

403.     In addition to his activities with TODHD, STAROPOLY, and ESTAR, FLEMING offered the PAEGELS an opportunity to "invest" in the production of two movies that his "personal company," Seventh House Entertainment was trying to get off the ground. Not surprisingly, the California Secretary of State has no registration for that company. EXHIBIT 44-A & B.

404.     FLEMING freely used an e-mail address "SparkyProd," in order to deceptively promote himself as associated of Sparky Productions, which is a false representation. In fact, Sparky Productions is a legitimate 501(c)(3) corporation, organized in Colorado with no affiliation to FLEMING. EXHIBIT 44-C.

405.     TODHD was nothing but an empty "shell" created to further the Criminal Scheme. It never had any of the technological capabilities it was advertised to possess by CORNELL, COX, VARONOS, FLEMING, BLEU, GRAMMER, ROBINSON, JUNCO, TORO, MILLER, KING, VIEWPARTNER, TSOFTNET, STAROPOLY and NIVEN. EXHIBIT 44-D thru F.

406.     STAROPOLY was a Pyramid Scheme and not the multi-level marketing program as it was so advertised and represented by GRAMMER, CORNELL, VARONOS, MILLER, FLEMING, BLEU, BEATY, and FIN INST. EXHIBIT 44-F.

COMPLAINT

407. ESTAR was a "pay for service" scheme. EXHIBIT 44-G.

408. MC'S deceptively issued Payoneer cards that was a "sham" to make Associates ascribe legitimacy to the Criminal Scheme. The cards were supposed to be a way for STAROPOLY to pay Associates, however, there were no payments made. EXHIBIT 40.

409. CORNELL deceptively represented that GODSHOTS, SIE, LC ENTERPRISES, Lydia Cornell Korniloff Venus Films and Productions ("VENUS"), Military Godshots, Recovery Godshots and LYDIA CORNELL, INC were actually business enterprises. None of these representations were true or represented legitimate business concerns. EXHIBIT 44-H thru O, EXHIBIT 91.

410. CORNELL advertised GODSHOTS and Recovery Godshots on Facebook, Twitter, LydiaCornell.com, U-stream, and LinkedIn as a charity in order to specifically and fraudulently solicit donations from the public. EXHIBIT 44-P.

411. HAYELAND deceptively advertised GODSHOTS.TV on the internet, a non-entity business, with the same address and post office box number as CORNELL'S GODSHOTS.ORG. EXHIBIT 60.

412. HAYELAND registered GODSHOTS.TV as organized by SPORTS ICON IMAGES, another false business.

413. HAYELAND and SIMMONS operated(s) SIE, GSAXE, AND AXE INC, none of which were organized or licensed. EXHIBIT 44-Q thru W.

414. COX represented that LYRIX as a bona fide business being advertised on lyrixenterprises.com and AV COMPUTER DOCTOR to promote and sell skills in internet marketing and publishing. COX and KEITH advertise this non-entity business on the internet and in the Lancaster, CA area where they reside. EXHIBIT 44-X thru AA, EXHIBIT 89.

415. COX advertised LYRIX on Facebook, LinkedIn, Twitter, Google and on AV COMPUTER DOCTOR at 44519 10th St West Lancaster CA 93534, ph. 661-729-2823 owned by Defendant KEITH.

416. KEHOE ran "house maker" and/or "companion" services in the state of Florida without qualifying under the FCA, as required.

417.     KING and MILLER advertised and operated HITMAN as a legitimate public relations business from KING'S "chiropractic" office without a license from the City of San Marino and contra the Chiropractic Rules of Ethics. Their contracts falsely stated that HITMAN/MILLER was "Incorporated."

418.     MILLER also deceptively promoted businesses known as Advanced Kinematic Solutions (EXHIBIT 44-AB); LMMS; having a chiropractic office registered with the California Chiropractic Board as located in a post office box; and falsely claimed to be a member of an elite sports board, which he was not. In fact, *nothing* MILLER had ever said to any plaintiff, agency, in his self-created advertisements, or to PLUIM'S court can be construed as true.

419.     KING and MILLER illegally used the office KING advertised as her chiropractic office to promote and as the site of deceptive practices, forbidden by the California Chiropractic Board. Chiropractors in California have strict ethics rules, which KING violated in numerous ways.

420.     KING intended to deceive the public by deceptively advertising fictitious names and websites illegally. KING gave the City of San Marino false information about Advanced Health Concepts and Body Slimming Experts. EXHIBIT 80. KING gave the City of San Marino false EIN numbers.

421.     KING'S website, dedicatedtohealth.com, promoted MILLER'S Criminal Schemes. KING persisted in such deceptive practices, despite being disciplined by the California Chiropractic Board and the City of San Marino.

422.     KING advertised "massage therapy" on the internet at Advanced Health Concepts, which required that she get a city permit and registration with the police chief of San Marino. Because KING has no such permit, it must be concluded that she gives massage "therapy" in a manner contrary to law. EXHIBIT 44-AC.

423.     INS suborned KING'S illegal acts by hiring ALMEIDA, WILEMAN, KELETI and YAO to defend her past practices instead of paying her claim for "business fraud." In so doing they became intentional accomplices to KING'S deceptive business practices.

424. JUNCO admitted that GREEN was not a real company. EXHIBIT 14-I.

425. ROBINSON and WORMLEY were partners in MILNER. WORMLEY was fully aware that ROBINSON was on suspension at the time he "represented" TBCS/PAEGELS against JUNCO and TORO and took their $5,000.00 retainer. ROBINSON was permanently disbarred by the California State Bar and WORMLEY placed on probation.

426. ROBINSON and WORMLEY devised numerous other fraudulent businesses in the furtherance of their Criminal Schemes.

427. VARONOS referred ROBINSON to the PAEGELS for legal work knowing that ROBINSON was suspended from practicing law at the time. VARONOS conspired with ROBINSON to protect JUNCO and TORO from suit.

428. Banking regulations prohibited MERITUS from operating without being properly organized. All other FIN INST were implicated in MERITUS'S deceptive practices. EXHIBIT 35.

429. COX falsely advertised a business "Event Staffing Professionals" on lyrixenterprises.com making false claims that *inter alia* it held a copyright using AV Computer Doctor programming. EXHIBIT 87-E.

430. According to the Copyright Catalogue, "Event Staffing Professionals" is not copyrighted. EXHIBIT 88.

431. KEITH/AV COMPUTER DOCTOR ad included services of COX/LYRIX ENTERPRISES making illegal SEO claims. EXHIBIT 89. Said SEO manipulation was one of the illegal activities COX participated in for TODHD at the instruction of VARONOS.

432. For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "B" PREDICATE ACTS**

433. WILEMAN, KELETI, YAO, and NEWELL represented facts and law to state and federal courts.

434. WILEMAN, KELETI, YAO, NEWELL, PLUIM, ALMEIDA, and INS falsely represented that WILEMAN was KING'S attorney of record.

435. INS ignored requested proof of WILEMAN'S hiring date.

436. ROBERTS claimed to represent both VARONOS and JUNCO, which were two members of the same Criminal Scheme. EXHIBIT 2.

437. ROBERTS falsely reported to PLUIM that neither TORO nor FLEMING had been "served."

438. For damages as a result of this Criminal Scheme, see ¶ 958.

## EIGHTH CAUSE OF ACTION

**FRAUD BY INTENTIONAL OR FRAUDULENT MISREPRESENTATION asserted by All Plaintiffs and DOE Plaintiffs 1-300 against Defendants CARMAX, GRAMMER, BLEU, CORNELL, KING, VARONOS, MULLIGAN, JACKSON, FLEMING, TORO, JUNCO, MILLER, ROBINSON, WORMLEY, HAYELAND, SIMMONS, FIN INST, NEWELL, COX, KEITH, KEHOE, NIVEN, TODHD, VIEWPARTNER, STAROPOLY, ESTAR, WILEMAN, ALMEIDA, KELETI, YAO, HAYELAND, CORNELL, JUNCO, TORO, VENUS, PLUIM, THOMAS, VARGAS, COLE, STELL, HAIGHT, CAMPION, SIMMONS, and DOE Defendants 1-300 Inclusive.**

**(The ACTS; CIVIL RICO; 18 U.S.C. § 1341; 18 U.S.C. § 1343; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; FTC Regulations; 2010 Tennessee Code, Title 47, Uniform Deceptive Trade Practices Act No. §47-18-101 et seq.; Tennessee Consumer Protection Act of 1977 § 47-18-104.)**

439. By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-438 inclusive of this Complaint as if the same were hereat set forth in full.

440. Said Defendants participated in fraudulent acts for illegal purposes.

## CRIMINAL SCHEME "A" PREDICATE ACTS

441. CARMAX stated that they gave a 10-day grace period on auto financing loans when they actually double charge interest during the so-called "grace" period.

442. GRAMMER, BLEU, CORNELL, KING, VARONOS, MULLIGAN, JACKSON, FLEMING, TORO, JUNCO, MILLER, ROBINSON, WORMLEY, COX, KEITH, KEHOE, HAYELAND, SIMMONS, FIN INST and NIVEN each misrepresented one or more of TODHD, VIEWPARTNER, STAROPOLY, ESTAR, LYRIX ENTERPRISES, ADVANCED HEALTH CONCEPTS, BODY SLIMMING EXPERTS, HITMAN PR, AV COMPUTER DOCTOR, GSAXE, AXE LTD, SIE, LC, INC., GODSHOTS, GREEN, and VENUS as

legitimate businesses in order to deceive and defraud the Plaintiffs LEWIS, TBCS, PAEGELS and public at large of their money and property.

443. FIN INST conspired and colluded with said GRAMMER, BLEU, CORNELL, KING, VARONOS, FLEMING, TORO, JUNCO, MILLER, ROBINSON, WORMLEY, HAYELAND, SIMMONS, NIVEN to defraud Plaintiffs and the public at large by receiving money and property with misrepresentations and dishonesty.

444. GRAMMER, BLEU, CORNELL, VARONOS, WORMLEY, MILNER, FLEMING, MILLER, KING, JUNCO, TORO, and ROBINSON knew that they were making misrepresentations of fact at the time they entered into agreements or attempted to enter into agreements either directly or indirectly with Plaintiffs. Said Defendants exercised undue influence on one or more Plaintiffs, directly or indirectly.

445. CORNELL misrepresented facts to the rightful beneficiary of a home in order to gain title on the property that CORNELL and HAYELAND mortgaged.

446. GRAMMER, CORNELL and BLEU defrauded the Screen Actor's Guild-American Federation of Radio and Television Artists union ("SAG-AFTRA") by failing to report their performance work in relation to MYEZTV, TODHD, STAROPOLY and/or ESTARTV.

447. MILLER'S initial agreement with TBCS/PAEGEL'S was between "HITMANPR/ A.S.MILLER" and "TNT FAMILY FINANCE"—both domain names owned by MILLER. Essentially, MILLER attempted to intentionally charge TBCS/PAEGEL'S money on a contract between MILLER and HIMSELF.

448. WELCH defrauded heirs by failing to litigate their motions and petitions or follow well-established rules of law and discovery.

449. CAMPION suborned perjury and misrepresented facts to WELCH and HAIGHT.

450. CAMPION altered bank records of decedent and submitted them to the court. Neither WELCH nor HAIGHT held CAMPION or STELL liable for committing this felony.

451. The time wasted owing to STELL and CAMPION crime cost heirs $250,000.00.

452. CAMPION and STELL misrepresented to HAIGHT that there was a signed agreement with the heirs. Despite knowing of their perjury, HAIGHT nevertheless accepted their

misrepresentations as fact and so based his ruling against heirs, excusing known criminal acts by STELL and CAMPION.

453.     HAIGHT defrauded heirs by refusing to follow federal and state law holding STELL liable for numerous acts of perjury, the interstate transportation of stolen property, violations of discovery, refusing to enforce reasonable subpoenas, and general breaches of fiduciary duty and malfeasance.

454.     HAIGHT defrauded heirs by approving CAMPION and STELLS' false, unsigned accountings.

455.     CAMPION defrauded heirs by concealing facts to which heirs were entitled to know. Said concealment caused $250,000.00 in loss and STELL and CAMPION refused to prove the insurance proceeds.

456.     HAIGHT, WELCH, SHERMAN, COLE, and PLUIM filed false 700's.

457.     FANGARY misrepresented facts and law to SHERMAN.

458.     SHERMAN suborned FANGARY'S mail tampering and mailbox tampering.

459.     SHERMAN and FANGARY conspired to sanction NELLE by misrepresenting facts and misapplying the law.

460.     For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "B" PREDICATE ACTS**

461.     On January 18, 2013, in case no. GC047909, PLUIM, VARGAS and THOMAS misrepresented that they needed to dismantle Plaintiff's "CONFORMED" copy of the original complaint, thereby destroying evidence.

462.     INS conspired and colluded with MILLER, KING, WILEMAN, NEWELL, ALMEIDA, KELETI and YAO to defraud Plaintiffs LEWIS, TBCS, PAEGELS and NELLE by defending and suborning KING'S business frauds.

463.     PLUIM never read plaintiffs pleadings; instead he relied solely on KRATTI'S judgment or asked WILEMAN how he should "rule" on matters.

464.     INS misrepresented WILEMAN'S status.

465.     Defendants misrepresented facts and law in all prior cases discussed *supra*.

466. WILEMAN misrepresented that his corrupted version of NELLE'S original complaint in GC047909 to the federal court as "true and exact" on October 24, 2011.

467. INS intentionally concealed proof of the date when it hired WILEMAN.

468. PLUIM suborned the fraudulent misrepresentations asserted against him and others by dismissing LEWIS'S Supplement, A RICO action, and the underlying case.

469. VARGAS defrauded Plaintiffs by misrepresenting the status of requests for default against 14 Defendants in GC047909.

470. PLUIM, THOMAS, and VARGAS misrepresented that there was an arrest Warrant against LEWIS.

471. For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS

472. CARMAX knew that LEWIS owned a clear title to the automobile that they reported to the district attorney that was stolen by LEWIS.

473. PLUIM misrepresented the bases upon which he accused LEWIS of practicing law without a license and denied LEWIS'S petitions for recusal. He violated LEWIS'S civil rights by denying him an opportunity to refute WILEMAN'S misrepresentations.

474. PLUIM used undue influence and made false statements of fact about LEWIS and the PAEGELS at every hearing. *See generally,* EXHIBIT 2.

475. At hearing on December 14, 2012, THOMAS and VARGAS misrepresented LEWIS and NELLE'S absence from court. Instead, THOMAS and VARGAS allowed PLUIM to unjustifiably prejudice the Plaintiffs.

476. CORNELL made numerous misrepresentations about LEWIS to courts.

477. MILLER misrepresented facts about the PAEGELS countless times.

478. WILEMAN knowingly submitted MILLER'S false Glendora police report to Los Angeles Superior Court in case no. BC495150 against PAEGELS.

479. WILEMAN, YAO, KELETI, and INS misrepresented state and federal courts, Parties and attorneys in GC047909 that they represented KING.

480. CORNELL misrepresented facts to NELLE in order to join the suit as a "mole."

COMPLAINT                                                      Page 78

481.     CORNELL misrepresented facts to PLUIM, FIN WESTBROOK, KEHOE, COX, INST, INS, GRAMMER, WILEMAN, MILLER, WALSH, FORD, COLE, SCHWARTZ, Judge Joseph S. Bidderman, Sheriffs, and the F.B.I. about and against PAEGELS, LEWIS, LEWIS III, LORRAINE, SCOTT and MINORS.

482.     HADDOCK misrepresented his income to Judge Lisa S. Porter of Charlotte County Circuit Court, Florida by claiming MINOR 2 SSI disability payments was his personal income.

483.     Said misrepresentations were made in order to deceive the court into giving him primary physical custody of MINORS 1 and 2. EXHIBIT 55. In fact, HADDOCK had no income whatsoever but stated that he paid taxes on the income.

484.     BAC misrepresented his services to LORRAINE as "impartial" when he allowed HADDOCK'S attorney to conduct the mediation, draft the so-called "Record of Agreement," and intentionally allowed said attorney to misrepresent facts to LORRAINE as to what she was agreeing to. EXHIBIT 55.

485.     BACS' misrepresentations constituted a breach of his fiduciary duty to LORRAINE and the court.

486.     Collectively, said Defendants colluded and conspired—on an on-going and continuous basis—defrauded the Plaintiffs and/or the public at large.

487.     For damages as a result of this Criminal Scheme, see ¶ 958.

### NINTH CAUSE OF ACTION

**FRAUD BY NEGLIGENT MISREPRESENTATION asserted by Plaintiffs LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against ALL Defendants and DOE Defendants 1-300 Inclusive.**

**(The ACTS; CIVIL RICO; FTC Regulations; 2010 Tennessee Code, Title 47, Uniform Deceptive Trade Practices Act No. §47-18-101 et seq.; Tennessee Consumer Protection Act of 1977 § 47-18-104.)**

488.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-487 inclusive of this Complaint as if the same were hereat set forth in full.

---

COMPLAINT                                                                 Page 79

# CRIMINAL SCHEMES "A," "B," AND "C" PREDICATE ACTS

489.  All Defendants have—at minimum—made negligent misrepresentations that resulted in fraud on all Plaintiffs, directly or indirectly.

490.  As the PAG, LEWIS is authorized to reach back in time for ten years during discovery and will be undoubtedly bringing significantly more charges against these and additional Defendants for negligent misrepresentations resulting in fraud.

491.  For damages as a result of this Criminal Scheme, see ¶ 958.

## TENTH CAUSE OF ACTION

## FRAUD BY FRAUDULENT INDUCEMENT TO ENTER INTO CONTRACT asserted by Plaintiffs LEWIS, TBCS, PAEGELS, NELLE and DOE Plaintiffs 1-300 against Defendants FIN INST, INS, CARMAX, GRAMMER, VARONOS, KING, MILLER, BLEU, FLEMING, TORO, JUNCO, NIVEN, CORNELL, BEATY, ALMEIDA, WILEMAN, YAO, KELETI, NEWELL, ROBINSON, WORMLEY, and DOE Defendants 1-300 Inclusive.

### (The ACTS; CIVIL RICO; FTC Regulations; T.C.A. § 39-14-127; §47-18-104; Uniform Deceptive Trade Practices Act No. §47-18-101 et seq.; Tennessee Consumer Protection Act of 1977 § 47-18-104; FL statute for caregiving §39.5085(2)(f))

492.  By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-491 inclusive of this Complaint as if the same were hereat set forth in full.

493.  All said Defendants induced or attempted to induce said Plaintiffs to enter into fraudulent contracts/agreements by misrepresentations of fact(s), directly or indirectly.

## CRIMINAL SCHEME "A" PREDICATE ACTS

Defendants BLEU, JUNCO and TORO showed a promotional video for MYEZTV featuring celebrity BLEU with the specific intent to fraudulently induce Plaintiff TBC/TBCS to enter into contracts with GREEN, TORO, JUNCO, VARONOS, FLEMING, VIEWPARTNER, TSOFTNET, TODHD, MILLER, NIVEN and KING. At the time of the viewing (sales pitch), MYEZTV was already an abandoned company. EXHIBIT 27.

494.  TBCS/PAEGELS were induced to "invest" $77,546.62 in the so-called TODHD NETWORK due to GRAMMER, BLEU, JACKSON, MULLIGAN, JUNCO and TORO'S fraud.

495.    VARONOS, JACKSON, MULLIGAN, and FLEMING knew that TODHD had no technological advancement as they claimed; their misrepresentations induced Plaintiffs and many others to "invest" in non-existent technology. Because TODHD was a sham, the intent of its owners was to steal money and property.

496.    FLEMING and VARONOS induced TBCS/PAEGELS stating that TODHD was suitable for their particular uses—live streaming sporting events, subscription-based exercise programs, cooking programs, health-based programs and the like. In truth, TODHD was merely FLEMING'S artwork. Singlehandedly, FLEMING created material for the express purpose of fraud.

497.    FLEMING and VARONOS induced TBCS/PAEGELS into paying them directly by trickery directly to their FARGO accounts sums totaling $23,000.00 for a "channel" and logos on the "TODHD network."

498.    GRAMMER, BLEU, and CORNELL induced hundreds, if not thousands, to invest in the TODHD, STAROPOLY and ESTAR fraudulent schemes through their endorsements.

499.    MILLER, KING, and NIVEN induced the contract with TBCS by making untrue statements about their expertise and involvement with TODHD, STAROPOLY, VIEWPARTNER, VARONOS, FLEMING, GRAMMER, and BLEU and each other. Plaintiffs entered into agreements in reasonable reliance on Defendants' promises and representations; had they known the truth of these matters, they would never have entered into any of the agreements.

500.    Among MILLER'S false statements were "guaranteed" programming agreements with third parties: World Series of Golf (WSOG), Marie Diamond, Christian Wilde, Julie Kicke, and KING. MILLER was well aware that TODHD had no programming capabilities and that his so-called programming agreements were just part of his Criminal Scheme.

501.    MILLER, NIVEN and KING made said representations with the intent to induce Plaintiff TBCS to enter into the Agreement. As a member of this Criminal Scheme, NIVEN was paid $10,000 for producing videos that she gave to MILLER, instead of PAEGELS.

502.    MILLER'S inducements and misrepresentations about the third-party commitments

COMPLAINT                                                    Page 81

went to the heart of the contract. TBCS would not have otherwise entered into the Agreement.

503. After discovering that MILLER/HITMAN/KING/NIVEN had defrauded them, TBCS/PAEGELS refused to pay MILLER'S final invoice ($4,500.00). MILLER retaliated by filing a small claims action heard by PLUIM; worldwide defaming; false reporting, extortions, and ruining the credit of the PAEGELS and their future earning abilities. MILLER freely admitted to PLUIM that HITMAN "does not exist. . . .it's just a website."

504. The true purpose for ALL of the aforementioned agreements made between Defendants and Plaintiffs was to steal money and property on a tax free basis.

505. CARMAX failed to disclose it's practices of double-charging for interest; essentially charging interest on interest so that in any month, the interest charged is as high as 40% of the payment credited. EXHIBIT 95.

506. For damages as a result of this Criminal Scheme, see ¶ 958.

<u>ELEVENTH CAUSE OF ACTION</u>

**INDUCEMENT TO COMMIT FRAUD asserted by Plaintiffs LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against Defendants CORNELL, VARONOS, KING, MILLER, BLEU, GRAMMER, FLEMING, TORO, JUNCO, NIVEN, BEATY, FIN INST, INS, PLUIM, THOMAS, VARGAS, INS, FIN INST, ROBERTS, ROBINSON, KING, JUNCO, MILLER, KELETI, YAO, ALMEIDA, GODSHOTS, LC MEDIA ENTERPRISES, COX, ESTARTV, JACKSON, MULLIGAN, STAROPOLY, TODHD, WILEMAN and DOE Defendants 1-300 Inclusive.**

**(The ACTS; CIVIL RICO; FTC Regulations; Uniform Deceptive Trade Practices Act No. §47-18-101 et seq.; Tennessee Consumer Protection Act of 1977 § 47-18-104)**

507. By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-506 inclusive of this Complaint as if the same were hereat set forth in full.

**CRIMINAL SCHEME "A" PREDICATE ACTS**

508. VARONOS, CORNELL, JUNCO, TORO, GRAMMER, BLEU, MILLER, KING, ROBINSON, WORMLEY, NIVEN, FIN INST, and FLEMING induced fraudulent agreements relating to their Criminal Schemes.

---

COMPLAINT

Page 82

509.     CORNELL, MILLER, VARONOS, FLEMING, GRAMMER, BEATY, FIN. INST, BLEU, JUNCO, TORO, KING, and NIVEN attempted to "trick" Plaintiffs into committing fraud in myriad ways.

510.     Knowing that TODHD was a sham, MILLER induced TBCS/PAEGELS to defraud advertisers by developing a brochure that falsely featured affiliations with Christian Wilde, Xtreme Green, WSOG and Advanced Health Concepts (KING).     EXHIBIT 47 is the advertisement brochure created by MILLER that the PAEGELS rejected until and unless the information about the featured affiliations was effectuated by written agreements.   Shortly thereafter, MILLER resigned from the TBCS/MILLER-HITMAN contract.

511.     MILLER induced fraudulent representations by creating a false "marketing brochure." EXHIBIT 47. This TRICK against the interests of his own "client" is a perfect example of how MILLER and other members of the Criminal Scheme attempted to limit their liability— by inducing their victims to commit some wrongful act.  MILLER'S only defense was to accuse his accusers of conduct they attributed to him.

512.     NIVEN induced fraudulent videos at MILLER'S direction.

513.     MILLER scripted an interview with a talk show host that included statements that MILLER induced the PAEGEL'S to make by telling them that GRAMMER said them; MILLER later accused Plaintiffs of "lying on the show."

514.     CORNELL asked LEWIS to commit fraud in myriad ways.  In addition to pressuring LEWIS to sign up his friends on STAROPOLY, CORNELL tried unsuccessfully to get LEWIS to pretend that he represented her as her attorney to:  the I.R.S., Twitter, divorce court, traffic court, an acting contractor, financial institutions, credit-reporting bureaus and the public at large.  In all instances, LEWIS refused to participate in CORNELL'S Criminal Schemes.  CORNELL tried to get LEWIS to sign an agreement that was intended to defraud the I.R.S.

515.     CORNELL created a form letter and sent it LEWIS to on May 29th 2012 @ 1:39:52: P.M. The letter was a solicitation about GODSHOTS.  CORNELL'S salutation included a business called LC MEDIA ENTERPRISES.  CORNELL wanted LEWIS to sign the letter

and send it to his contact list. At that time, LEWIS learned from the California Secretary of State that none of CORNELL'S "businesses" were legitimate.

516. CORNELL tried to induce LEWIS to actively defraud the armed forces through her GODSHOTS progeny "Military Godshots."

517. CORNELL also tried to induce LEWIS to administrate Military Godshots. EXHIBIT 48.

518. CORNELL also tried to get LEWIS to put her name on his real property deed. CORNELL has a history of similar exploitation.

519. CORNELL tried to get LEWIS to write letters to legitimate owners of the "GODSHOTS" name to tell them they were infringing on *HER* (nonexistent) trade name. Again, LEWIS refused to participate in the Criminal Scheme.

520. For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

521. All Defendants stole money and property, either directly or indirectly.

522. For damages as a result of this Criminal Scheme, see ¶ 958.

## THIRTEENTH CAUSE OF ACTION

**GRAND LARCENY THEFT of PERSONAL PROPERTY asserted by Plaintiffs LEWIS, LEWIS III, LORRAINE, MINOR 2, PAEGELS, TBCS and DOE Plaintiffs 1-300 against Defendants STELL, HADDOCK, GRAMMER, MILLER, CORNELL, KING, NIVEN, FLEMING, ROBINSON, WORMLEY, JACKSON, JUNCO, TORO, MULLIGAN, and VARONOS and DOE Defendants 1-300 Inclusive.**

**(The ACTS; CIVIL RICO; Tenn. *Ann.* Code § 40-35-111; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; FTC Regulations.)**

523. By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-522 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEMES "A" "B" AND "C" PREDICATE ACTS

524. STELL, HADDOCK, GRAMMER, MILLER, CORNELL, KING, NIVEN, FLEMING, ROBINSON, WORMLEY, JACKSON, JUNCO, TORO, MULLIGAN, and VARONOS stole money and/or property belonging to one or more of said Plaintiffs, directly

1     or indirectly.

2     525.     MILLER sold PAEGELS stolen videotapes for sale on the Internet. EXHIBIT 58.

3     526.     For damages as a result of this Criminal Scheme, see ¶ 958.

### FOURTEENTH CAUSE OF ACTION

**GRAND THEFT OF MATERIAL asserted by Plaintiffs LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against Defendants MILLER, KING, NIVEN, VARONOS, TODHD, VIEWPARTNER, FLEMING, CORNELL and DOE Defendants 1-300 Inclusive.**

**(The ACTS; CIVIL RICO; Tenn. Ann. Code § 40-35-111; National Stolen Property Act 18 U.S.C. § 2314; FTC Regulations.)**

527.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-526 inclusive of this Complaint as if the same were hereat set forth in full.

### CRIMINAL SCHEME "A" PREDICATE ACTS

528.     LEWIS alleges and believes that Defendants NIVEN, KING and MILLER and their agents digitized said material videotaped at the Variety EVENT on December 4, 2010 as well as other material videotaped on or about September 1, 2010 through December 4, 2010 at NIVEN'S studio, CarStar/Nuke the Fridge, Frank and Sons, Extreme Green, and Interviews of Stephanie King, Randy Sotile, John Carter, and Walter Coulter and used it for their own purpose(s), including, but not limited to, placing it on the internet to reach 5,000 sites including to "pktube.onePakistan.com, Prismotube, tube.7s-b.com, mahaythi.com, bluesplayer.co.uk., ISPs, Youtube and Facebook. All of these HD videos were stolen from the PAEGELS/TBCS by the combined efforts of MILLER, KING, NIVEN, VARONOS, FLEMING, VIEWPARTNER and CORNELL.

529.     For damages as a result of this Criminal Scheme, see ¶ 958.

### FIFTEENTH CAUSE OF ACTION

**UNFAIR METHODS OF COMPETITION AND UNFAIR OR DECEPTIVE ACTS OR PRACTICES asserted by Plaintiffs LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against Defendants ALMEIDA, BEATY, BLEU, CARMAX, CORNELL, COX, JUNCO, TORO, FLEMING, GRAMMER, HAYELAND, JACKSON, KEHOE, MILLER, MULLIGAN, NIVEN, PLUIM, ROBERTS, ROBINSON, SIMMONS, THOMAS, VARONOS,**

VARGAS, WILEMAN, WORMLEY, YAO, KING, KEHOE, KEITH, PLUIM, KELETI, NEWELL, INS, FIN INST and DOE Defendants 1-300 Inclusive.

**(CIVIL RICO; FTC Regulations; The ACTS; T.C.A. §§ 56-8-103 through 108; T.C.A. § 47-50-109; Uniform Deceptive Trade Practices Act § 47-18-104 & 108)**

530.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-529 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

531.     On the strength of the endorsements made directly or indirectly by GRAMMER, CORNELL, and BLEU, TBCS and the PAEGELS/TBCS shifted from their original business plan to having their TODHD channel become the means by which they would present their programs to the public at large with their third-party affiliates.

532.     Said Defendants knew or should have known that others would rely on their averments and change their business positions based on those averments.

533.     When TODHD turned out to be a fraud and owing to the abuse all had suffered as a result of abuse by KING and MILLER said third-party relationships of TBCS were destroyed.

534.     In fact, it was the intent of VARONOS, FLEMING, MILLER, KING, JUNCO, and TORO to destroy TBCS'S third-party agreements as part of their Criminal Scheme.

535.     Material belonging solely to TBCS/PAEGEL was distributed by MILLER and his con-conspirators on the internet without their permission.

536.     VARONOS, KING, MILLER, FLEMING, TORO, JUNCO, GRAMMER, BLEU, CORNELL concealed that TODHD was a Pyramid scheme.

537.     CARMAX misrepresented its finance charge calculations.

## CRIMINAL SCHEME "C" PREDICATE ACTS

538.     LEWIS III and LORRAINE each lost their employment owing to retaliation against LEWIS by all said members of the Criminal Scheme, directly or indirectly.

539.     NELLE'S professional career has been irreparably damaged owing to retaliation by all said members of the Criminal Scheme, directly or indirectly.

540.     The MINOR'S have been irreparably harmed owing to retaliation against LEWIS by

1   all said members of the Criminal Scheme, directly or indirectly.

2   541.    LEWIS'S reputation has been irreparably harmed owing to retaliation of members of

3   the Criminal Scheme, directly or indirectly.

4   542.    For damages as a result of this Criminal Scheme, see ¶ 958.

### SIXTEENTH CAUSE OF ACTION

**UNAUTHORIZED PRACTICE OF LAW asserted by Plaintiffs LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against Defendants ROBINSON, WORMLEY, VARGAS, THOMAS, WALSH, PLUIM, WILEMAN, KELETI, YAO, NEWELL, ROBERTS, FANGARY, CAMPION, HAIGHT, WELCH, SHERMAN, COLE, and DOE Defendants 1-300 Inclusive.**

**(The ACTS; CIVIL RICO; Unauthorized Practice and Improper Conduct T.C.A. § 23-3-103; Canons of Judicial Conduct; Rule 5.5, Chapter 5 Model Rules of Professional Conduct; FTC Regulations.)**

543.    By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-542 inclusive of this Complaint as if the same were hereat set forth in full.

**CRIMINAL SCHEME "A" PREDICATE ACTS**

544.    Said Defendants committed illegal acts during the course and scope of their duties as attorneys, judge, clerks, and defendants being represented by counsel as well as defendants representing themselves in *pro per*, such acts included, but are not limited to: mail tampering, mailbox tampering, suborning perjury, knowingly submitting falsified documents to a court, bias, failing to adjudicate, bribery, perjury, obstruction of justice, conspiracy, collusion, denial of due process, life endangerment, issuing an unlawful warrant for arrest, corruption, submitting false documents to a federal court, soliciting perjured testimony, defamation, computer hacking, internet fraud, internet hacking, bank fraud, identity theft, tax fraud, tax evasion, ex parte communications and conspiracies, collusion to defraud, misrepresentations of law; misrepresentations of facts, creating false identities and identity theft.

545.    ROBINSON and WORMLEY illegally practiced law at the time of taking PAEGELS/TBCS as a "client/victim." In fact, ROBINSON was disbarred for committing numerous instances of fraud in the same Criminal Scheme that he defrauded

TBCS/PAEGELS.

546.     For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

547.     INS intentionally concealed proof of the date when it hired WILEMAN. Instead, INS informed NELLE that WILEMAN was the attorney of record; as that determination is a legal conclusion, INS was not authorized to make it.

548.     WALSH gave legal advice to CORNELL without a California license.

549.     YAO refused to report for a subpoenaed deposition or submit her subpoenaed "working copy of the complaint" to Plaintiffs. Because she refused to provide same it must be presumed that she was at least aware that she was submitting pleadings based upon a false "complaint."

550.     COLE violated LEWIS'S due process rights by precluding LEWIS from access to the file for case No. SS022572, which COLE failed to return to the Clerk of the Santa Monica Courthouse.

551.     For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS

552.     Acting under color of the judicial system, PLUIM, EDMON, KRATTI, WESLEY, WILEMAN, KELETI, THOMAS, and VARGAS adopted and issued a warrant for "LEWIS'S arrest without bail" based upon their "trumped up" felony record because LEWIS was pursuing a RICO case against them in California.

553.     For damages as a result of this Criminal Scheme, see ¶ 958.

## SEVENTEENTH CAUSE OF ACTION

**BREACH OF CONTRACT** asserted by Plaintiffs LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against Defendants ALMEIDA, WILEMAN, KELETI, YAO, NEWELL, CORNELL, MILLER, KING, JUNCO, TORO, NIVEN, VARONOS, FLEMING, JACKSON, MULLIGAN, ROBINSON, GRAMMER, BLEU, WORMLEY, BEATY, FIN INST, INS and DOE Defendants 1-300 Inclusive.

(The ACTS; CIVIL RICO; Tenn. Code Ann. § 47-50-109; TN common law Restatement (Second) of Contracts; U.C.C; U.S. common law; TN common law; CA common law; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; FTC Regulations.)

554. By this reference LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-553 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

555. GRAMMER, BLEU and CORNELL used their celebrity as a "shill" for the Criminal Scheme to defraud PAEGELS and numerous other members of the public.

556. The video by BLEU made false claims. BLEU knew at the time that he was making false promises about the capabilities of TODHD/MYEZTV. EXHIBIT 92-J.

557. GRAMMER knowingly encouraged reliance on his celebrity for the purpose of committing fraud. See generally, EXHIBIT 92.

558. GRAMMER, CORNELL, BLEU, MILLER, KING, FLEMING, VARONOS, made agreements or knew their status was being used to make agreements that were all based upon fraud. EXHIBIT 92.

559. MILLER, VARONOS, KING, FLEMING, ROBINSON, WORMLEY, JUNCO and TORO entered into or proposed one or more fraudulent agreements with TBCS/PAEGELS based upon their general and individual Criminal Schemes. EXHIBITS 23, 25, 26, 28, 29, 92-U.

560. Said Defendants entered into one or more contracts—directly or indirectly—with one or more Plaintiffs and countless members of the public at large that said Defendants breached by bad faith, fraud, misrepresentations of fact and in furtherance of the Criminal Schemes.

561. Said Defendants never intended to perform according to the terms of any of the agreements made.

562. Said contracts were made by said Defendants for the sole purpose of deceiving Plaintiffs and the public into believing that said Defendants were capable of providing services and/or products that they lacked any capacity or willingness to provide, at the time of the agreement, as part of the Criminal Scheme.

563. FIN INST breached their express and/or implied duty to ensure Plaintiffs that the charges being made on their credit/debit cards and at their banks was for a legal and legitimate

purpose.

564. FIN INST violated banking regulations by knowingly charging customer accounts in furtherance of the Criminal Scheme. EXHIBITS 18 and 39.

565. CORNELL borrowed money from LEWIS with the intent of never paying him back.

566. For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

567. Acting in bad faith, INS breached their implied agreements to by failing to properly process KING'S claims and instead perpetrating fraud on the courts and plaintiffs.

568. FIN INST breached their duty to self-report that they had been sued under RICO.

569. INS breached their duty to self-report that they had been sued under RICO.

570. INS breached their duty to the Plaintiffs and the public trust by engaging ALMEIDA, WILEMAN, NEWELL, KELETI and YAO to fraudulently represent KING.

571. CORNELL breached her agreement with NELLE for legal services.

572. For damages as a result of this Criminal Scheme, see ¶ 958.

## EIGHTEENTH CAUSE OF ACTION

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING** asserted by Plaintiffs LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against Defendants ALMEIDA, WILEMAN, KELETI, YAO, NEWELL, CORNELL, MILLER, KING, JUNCO, TORO, NIVEN, VARONOS, FLEMING, JACKSON, MULLIGAN, KING, BLEU, ROBINSON, GRAMMER, WORMLEY, BEATY, FIN INST, INS and DOE Defendants 1-300 Inclusive.

**(The ACTS; CIVIL RICO; Tenn. Code Ann. § 47-50-109; TN common law; Restatement (Second) of Contracts; U.C.C.; and U.S. common law)**

573. By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-572 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

574. JUNCO, TORO, MILLER, VARONOS, FLEMING, ROBINSON, WORMLEY, BEATY, FIN INST, CORNELL, GRAMMER, JACKSON, MULLIGAN, KING, BLEU and NIVEN breached the covenant of good faith and fair dealing by soliciting—directly or indirectly—countless fraudulent agreements with Plaintiffs and other members of the public.

575. The foregoing paragraphs include the rather numerous contracts entered into by these parties; breach occurred as a result of said Defendants fraudulent representations made at formation. No defendant ever intended to perform as agreed.

576. Said Plaintiffs fully performed as agreed until breach by said Defendants became self-evident.

577. FIN INST breached the covenant by failing to properly supervise or investigate the fraudulent use of bank accounts and credit/debit card processing by Defendants.

578. FIN INST knew or should have known they were furthering the intentions of the Criminal Scheme by enabling Defendants to process credit cards and monies.

579. Plaintiffs and the public at large had a legitimate expectation that FIN INST will protect their private information from such fraudulent uses.

580. Once the FIN INST became aware that their services had been used for illegal purposes they had a further duty to rectify their mistake; instead FIN INST defended themselves in order to continue the Criminal Schemes.

581. CORNELL recruited LEWIS directly as an associate of STAROPOLY; she represented STAROPOLY to be a legitimate multilevel marketing firm.

582. GRAMMER promoted and continued to promote STAROPOLY, TODHD, and/or ESTAR despite his personal knowledge that none of them were legitimate.

583. FIN INST, BEATY, FLEMING, and VARONOS concealed all but the most basic terms of the contract that associates entered at the time of enrollment. The actual agreement contained oppressive and clauses that no one would knowingly agree to. EXHIBIT 35.

584. Neither ROBINSON nor WORMLEY had any intention of suing JUNCO and TORO on behalf of TBCS/PAEGELS for their theft. ROBINSON took $5,000.00 in furtherance of the Criminal Scheme on the pretext of filing suit to recover their money.

585. JUNCO and TORO knew at the outset that GREEN was a fake business.

586. CORNELL knew at the time she filed suit as a plaintiff that her true purpose was to aid the defendants in furtherance of their Criminal Schemes.

587. For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

588.    CORNELL intended to breach her agreements for legal work with NELLE.

589.    CORNELL intended to take money from LEWIS under false pretenses. Her attitude towards LEWIS became abusive, defamatory, and "malignant" immediately after he declined to loan her more money.

590.    For damages as a result of this Criminal Scheme, see ¶ 958.

## NINETEENTH CAUSE OF ACTION

**TORTIOUS INTERFERENCE WITH CONTRACT AND INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS asserted by All Plaintiffs and DOE Plaintiffs 1-300 against Defendants BEATY, MILLER, KING, VARONOS, FLEMING, HADDOCK, NIVEN, CORNELL, JUNCO, TORO, ROBERTS, WILEMAN, KELETI, YAO, NEWELL, GRAMMER, STERNBERG, KEHOE, FIN INST, INS, and DOE Defendants 1-300.**

**(The ACTS; CIVIL RICO; T.C.A. § 47-50-109; *Restatement (Second) of Torts*, comment c, § 766B; "Restatement (Second) of Contracts; U.S. Common law; TN common law; CA common law; FTC Regulations.)**

591.    By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-590 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

592.    Said Defendants tortuously and intentionally interfered with said Plaintiffs contractual relationships, either directly or indirectly.

593.    MILLER, KING, VARONOS, and FLEMING personally contacted PAEGELS/TBCS during which they knowingly made false promises that ruined legitimate business relationships of PAEGELS and TBCS solely by said Defendants interferences.

594.    For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

595.    MILLER tortuously interfered with NELLE'S law business by conducting a wide-spread retaliation campaign against her on the internet. Examples of these are shown in EXHIBIT 38.

596.    MILLER intentionally interfered with NELLE'S business relationships by making

untrue statements about her legal acumen on the internet, discouraging prospective business.

597. MILLER attempted to interfere with contracts and prospective business relationships by filing false complaints against NELLE with the California State Bar, The Walnut Sheriff's Dept., and The Glendora Police Dept.

598. MILLER chased NELLE'S process server up a public street threatening him with a firearm.

599. For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS

600. LEWIS III was forced to change jobs and relocate his residence as a direct result of his employment being negatively affected by the acts of said Defendants as part of the Criminal Schemes.

601. LEWIS, LORRAINE and MINORS were separated from each other as a result of HADDOCK, KEHOE, CORNELL, and MILLER'S fraudulent conspiratorial participation in the Criminal Schemes.

602. Said Defendants conspired to endanger MINORS, which disrupted the prior business relationship between LORRAINE and her ex-husband, HADDOCK.

603. CORNELL tried numerous times and in various ways to break the relationship between LEWIS and PAEGEL in furtherance of Criminal Schemes A, B, and C.

604. For damages as a result of this Criminal Scheme, see ¶ 958.

## TWENTIETH CAUSE OF ACTION

### FRAUD AND ABUSE INCLUDING ELDERLY ABUSE VIA THE INTERNET;COMPUTER FRAUD AND ABUSE; ABUSE OF THE DISABLED asserted by all Plaintiffs and DOE Plaintiffs 1-300 against all Defendants and DOE Defendants 1-300.

(The ACTS; CIVIL RICO; T.C.A.§39-14-903 et seq; T.C.A. §47-18-104, 106, 107, 108, 109, 114; T.C.A. § 47-18-5202; Tennessee Consumer Protection Act of 1977; U.S. Common Law; Money laundering, 18 U.S.C. § 1956; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; FTC Regulations; 18 U.S.C. §1028(a)(7); the National Stolen Property Act (NSPA); the Wire Fraud Act; the Economic Espionage Act (EEA); Tennessee Adult Protection Act of 1978, T.C.A CH. 6, PT. 1 §§ 71-6-101 and 120; Ariz. Revised Stat. §46-455; Fl. Stat. § 825.102; Ca. Welfare and Institutions Code § 15610.07; Ca. Code of Civ. Proc. § 527.6; T.C.A.71-6-120 et seq. Tenn. Adult Protection Act.)

605.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-604 inclusive of this Complaint as if the same were hereat set forth in full.

606.     All Defendants participated in one or more Criminal Schemes to promote and effectuate, in part, their wrongful activities via the internet.

## CRIMINAL SCHEME "A" PREDICATE ACTS

607.     FIN INST enabled the fraudulent taking of money from Plaintiffs by providing illegal financial wire transfers, money laundering transactions, and credit card processing services.

608.     COX, KEITH, VARONOS, FLEMING, JACKSON, MULLIGAN, JUNCO, TORO, MILLER, KING, NIVEN, CORNELL, HAYELAND, SIMMONS, GRAMMER, BLEU, ROBINSON, WORMLEY, FIN INST. and INS defrauded Plaintiffs and the public at large via the internet.

609.     LEWIS was defrauded by CORNELL via the internet, where she initiated contact with him.

610.     WESTBROOK used the internet and the phone to stalk and abuse SCOTT, LEWIS'S mother, and LEWIS.

611.     GRAMMER used his "kelseylive.com" web site to ascribe credibility to knowingly fake Criminal Schemes: TODHD, STAROPOLY, and ESTAR.

612.     All Plaintiffs were abused and defrauded via the internet by one or more Defendants MILLER, KING, GRAMMER, VARONOS, FLEMING, JUNCO, TORO, ROBINSON, CORNELL, COX, WESTBROOK, KEHOE, WILEMAN, JACKSON, MULLIGAN, PLUIM, THOMAS, VARGAS, SCHWARTZ, B.H.P.D., FANGARY, and SHERMAN.

613.     The public at large was defrauded by HAYELAND, SIMMONS, KEITH, KEHOE, MILLER, KING, VARONOS, FLEMING, JACKSON, MULLIGAN, HAIGHT, COLE, PLUIM, SHERMAN, FIN INST, WELCH and CORNELL.

614.     For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

615.     PLUIM, WILEMAN, THOMAS, MILLER, KING, YAO, KELETI, FANGARY,

CAMPION, STELL and VARGAS posted their illegal activities and pleadings on the internet.

616. INS used the internet to receive complaints with no intent to act on those complaints.

617. MILLER, KING, CORNELL, HAYELAND, SIMMONS, COX, KEITH, KEHOE, and WILEMAN used the internet to defraud Plaintiffs and/or the public at large.

618. For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS

619. PLUIM issued and THOMAS, and VARGAS knowingly posted an illegal Warrant against LEWIS based *solely* on a false and fraudulent "internet profile" of LEWIS that was created by WILEMAN. They did so in furtherance of the Criminal Scheme to coerce LEWIS into foregoing his RICO action against them.

620. Said Warrant endangered LEWIS'S life, health, and welfare and violated his civil rights.

621. Said false and fraudulent profile of LEWIS was distributed on the internet by CORNELL, WILEMAN, MILLER, COX and KEHOE.

622. WILEMAN harassed LEWIS and NELLE through e-mail and by fax after he was told to correspond only through the mail.

623. MILLER and KING used the internet to: harass, stalk, hack, defraud, falsely advertise, send hate mail, extort, blackmail, threaten, infringe, defame, and endanger Plaintiffs.

624. CORNELL, COX, MILLER, HADDOCK and KEHOE colluded and conspired to damage and cause bodily harm to Plaintiffs LEWIS, LEWIS III, NELLE, LORRAINE and MINORS via the internet.

625. CORNELL used myriad internet sites including, but not limited to, lydialive.com, Linked-in, Facebook, and Wikipedia to defraud, defame and harass LEWIS and the public at large.

626. Said Defendants conspired to harass one or more Plaintiffs on the internet.

627. WALSH and FORD threatened LEWIS via the internet.

628. SCHWARTZ and B.H.P.D. defrauded LEWIS by issuing a false Warrant.

629. For damages as a result of this Criminal Scheme, see ¶ 958.

# TWENTY-FIRST CAUSE OF ACTION

**INTERNET PIRACY asserted by Plaintiffs LEWIS, TBCS, PAEGELS and DOE Plaintiffs 1-300 against CORNELL, COX, KEHOE, MILLER, KING, VARONOS, FLEMING, JACKSON, MULLIGAN, NIVEN and DOE Defendants 1-300.**

**(The ACTS; CIVIL RICO; T.C.A. § 39-14-903 et seq.; T.C.A. § 47-25-1702; T.C.A. § 47-2-721; Consumer Protection Act of 1977; T.C.A. § 47-18-103; TN Common Law; U.S. Common Law; Gangs Act; ACTA; Money laundering, 18 U.S.C. § 1956; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; FTC Regulations)**

630.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-629 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

631.     MILLER and KING sold pirated material on the internet. EXHIBIT 49.

632.     VARONOS, FLEMING, JACKSON, and MULLIGAN promoted internet activities in order to pirate the property of others for profit.

633.     CORNELL pirated LEWIS'S material and used it to promote her illegal internet sales.

634.     For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS

635.     WILEMAN, CORNELL, KELETI, and VARONOS pirated material that they used to defame LEWIS.

636.     For damages as a result of this Criminal Scheme, see ¶ 958.

## TWENTY-SECOND CAUSE OF ACTION

**NEGLIGENCE/ GROSS NEGLIGENCE asserted by All Plaintiffs and DOE Plaintiffs 1-300 against All Defendants and DOE Defendants 1-300.**

**(CIVIL RICO; Restatement (Third) of Torts—Negligence, Agency, Restitution, Non-Profit Organizations; 12 U.S.C. § 2605(e)(2)(A) and (e)(3); TN Uniform Contribution Among Tort-Feasors Act §§ 29-11-101 et seq; Moneylaundering; T.C.A.§39-14-903 et seq. Tennessee Common Law; TN Gangs Act; U.S. Common Law)**

637.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-636 inclusive of this Complaint as if the same were hereat set forth in full.

# CRIMINAL SCHEME "A"

638.     All Plaintiffs were harmed by the negligent acts or omissions to act by all Defendants as shown by EXHIBITS 1-93 and the foregoing paragraphs.

639.     The activities of MILLER, KING, VARONOS, FLEMING, NIVEN, GRAMMER, BLEU, FIN INST, BEATY, CORNELL, COX, JUNCO, TORO, HAYELAND, JACKSON, MULLIGAN, ROBINSON, SIMMONS, and WORMLEY completely disregarded the rights of any Plaintiff.

640.     INS exhibited a complete disregard for the consequences of hiring WILEMAN, YAO, NEWELL and KELETI who altered documents before submitting them to the court, misrepresented facts and laws, twisted the law at will in their pleadings and at hearings, and represented other Defendants indiscriminately.

641.     FIN INST exhibited a complete disregard for whether STAROPOLY, VIEWPARTNER, TSOFTNET, ESTAR.TV, TODHD, MERITUS, VENUS, AXE, LC ENTERPRISES, GSAXE, GRAMMER'S COMPANIES, GODSHOTS, AV COMPUTER DOCTOR, and LYRIX were legitimate business concerns.

642.     For damages as a result of this Criminal Scheme, see ¶ 958.

# CRIMINAL SCHEME "B"

643.     By their actions, ALMEIDA, COLE, CORNELL, INS, FIN INST, HADDOCK, KELETI, KING, MILLER, NEWELL, PLUIM, ROBERTS, THOMAS, VARGAS, WILEMAN, and YAO conspired with each other to demonstrate a complete disregard for the rights of the Plaintiffs.

644.     Acting as judicial officers, PLUIM, COLE, HAIGHT, WELCH and SHERMAN demonstrated a complete disregard for Plaintiffs' procedural and substantive rights to due process.

645.     THOMAS and VARGAS knowingly and actively disregarded due process.

646.     For damages as a result of this Criminal Scheme, see ¶ 958.

# CRIMINAL SCHEME "C"

647.     ALMEIDA, KEITH, COLE, CORNELL, COX, INS, FORD, HADDOCK, KEHOE,

KELETI, FIN INST, PLUIM, ROBERTS, THOMAS, VARGAS, WALSH, WILEMAN, VARONOS, MILLER, KELETI conspired against LEWIS so as to completely disregard the rights of LORRAINE, LEWIS III and MINORS, in order to thwart his CIVIL RICO action against PLUIM, CORNELL, WILEMAN, MILLER, KING, GRAMMER, and THOMAS.

648. THOMAS and VARGAS completely disregarded LEWIS'S rights to due process and conspired to threaten him by getting Sheriffs to stand behind LEWIS and NELLE at a hearing.

649. THOMAS and VARGAS falsified information on the Case Summary.

650. For damages as a result of this Criminal Scheme, see ¶ 958.

## TWENTY-THIRD CAUSE OF ACTION

**GRAND THEFT BY EMBEZZLEMENT** asserted by Plaintiffs LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against Defendants VARONOS, MULLIGAN, JACKSON, GRAMMER, BLEU, KING, MILLER, FLEMING, TORO, JUNCO, NIVEN, CORNELL, BEATY, PLUIM, THOMAS, VARGAS, FIN. INST., ROBINSON, WORMLEY, STELL and DOE Defendants 1-300 Inclusive)

**(The ACTS; CIVIL RICO; T.C.A. § 39-14-101; T.C.A. § 39-14-103; T.C.A. § 39-14-112; T.C.A. § 39-14-114 T.C.A. § 39-14-118; T.C.A. § 39-14-127; T.C.A. § 39-14-136; T.C.A. § 39-14-903; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030)**

651. By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-650 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

652. The foregoing described fake "businesses" embezzled money and property from Plaintiffs and the public at large.

653. STELL used his fiduciary position to embezzle from heirs.

654. FIN INST caused embezzlement of LEWIS, PAEGELS, TBCS by failing to comply with state and federal banking regulations.

655. INS embezzled money and property from TBCS and PAEGELS, directly or indirectly.

656. GRAMMER, VARONOS, TORO, JUNCO, NIVEN, SIMMONS, HAYELAND, CORNELL, BLEU, MILLER, KING, ROBINSON, WORMLEY, JACKSON, MULLIGAN and FLEMING intended to use their self-created fake "businesses" to embezzle from said

Plaintiffs and the public at large.

657.     For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "B" PREDICATE ACTS**

658.     WILEMAN, YAO, KELETI, MILLER, GRAMMER, PLUIM, KING, THOMAS and VARGAS used the judicial system to embezzle from the PAEGELS, TBCS, and LEWIS, by falsifying court records, requiring unnecessary pleadings to be filed at Plaintiffs expense, failing to adjudicate, submitting faked documents, perjury, violating the fiduciary duty of the judicial system to follow the rules of law, and by use of threats and intimidation during hearings in order to further the interests of Defendants and the Criminal Scheme.

659.     CORNELL and HAYELAND embezzled property and money from the rightful beneficiary of an estate.

660.     For damages as a result of this Criminal Scheme, see ¶ 958.

TWENTY-FOURTH CAUSE OF ACTION

**FALSE LIGHT INVASION OF PRIVACY, PHISHING AND SPOOFING asserted by All Plaintiffs and DOE Plaintiffs 1-300 against CORNELL, COX, KEHOE, MILLER, HADDOCK, SCHWARTZ, B.H.P.D., WILEMAN, KING, THOMAS, PLUIM, VARGAS and DOE Defendants 1-300 Inclusive.**

**(U.S. CONST. art 14; The ACTS; Section 652E of the RESTATEMENT (SECOND) OF TORTS (1977) and Comments to Sections 652A and 652E-I; T.C.A. § 39-13-601; Anti-Phishing Act of 2006; U.S. Common Law; Fed. Privacy Act of 1974; 18 U.S.C. § 2511; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; FTC Regulations; Tennessee Adult Protection Act of 1978, T.C.A CH. 6, PT. 1 §§ 71-6-101 and 120; Ariz. Revised Stat. §46-455; Fl. Stat. § 825.102; Ca. Welfare and Institutions Code § 15610.07; Ca. Code of Civ. Proc. § 527.6; T.C.A.71-6-120 et seq. Tenn. Adult Protection Act)**

661.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-662 inclusive of this Complaint as if the same were hereat set forth in full.

**CRIMINAL SCHEME "A" PREDICATE ACTS**

662.     SCHWARTZ invaded NELLE'S privacy by sending her an e-mail defaming LEWIS without justification.

663.     B.H.P.D. and SCHWARTZ invaded LEWIS'S privacy by distributing false and

defaming information without justification.

664.     FANGARY invaded NELLE'S privacy by placing pleadings in her home mailbox.

665.     WESTBROOK invaded the privacy of LEWIS, SCOTT, and LEWIS'S mother (SCOTT'S grandmother).

666.     For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

667.     CORNELL invaded LEWIS'S privacy by posting his private and personal information on the internet.

668.     CORNELL, MILLER, KEHOE, COX, HADDOCK, WILEMAN, PLUIM, FORD, THOMAS, and VARGAS each invaded the privacy of one or more said Plaintiffs by posting private, personal and/or inaccurate information about them on the internet.

669.     CORNELL invaded the privacy of LEWIS, NELLE, TOMMY, Steve Daubenspeck, and the F.B.I. by taping conversations with them without their permission.

670.     MILLER spoofed NELLE by creating websites that pretended to be by NELLE giving out false information. EXHIBIT 38.

671.     PLUIM, THOMAS, VARGAS, WILEMAN, VARONOS, FORD and WALSH invaded the privacy of LEWIS, LEWIS III, LORRAINE, and MINOR'S by harassing, stalking, and/or threatening them, directly or indirectly.

672.     On April 4, 2013, MILLER invaded the privacy of the PAEGEL'S and interfered with the livelihood of TOMMY by posting a false PRLOG press release on a game "chat" where it could be seen by at least 300 viewers.

673.     WILEMAN, PLUIM, NIVEN and KING invaded NELLE'S privacy by conspiring with MILLER who disparaged NELLE'S professional and private image on 5,000 websites.

674.     CORNELL invaded the privacy of PAEGELS by coming into their home and office while pretending to be a plaintiff and sharing private information with defendants.

675.     CORNELL and WILEMAN created a website giving false information about LEWIS.

676.     For damages as a result of this Criminal Scheme, see ¶ 958.

///

**CRIMINAL SCHEME "C" PREDICATE ACTS**

677.     THOMAS, PLUIM, and VARGAS invaded LEWIS'S privacy by failing to seal LEWIS'S private medical records, as requested by LEWIS.

678.     MILLER and CORNELL created a Wikipedia account in LEWIS'S name.

679.     WALSH, CORNELL, FORD, WILEMAN and KEHOE posted negative and threatening information about LEWIS on the internet.

680.     HADDOCK and KEHOE gave false statements about LORRAINE to a Florida Court at a child custody hearing.

681.     For damages as a result of this Criminal Scheme, see ¶ 958.

**TWENTY-FIFTH CAUSE OF ACTION**

**COMPUTER FRAUD AND ABUSE, INTERNET HACKING, PHISHING, SPOOFING, AND CYBER-CRIMES asserted by All Plaintiffs and DOE Plaintiffs 1-300 against CORNELL, MILLER, NIVEN, KING, COX, WILEMAN, FORD, WALSH, KEITH, VARGAS, VARONES, FLEMING, GRAMMER and DOE Defendants 1-300.**

**(The ACTS; FTC Regulations; CIVIL RICO; T.C.A. § 39-14-601, et seq.; T.C.A. § 39-14-105; Computer Fraud and Abuse Act, 18 U.S.C. 1030; Tennessee Common Law; U.S. Common Law; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030)**

682.     By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing paragraphs 1-681 inclusive of this Complaint as if the same were hereat set forth in full.

683.     All Defendants committed cyber-crimes and fraud, directly or indirectly against all the Plaintiffs and the public at large.

**CRIMINAL SCHEME "A" PREDICATE ACTS**

684.     CORNELL hacked into all of LEWIS'S social media sites and his bank account where she stole LEWIS'S money and property.

685.     Evidence of CORNELL'S hacking remained on LEWIS'S laptop despite her attempts to remove it.

686.     NIVEN gave property belonging to the PAEGELS to others via the internet.

687.     For damages as a result of this Criminal Scheme, see ¶ 958.

///

## CRIMINAL SCHEME "B" PREDICATE ACTS

688.     CORNELL hacked into LEWIS'S Facebook and e-mails; reopened LEWIS'S closed Linked-in account; and LEWIS'S bank account.

689.     CORNELL created numerous pseudonyms for the purpose of distributing divisive and false information to/about Plaintiffs and the public at large.

690.     MILLER created numerous web pages for the purpose of distributing divisive and false information about Plaintiffs LEWIS and PAEGELS to the public at large.

691.     For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS

692.     MILLER, WILEMAN, and CORNELL hacked into Plaintiff's computers and government agency databases.

693.     CORNELL defrauded LEWIS over the internet.

694.     WILEMAN and CORNELL created a Linked-In and Wikipedia account in LEWIS'S name.

695.     In June, 2012, LEWIS and NELLE discovered that both of their computers were hacked by a resident of Monrovia, where MILLER and KING live.

696.     LEWIS received(s) frequent notices from Facebook that his account was being hacked.     Facebook notified LEWIS whenever his password was about to be changed by an unauthorized person(s).

697.     CORNELL sent "spoofed" messages to others as if from LEWIS.  As a result, LEWIS received threats from WALSH, FORD and a Canadian national by the name of Herbert O'Hearn.

698.     A Defendant, who shall be named when the investigation is completed, also hacked into the federal internal revenue service database in order to change LEWIS'S 2012 income tax return.  LEWIS was notified of same by the I.R.S.  EXHIBIT 10.

699.     CORNELL created an e-mail account in NELLE name using a pseudonym without permission.

700.     MILLER, CORNELL, WILEMAN, COX, KEITH and KING conspired to hack into

Plaintiffs' computers.

701.    WILEMAN filed fraudulent court pleadings via computer in case no. 11-CV-08810-GW obtainable to the public at large via the internet.

702.    CORNELL, WILEMAN, and MILLER hacked into government criminal databases to create a FALSE criminal "record" about LEWIS. The "record" contained a photograph that was not LEWIS and a description with distinctly different physical features to LEWIS (eye and hair color; height).

703.    SCHWARTZ sent to NELLE via e-mail, a link to a paid criminal record site, containing false information about LEWIS.

704.    FORD placed private, false and/or defamatory statements about LEWIS, LEWIS III, LORRAINE and MINORS on the internet.

705.    WESTBROOK placed false and defamatory about SCOTT on the internet.

706.    For damages as a result of this Criminal Scheme, see ¶ 958.

## TWENTY-SIXTH CAUSE OF ACTION

**HARASSMENT AND INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS asserted by All Plaintiffs and DOE Plaintiffs 1-300 against All Defendants and DOE Defendants 1-300.**

**(The ACTS; RICO; T.C.A. 39-17-308; T.C.A. 29-20-205(2); Restatement (second) of Torts § 46(I) (1965); See _Bain v. Wells_, 936 S.W.2d 618 (1997); The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; and FTC Regulations; Tennessee Adult Protection Act of 1978, T.C.A CH. 6, PT. 1 §§ 71-6-101 and 120; Ariz. Revised Stat. §46-455; Fl. Stat. § 825.102; Ca. Welfare and Institutions Code § 15610.07; Ca. Code of Civ. Proc. § 527.6; T.C.A.71-6-120 et seq. Tenn. Adult Protection Act.)**

707.    By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-706 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

708.    FANGARY harassed NELLE by making unlawful demands for "discovery" despite her offer to provide him with a full and complete copy of discoverable material. To wit, FANGARY demanded the original file unreturned, not a copy of it. See EXHIBIT 69.

709.     FANGARY harassed NELLE by tampering with her personal, home mail and mailbox as his manner of "serving" her with motions to compel discovery; FANGARY knew the address of NELLE'S law office, however, he chose to violate federal law for tampering instead. EXHIBIT 70.

710.     SHERMAN suborned FANGARY'S harassment by ignoring it.

711.     SHERMAN failed to adjudicate NELLE'S motion for sanctions. EXHIBIT 71 is the Notice of SHERMAN'S ruling as compared to FANGARY'S e-mail demand, which contained untrue facts as to what SHERMAN ordered.

712.     SHERMAN harassed NELLE by stating that "it was water under the bridge" that NELLE was improperly served; her mail and mailbox had been tampered with; and by ignoring NELLE'S motion for sanctions, fees and costs based upon FANGARY'S discovery violations, mailbox and mail tampering, improper service of process and his steadfast *inexplicable refusal* to accept a copy of the entire file proffered from the outset. Instead SHERMAN rewarded FANGARY for his felonious acts by imposing sanctions on NELLE despite her offers to give the entire file to FANGARY eight months earlier. EXHBITS 70 and 72.

713.     FANGARY harassed NELLE by ignoring her "cease and desist." EXHIBIT 73.

714.     FANGARY harassed NELLE by refusing to comply with the court procedures.

715.     FANGARY harassed NELLE by refusing to give properly signed notice and order.

716.     FANGARY harassed NELLE about the meaning of SHERMAN'S ruling, which was controverted by the rules of discovery and SHERMAN'S actual statements in court and on his minute order. EXHIBIT 74.

717.     SHERMAN and FANGARY further harassed NELLE by denying her due process to appeal SHERMAN'S defective ruling by their non-compliance with SHERMAN'S standing order "***THE PREVAILING PARTY MUST PREPARE THE APPROPRIATE ORDER AND GIVE ANY REQUIRED NOTICE.***" As the prevailing party, FANGARY was supposed to give NELLE a signed order; without said order NELLE was unable to appeal SHERMAN'S ruling.

718.    In like manner, SHERMAN, PLUIM, COLE, WELCH and HAIGHT avoided appeals by persistently and habitually failing to rule on properly filed motions and petitions.

719.    COLE "misplaced" the file to prevent LEWIS from seeing documents filed by CORNELL.

720.    SCHWARTZ, B.H.P.D. and CORNELL conspired to harass LEWIS by falsely claiming LEWIS had violated a court order.

721.    CORNELL and COLE violated due process and conspired in order to get a restraining order against LEWIS, however neither COLE nor any other judge in the L.A.S.C. system issued a warrant for LEWIS'S arrest.  The letter from the B.H.P.D. was issued for the sole purpose to harass LEWIS and cause him undue distress in response to NELLE'S demands why SCHWARTZ sent an offensive e-mail to her. EXHIBITS 59 and 76.

722.    WESTBROOK harassed LEWIS'S mother via the phone for a period of 10 hours from midnight on October 5, 2013 until 10:00 a.m. on October 6, 2013.  LEWIS'S mother was recovering from a heart attack at the time.

723.    WESTBROOK told LEWIS'S mother that LEWIS was a "stalker" and a "felon."

724.    When LEWIS'S mother phoned LEWIS about WESTBROOK'S harassing phone calls, SCOTT called WESTBROOK to demand that he "cease and desist." WESTBROOK'S response was "F**k you."

725.    WESTBROOK harassed SCOTT on his Facebook by posting highly offensive language of a disparaging nature. EXHIBIT 93.

726.    WESTBROOK harassed SCOTT on the phone by yelling obscenities at him.

727.    WESTBROOK harassed LEWIS on the phone by threatening him and calling him names: "celebrity stalker," "a felon," "a sick individual," and "an apple doesn't fall too far from the tree."  Apparently, CORNELL has convinced WESTBROOK that she is a "celebrity."

728.    For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

729.    CORNELL, MILLER, WILEMAN, JUNCO, TORO, VARONOS, PLUIM,

THOMAS, HADDOCK, KEHOE, and VARGAS harassed and intentionally and/or negligently inflicted severe emotional distress upon all Plaintiffs.

730.     CORNELL, KEHOE, MILLER and COX made public and intentionally damaging statements about LEWIS, PAEGELS, MINORS, and LORRAINE using the internet and social media. All of Plaintiffs' demands to cease and desist were ignored.

731.     VARGAS harassed TOMMY by forcing him to leave the courtroom without justification.

732.     PLUIM harassed NELLE, TOMMY and LEWIS by threatening to have them removed from court hearings for trying to correct lies being told by WILEMAN, MILLER, VARONOS, CORNELL, ROBERTS, JUNCO and KELETI.

733.     MILLER sexually harassed NELLE at the January 16, 2012 "meet and confer" by his persistent use of sexually foul language. WILEMAN made no effort to curb him; when NELLE'S witness politely asked MILLER to "be respectful", MILLER and WILEMAN jumped down the witnesses' throat calling him a "dog" and telling him to be quiet or leave. EXHIBIT 14-X & Y.

734.     MILLER harassed and intentionally inflicted severe emotional distress on NELLE by filing 2 false Bar complaints, by filing false Sheriff and Police reports, by filing false disparaging pleadings, by creating false web pages and posting false and damaging statements on a webpage for NELLE that he also created, and by distributing—by his own admission—false statements about her to 5000 internet sites. EXHIBIT 14-Y.

735.     PLUIM and VARGAS harassed NELLE and LEWIS by having three sheriffs stand behind them at a hearing in violation of due process.

736.     For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS

737.     HADDOCK caused LORRAINE extreme emotional distress by conspiring with KEHOE, CORNELL and COX to post private information about her and MINORS over the internet.

738.     HADDOCK used said posting as an excuse to kidnap MINORS 1 and 2 from the

custody of LORRAINE.

739.     Such information also endangered LEWIS'S health and well-being by causing LEWIS undue stress from fear of assault by predators and friends of CORNELL, KEHOE and COX.

740.     VARONES harassed LEWIS in court when he threatened LEWIS by saying: "LEWIS is a DEAD MAN." PLUIM, VARGAS and THOMAS neither said nor did anything.

741.     HADDOCK harassed MINORS 1 and 2 by "spiriting" them away from their mother and forcing them to sleep on the floor and go to school without shoes.

742.     HADDOCK harassed MINOR 2 by forcing her to lie to school authorities about LORRAINE and her fiancé.

743.     SCHWARTZ sent NELLE via e-mail a link to a *paid* website showing LEWIS as a felon following initiating the false arrest by Knoxville Sheriff based upon FARGO'S pretext that LEWIS had not paid off his automobile. When NELLE demanded an explanation for same from SCHWARTZ, B.H.P.D., the Mayor of the City of Beverly Hills, LEWIS received notice of a Warrant for LEWIS'S arrest was sent to him that turned out to be a fraud. EXHIBIT 59. Clearly, SCHWARTZ, B.H.P.D., CORNELL, and FARGO conspired to get a correct arrest "mug shot" of LEWIS available on the internet.

744.     When NELLE demanded an explanation of such act from SCHWARTZ, the Beverly Hills Police dept. harassed LEWIS by sending him a letter about a (false) warrant for LEWIS'S arrest. EXHBIT 76 shows the letter and the case summary for the only case in Southern California against LEWIS. NOTE: The letter is revelatory in that it states that LEWIS'S "cooperation" will determine the court's NEXT action—thus putting the cart before the horse—thus begging the question of how B.H.P.D. speaks for the court? No Warrant was included with the phony letter.

745.     This sort of harassment by corrupt law enforcement is consistent with known techniques employed by organized crime to add pressure. This sort of "pattern" of activities is one reason why Congress empowered individuals with the Civil RICO Act. Attacking and endangering children is also commonly used by members of Criminal Schemes (organized crime) to bring about their desired results.

746.     For damages as a result of this Criminal Scheme, see ¶ 958.

## TWENTY-SEVENTH CAUSE OF ACTION

**FILING FALSE REPORTS WITH GOVERNMENT AGENCIES** asserted by **ALL PLAINTIFFS and DOE Plaintiffs 1-300 against ALL DEFENDANTS and DOE Defendants 1-300.**

**(The ACTS; RICO; T.C.A. § 39-16-502; U.S. common Law; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; FTC Regulations; Tennessee Adult Protection Act of 1978, T.C.A CH. 6, PT. 1 §§ 71-6-101 and 120; Ariz. Revised Stat. §46-455; Fl. Stat. § 825.102; Ca. Welfare and Institutions Code § 15610.07; Ca. Code of Civ. Proc. § 527.6; T.C.A.71-6-120 et seq. Tenn. Adult Protection Act**

747.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-746 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

748.     For at least the past seven years, PLUIM, SHERMAN, COLE, HAIGHT, and WELCH all filed their 700's with false information on each. EXHIBIT 78. Any untrue statements on said forms constitutes a felony for each falsity, yet HAIGHT, COLE, and WELCH, of said Defendants left the form virtually blank, HAIGHT, WELCH, and SHERMAN claimed no spouse with any income or assets, and all said Defendants claimed no retirement account except for PLUIM, who claimed no retirement account until 2012 when 12 separate accounts suddenly appeared totaling an amount invested as between $460,000 and $4,600,000, an impossibility *legally*.

749.     PLUIM'S stock portfolio increased in range from $193,000-$1,930,000 in 2011 to $836,000-$8,360,000 in 2012. This is another fiscal impossibility based upon market conditions. And COLE'S forms were all amended in 2012 with still inconsistencies and false reports.

750.     It has been shown that WILEMAN, MILLER, VARONOS, FLEMING, THOMAS, VARGAS, KING, INS, CORNELL, HAYELAND, SIMMONS, GRAMMER, JACKSON, MULLIGAN, JUNCO, TORO, KING, KELETI, YAO, HADDOCK, COX, KEITH, and KEHOE all conducted business illegally in order to cheat the public and evade federal, state,

1    county and/or local taxes.

2    751.    Said Defendants failed to pay for any license.

3    752.    WESTBROOK admitted to having filed a (false) police report against SCOTT falsely

4    accusing him of "theft."

5    753.    STELL submitted a copy of falsified bank records to CAMPION, who further falsified

6    the bank records and submitted those records to the San Bernardino Court and WELCH.

7    754.    WELCH, BASLE, and SLOUGH accepted said obviously falsified bank records

8    (pages missing) without question or challenge.  As a direct result, the heirs lost a property with

9    $250,000.00 equity.

10   755.    Said bank records clearly showed theft of $10,000.00 by decedent's girlfriend after

11   DOD that STELL and CAMPION breached their duties and committed malfeasance as a

12   "cover up."

13   756.    WELCH permitted CAMPION and STELL to stall filing an inventory and appraisal

14   for two years beyond the statutory requirement.  At trial, NELLE was arbitrarily precluded

15   from addressing the inventory issues by HAIGHT.  The loss in value to the property is owed

16   entirely to such wastes of time.

17   757.    CAMPION, STELL and HAIGHT conspired to falsely report the estate accounting to

18   the heirs.  HAIGHT accepted obviously false, unsigned documents.

19   758.    SCHWARTZ and B.H.P.D. falsely issued an arrest Warrant against LEWIS.

20   759.    CORNELL made false allegations about LEWIS and e-mailed those allegations to

21   sheriffs, police departments, judges, district attorney, and the Federal Bureau of Investigation.

22   EXHIBIT 79.

23   760.    Neither SCHWARTZ nor any other police office or law enforcement agency

24   questioned LEWIS about CORNELL'S allegations.  Instead, LEWIS has experienced just the

25   opposite; some law enforcement officers complained to LEWIS about CORNELL'S "crazy"

26   claims.

27   761.    None of CORNELL'S allegations against LEWIS or any other Plaintiff had any

28   validity.  CORNELL'S intent was to obstruct justice by casting a shadow over Plaintiffs for the

illegal acts she had herself committed. Similarly, VARONOS, MILLER, WILEMAN, PLUIM, KING, KELETI, YAO, HADDOCK, and KEHOE also made false statements about Plaintiffs for the same reason.

762.    MILLER filed numerous false reports to various agencies against NELLE in his attempt to get NELLE as coercion and blackmail. No action was ever taken against NELLE by any agency despite MILLER'S repeated efforts whereby MILLER continually escalated the FALSE facts of his complaints in a futile effort to get his desired results.

763.    KING filed false federal "EIN" numbers with the City of San Marino for the two businesses belonging to KING that they believe to be legitimate, BODY SLIMMING EXPERTS and ADVANCED HEALTH CONCEPTS. EXHIBIT 80.

764.    WILEMAN filed a case in Los Angeles Superior Court against each of the PAEGELS and their process server that included MILLER'S false police report. WILEMAN failed to show up for the first hearing at which the judge ruled against him for making improper claims and improper service of process.

765.    FORD falsely claimed to be disabled and has filed false documents with the state of Massachusetts and the federal government.

766.    FARGO conspired with CORNELL, WILEMAN, and MILLER to falsely arrest LEWIS for supposedly not paying off the vehicle he had received a clear title to.

767.    Following several months of litigation, LEWIS was cleared of all charges, because FARGO knew from the outset that LEWIS had paid off the vehicle. EXHIBIT 94.

768.    LEWIS believes that each Defendant has participated Criminal Schemes to unduly vex and pressure Plaintiffs.

769.    For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "C" PREDICATE ACTS**

770.    CARMAX reported to the Knoxville Sheriff that LEWIS stole an automobile that was fully paid for, causing LEWIS to be arrested and forced to hire an attorney to defend himself for several months.

771.    Said false report resulted in LEWIS mug shot being circulated by SCHWARTZ over

the internet after someone putting it out on a paid site.

772. CORNELL, VARONOS, and WILEMAN made false statements about LEWIS to the court in GC047909 accusing LEWIS of having two felony convictions and a two-year jail sentence for internet fraud.

773. WILEMAN paid the court for a NO BAIL WARRANT for LEWIS'S arrest, which PLUIM issued based solely on WILEMAN'S say so.

774. Said warrant was added to the case summary by PLUIM, THOMAS and VARGAS.

775. CORNELL filed false reports against LEWIS with COLE, the Santa Monica Superior Court, the Beverly Hills Police Department, the Los Angeles Sheriff's Dept., the Temple City Sheriff, and the F.B.I.

776. CORNELL conspired with SCHWART and B.H.P.D. to falsely arrest LEWIS.

777. MILLER, COX, WALSH, KEHOE and FORD repeated said false reports on their social internet sites as though the information was true.

778. Conspiring with CORNELL, FORD also filed a false report with the Arlington, Massachusetts Police Department against LEWIS.

779. CORNELL, MILLER, JUNCO, WILEMAN, YAO, ROBERTS, GRAMMER (through his attorney) and KELETI made false in-court statements and/or in pleadings about NELLE and/or LEWIS.

780. PLUIM refused to substantiate the Warrant with facts and refused to accept exculpatory evidence.

781. No Warrant was ever served on LEWIS, who appeared for his hearing on October 19, 2012.

782. The Warrant "fiascos" clearly show how organized crime depends on judges, clerks, attorneys, law enforcement and other "crooks" in order to carry out their myriad Criminal Schemes.

783. For damages as a result of this Criminal Scheme, see ¶ 958.

///

///

## TWENTY-EIGHTH CAUSE OF ACTION

**INSURANCE BAD FAITH** asserted by LEWIS, PAEGELS, TBCS and DOE Plaintiffs 1-300 against INS, WILEMAN, YAO, KELETI, NEWELL, PLUIM, THOMAS, VARGAS, ROBERTS, MILLER, JUNCO, VARONOS, KING, and DOE Defendants 1-300.

**(THE ACTS; RICO; T.C.A. § 56-7-106; Tennessee Consumer Protection Act §23-3-112; 15 U.S.C. §§ 1011-15; U.S. Common Law; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030.)**

784.     By this reference, LEWIS herein incorporates each and every allegation of the foregoing paragraphs 1-783 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "B" PREDICATE ACTS

785.     INS, WILEMAN, NEWELL, and KING conspired to avoid the payment of KING'S insurance claim based upon her "default" in GC047909.

786.     INS ignored NELLE'S requested proof as to WILEMAN'S hiring date.

787.     PLUIM and WILEMAN stated that they were both paid a "flat fee" for their respective services. EXHIBIT 2-CM:24-28 thru 2-CN:1-6.

788.     PLUIM, THOMAS, KELETI, VARGAS, WILEMAN, ROBERTS, MILLER, JUNCO and VARONOS participated in *ex parte* communications on December 14, 2012 AFTER KING'S dismissal. There was no valid reason why WILEMAN attended court that day other than INS bad faith—to ensure that INS got *what it paid for*.

789.     For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS

790.     INS and KING authorized the wrongful actions of PLUIM, THOMAS, VARGAS, WILEMAN, NEWELL, KELETI, and YAO against LEWIS.

791.     For damages as a result of this Criminal Scheme, see ¶ 958.

///
///
///
///

## TWENTY-NINTH CAUSE OF ACTION

**BUSINESS INTERFERENCE** asserted by LEWIS, LEWIS III, TBCS, PAEGELS, LORRAINE, and DOE Plaintiffs 1-300 against CORNELL, KEHOE, COX, KEITH, MILLER, WILEMAN, YAO, KELETI, NEWELL, HADDOCK, KING, PLUIM, and DOE Defendants 1-300.

(The ACTS; RICO; T.C.A. § 47-50-109; *Lumley v. Gye*, 2 El. & Bl. 216, 118 Eng. Rep. 749 (Q.B. 1853); U.S. Common Law; *Hutton v. Waters*, 132 Tenn. (5 Thompson) 527, 179 S.W. 134 (1915); The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; FTC Regulations).

792.    By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing 1-791 paragraphs inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

793.    VARONOS, FLEMING, CORNELL, MILLER, KING, NIVEN, JUNCO, and TORO interfered with the businesses owned/operated by TBCS/PAEGELS.

794.    KING, NIVEN, MILLER, VARONOS, FLEMING and CORNELL interfered with TBCS and PAEGELS by stealing their money and property.

795.    NIVEN interfered with TBCS/PAEGELS by giving/selling their videotapes to MILLER/KING.

796.    MILLER and KING interfered with TBCS by stealing their videotapes.

797.    MILLER and KING ruined third-party assets under contract with TBCS.

798.    For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

799.    MILLER created a blog in the name of NELLE without her permission and wrote defamatory material about NELLE while he was pretending to be a "visitor" to the blog. In so doing, MILLER spread defamatory statements about NELLE throughout the internet without her knowing it, which severely disrupted her law practice.

800.    MILLER and PLUIM conspired to destroy NELLE'S reputation and law practice by making false statements in court that neither NELLE nor any of the PAEGEL'S were allowed to refute on the record. PLUIM made derogatory statements on the record at MILLER'S small

claims's case based solely on MILLER'S perjured testimony. The PAEGEL'S were precluded from cross-examining MILLER or speaking in their defense in any way. This was a set-up between MILLER and PLUIM for the sole purpose of damaging TBCS and the PAEGEL'S, particularly NELLE. EXHIBIT 2-A thru L. This occurred after MILLER had been served with the GCO47909 complaint.

801. HADDOCK, KEHOE, CORNELL, MILLER, WILEMAN, COX, and KEITH reported false information to the employers of LEWIS III and LORRAINE, directly resulting in their terminations.

802. For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS

803. CORNELL, COX, MILLER, FORD, HADDOCK and KEHOE conspired to get LEWIS III and LORRAINE terminated from their respective employment and forced to move their residences.

804. CORNELL, COX, MILLER, FORD, HADDOCK and KEHOE conspired and contacted FEMA making false accusations against LEWIS III directly resulting in LEWIS III being fired from his employment.

805. CORNELL, COX, MILLER, FORD, HADDOCK and KEHOE conspired and made three separate contacts with Angelo's Pizza in Englewood, Florida stating that they were from the Los Angeles Times wanting LEWIS III'S contact information and work information. Because of these contacts, LEWIS III was unable to continue working at Angelo's Pizza.

806. Said relocations of LEWIS III and LORRAINE caused LEWIS to be deprived of the company of his grandchildren.

807. Said Defendants so harassed LEWIS as to disrupt his legal research business.

808. For damages as a result of this Criminal Scheme, see ¶ 958.

///
///
///
///

COMPLAINT

## THIRTIETH CAUSE OF ACTION

**DEFAMATION (LIBEL, SLANDER, & FALSE LIGHT INVASION OF PRIVACY asserted by All Plaintiffs and DOE Plaintiffs 1-300 against SCHWARTZ, CORNELL, COX, KEITH, VARONOS, FLEMING, ROBERTS, KELETI, KEHOE, GRAMMER, INS, WALSH, FORD, NEWELL, PLUIM, MILLER, YAO, WILEMAN, KING and DOE Defendants 1-300.**

**(The ACTS; RICO; Restatement (2D) of Torts §§ 652E, 558, 578 (1977); U.S. Common Law; The Identity Theft Enforcement and Restitution Act of 2008, 18 U.S.C. §1030; and FTC Regulations.)**

809.    By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing paragraphs 1-808 and EXHIBITS 1-95 inclusive of this Complaint as if the same were hereat set forth in full.

810.    As discussed *supra*, said Defendants conspired to and made, either directly or through their counsel, defamatory statements about the Plaintiffs on the internet, in court pleadings, at court hearings, and in person causing irreparable harm.

## CRIMINAL SCHEME "A" PREDICATE ACTS

811.    SCHWARTZ, a detective with the Beverly Hills Police Dept., sent to NELLE via e-mail a link to a paid website showing incorrect and defamatory information about LEWIS.

812.    WESTBROOK said SCOTT had the disease known as aids.

813.    WESTBROOK told LEWIS and SCOTT that he had spoken to COX and CORNELL and that "I know all about your dad, he's a celebrity stalker and a felon, that he has Leukemia and I hope he f\*\*king dies."

814.    WESTBROOK called LEWIS "an f\*\*king asshole."

815.    WESTBROOK defamed LEWIS on the phone in front of SCOTT and NELLE. WESTBROOK was informed that the conversation was going to be taped and stated: "I don't give a s\*\*t." LEWIS cautioned WESTBROOK that he (LEWIS) was the P.A.G. in this case and informed WESTBROOK that he would be brought into the case if he continued. WESTBROOK responded: "I don't give a s\*\*t." This language was also heard by MINOR No. 4.

816.    Unbeknownst to WESTBROOK, he revealed information that could only have come

1    from KEHOE.

817.    WESTBROOK admitted in front of SCOTT, NELLE and RICHARD that he had received documents about LEWIS from COX.

818.    WESTBROOK defamed SCOTT and LEWIS to a third party.

819.    For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "B" AND "C" PREDICATE ACTS**

820.    CORNELL intentionally distributed false and defamatory information in written form in e-mails, on her Facebook, on twitter, on her blog lydiacornell.com, on Wikipedia, on LEWIS'S Facebook, on the Huffington Post, on TMZ.com, on Rip-OffReport.com.

821.    CORNELL, WALSH, FORD, COX, and KEITH to defame LEWIS on numerous internet sites, some of which cannot be removed (specifically, Rip-OffReport.com).

822.    WILEMAN, KELETI, INS, FIN INST, KING, MILLER, VARONOS, GRAMMER, PLUIM and CORNELL conspired to openly defame LEWIS at hearings and in pleadings.

823.    CORNELL intentionally distributed false and defamatory information at hearings about NELLE and LEWIS.

824.    MILLER intentionally distributed false and defamatory information orally in hearings about TBCS/PAEGELS and NELLE.

825.    MILLER admitted to distributing the false and defamatory statements about NELLE by PLUIM to 5000 internet sites.

826.    MILLER'S false police, sheriff, and California State Bar complaints are filled with defamatory statements about the PAEGELS and in particular NELLE.

827.    LEWIS III was terminated from his employment based solely upon defamatory statements made to his employer by CORNELL, COX, and MILLER.

828.    For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "C" PREDICATE ACTS**

829.    WILEMAN intentionally distributed false and defamatory material to PLUIM and PAEGEL in order to support his claim that LEWIS was a felon.

830.    CORNELL engaged in a widespread defamation campaign against LEWIS.

831. SCHWARTZ intentionally distributed false and defamatory information about LEWIS via the internet. EXHIBIT 59. When demanded to know SCHWARTZ'S justification, The City of Beverly Hills attributed it to "spoofing;" a second demand resulted in the false Warrant being issued.

832. For damages as a result of this Criminal Scheme, see ¶ 958.

## THIRTY-FIRST CAUSE OF ACTION

**VIOLATIONS OF THE RULES OF DISCOVERY asserted by LEWIS, PAEGELS, TBCS and DOES 1-300 against SHERMAN, FANGARY, HAIGHT, STELL, WELCH, EDMON, SLOUGH, BASLE, GOLDEN, KRATTI, BORRIS, CAMPION, COLE, WILEMAN, MILLER, CORNELL, PLUIM, INS, JUNCO, TORO and DOES 1-300 INCLUSIVE.**

### (The ACTS; RICO; T.C.A. § 26.02)

833. By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing paragraphs 1-832 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

834. FANGARY demanded possession of the *original* files of NELLE'S clients. FANGARY filed motions to force NELLE into relinquishing the original files arguing that he was entitled to the original files under the law, which was untrue.

835. At hearing, SHERMAN corrected FANGARY'S misinterpretation of the rules of discovery, yet SHERMAN, GOLDEN and BORRIS conspired to sanction NELLE for offering copies of said files instead of complying with FANGARY'S unlawful demands.

836. COLE, KRATTI, WESLEY and EDMON violated the rules of discovery by denying LEWIS access to the file and evidence submitted by CORNELL.

837. COLE, KRATTI, WESLEY and EDMON conspired to obviate the rules of discovery and LEWIS'S rights to due process by relying on CORNELL'S Facebook evidence, which she knew LEWIS could not see via CourtCall and had not received.

838. STELL and CAMPION refused to comply with reasonable discovery requests.

839. WELCH, SLOUGH and BASLE conspired with STELL and CAMPION to deny NELLE'S motion to compel reasonable discovery requests.

840.    HAIGHT, SLOUGH and BASLE conspired with STELL and CAMPION to deny NELLE'S motion to enforce reasonable discovery requests and subpoena.

841.    ROBINSON refused to return to TBCS/PAEGELS their documents and/or file.

842.    For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

843.    Said Defendants violated the rules of discovery by refusing to comply with said Plaintiffs reasonable discovery requests. EXHIBIT 14-AZ thru AAD.

844.    LEWIS, as the Private Attorney General in Case No. GC047909, requested discovery from CORNELL, MILLER, KING, WILEMAN, YAO. None of these Defendants complied with any reasonable request.

845.    PLUIM, EDMON, WESLEY and KRATTI subverted LEWIS'S work as PAG by granting WILEMAN'S request for a protective order.

846.    Upon LEWIS'S demand for the return of his laptop computer, CORNELL used said computer to hack into LEWIS'S bank records, Facebook accounts and e-mails. Along with the computer, CORNELL gave LEWIS a "thumb drive" with evidence of her illegal wiretapping. Said wiretapping included a conversation with Adam Storer of the Los Angeles Bureau of the Federal Bureau of Investigation and others (unbeknownst to them). This EXHIBIT/thumb drive will be submitted to the Court under seal.

847.    KING, MILLER, JUNCO, WILEMAN, CORNELL and TORO refused to comply with any reasonable discovery requests. PLUIM, EDMON, WESLEY and KRATTI excused said defendant's compliance by overruling motions and ignoring demands.

848.    WILEMAN failed to draft a Discovery Plan, as he had agreed to do, for submission to the court.

849.    SLOUGH, BASLE, WELCH, HAIGHT, CAMPION and STELL violated state discovery rules by refusing to give heirs proof of insurance proceeds and other documents vital to the best interests of the heirs.

850.    BORRIS failed to properly supervise SHERMAN.

851.    GOLDEN failed to advise SHERMAN as to NELLE'S motion for sanctions and fees

based upon her claim of mail tampering and mailbox tampering, violations of discovery rules, etc.

852.    BORRIS failed to properly supervise WELCH and HAIGHT.

853.    BASLE failed to properly advise WELCH and HAIGHT regarding discovery, sanctions, and other violations of federal and state law.

854.    For damages as a result of this Criminal Scheme, see ¶ 958.

**CRIMINAL SCHEME "B" PREDICATE ACTS**

855.    EDMON failed to properly respond to LEWIS'S request that she investigate PLUIM.

856.    EDMON and WESLEY failed to properly supervise PLUIM and COLE.

857.    For damages as a result of this Criminal Scheme, see ¶ 958.

**THIRTY-SECOND CAUSE OF ACTION**

**INCOME TAX FRAUD AND EVASION asserted by ALL Plaintiffs and DOE Plaintiffs 1-300 against ALL Defendants and DOE Defendants 1-300 Inclusive.**

**(The ACTS; IRC §7201; RICO)**

858.    By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing paragraphs 1-857 inclusive of this Complaint as if the same were hereat set forth in full.

**CRIMINAL SCHEME "A" PREDICATE ACTS**

859.    All Defendants intentionally evaded paying taxes thereby committing tax fraud on cities, counties, states and the Department of the Treasury ("I.R.S.") by taking bribes and payoffs and/or conducting fraudulent business.

860.    Presumably, PLUIM, SHERMAN, HAIGHT, COLE and WELCH received "payoffs" because they all made rulings that were contrary to local, state, and federal laws and rules. Said payoffs were not listed on their form 700 filed with the California Fair Political Practices Commission and were untaxed. EXHIBIT 78.

861.    PLUIM claimed twelve (12) new retirement accounts in 2012 far in excess of I.R.S. guidelines. EXHIBIT 78-BN thru BO.

862.    PLUIM claimed to invest in a company that does not exist; his true involvement is in a

company that he deliberately mis-identified on his "700's."

863.    FIN INST committed tax fraud by receiving money from bribes and taken by fake and fraudulent businesses.

864.    FIN INST failed to properly supervise bank users, MERITUS and BEATY.

865.    Defendants claimed to own and operate business concerns that are not legitimate in order to receive money without being taxed.

866.    VARONOS, FLEMING, GRAMMER, KING, MILLER, CORNELL, BLEU, JUNCO, TORO, HAYELAND, SIMMONS, JACKSON, MULLIGAN, MERITUS, BEATY, COX, KEITH, KEHOE, PLUIM, BEATY, INS., FIN INST, failed to report income and/or benefits they received by and through their fraudulent business schemes.

867.    MILLER and TORO failed to report income they received from TBCS/PAEGELS on their federal income taxes. EXHIBIT 50.

868.    MILLER failed to report income he received from TBCS/PAEGELS on his state of California income tax. EXHIBIT 51.

869.    MILLER intended to defraud the state of California and the Dept. of the Treasury by refusing to give NELLE his tax identification number, claiming to be a "corp" as though that would excuse him from taxation. EXHIBIT 52.

870.    MILLER deposited money from TBCS/PAEGELS into the MILLER FAMILY TRUST with the intention of evading income taxes.

871.    MILLER sold pirated videos via the internet.

872.    KING advertised multiple unlicensed businesses for the purpose of evading city, county, state and federal taxes.

873.    WILEMAN, VARONOS, CORNELL, HAYELAND, HADDOCK and MILLER have prior instances of income tax evasion and fraud.

874.    GRAMMER and CORNELL received advertising via Variety magazine.

875.    GRAMMER, CORNELL and BLEU received advertising via MYEZTV, TODHD, STAROPOLY, and ESTARTV.

876.    VARONOS, TORO, JUNCO, FLEMING, ROBINSON, WORMLEY, MILLER, and

KING stole money and property from TBCS/PAEGELS.

877. FIN INST were complicit in Defendants' tax fraud and evasion by *inter alia* receiving money from fake businesses.

878. ROBINSON was suspended from the practice of law at the time he took a retainer for legal work from TBCS/PAEGELS. Therefore, he could not have reported the income on his taxes.

879. WORMLEY knew that the TBCS/PAEGEL retainer was taken as the result of fraud. WORMLEY took receipt of stolen money because no legal work was ever performed by either ROBINSON or WORMLEY.

880. JUNCO and TORO did not report the income derived from their involvements with TODHD, MYEZTV, or GREEN NETWORK, which they received from TBCS/PAEGELS.

881. CORNELL did not report income derived from selling material over the internet. EXHIBIT 67.

882. CORNELL rented rooms in her residence, but did not report the income on her taxes or pay the city license fee. EXHIBIT 68.

883. CORNELL receives donations made to several fraudulent businesses.

884. MILLER advertised his businesses address to be in the City of San Marino, yet he does not have a city, county, or state license to conduct those businesses. EXHIBIT 80.

885. KING advertised her businesses address to be in the City of San Marino, yet she does not have a city, county, or state license to conduct those businesses. EXHIBIT 80.

886. For damages as a result of this Criminal Scheme, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

887. INS were complicit in paying bribes and therefore accomplices to tax fraud by payees.

888. MILLER told PLUIM that HITMAN was a California company that was "not real." PLUIM was complicit in MILLER'S tax fraud Criminal Scheme. The record is replete with similar contradictions to law made by MILLER and PLUIM.

889. SIMMONS and HAYELAND failed to report income they received by and through SIMMONS'S unregistered and unlicensed businesses.

890.    COX evaded income taxes by conducting her business on-line.    COX has not registered or licensed her business with the city, state, or federal governments.

891.    KEITH'S computer business unregistered and unlicensed.

892.    LEWIS alleges and believes that the foregoing Criminal Schemes cheated local, state and federal governments—and the public at large—of funds and property while evading taxes and in an ongoing Criminal Scheme to commit tax fraud.    The extent of each Defendant's tax fraud will be ascertained through discovery.

893.    The tax and bank records for all Defendants will assist in showing the extent of each Defendant's liability for tax fraud.    Clearly, any Defendant who either suborned evasion, conspired to hide income, or laundered money wrongfully received has committed taxation fraud.

894.    For damages as a result of this Criminal Scheme, see ¶ 958.

### THIRTY-THIRD CAUSE OF ACTION

**MONEYLAUNDERING asserted by ALL Plaintiffs and DOE Plaintiffs 1-300 against ALL Defendants and DOE Defendants 1-300 inclusive.**

**(18 U.S.C. 1956; The ACTS; RICO; T.C.A § 39-14-903; 18 U.S.C. §1030)**

895.    By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing paragraphs 1-894 inclusive of this Complaint as if the same were hereat set forth in full.

### CRIMINAL SCHEMES "A" AND "B" PREDICATE ACTS

896.    Said Defendants laundered money taken illegally.

897.    For damages as a result of this and all Criminal Schemes, see ¶ 958.

### THIRTY-FOURTH CAUSE OF ACTION

**COPYRIGHT INFRINGEMENT asserted by Plaintiffs LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against Defendants MILLER, KING, NIVEN, VARONOS, CORNELL and DOE Defendants 1-300 Inclusive and DOE Defendants 1-300 Inclusive.**

**(The ACTS; CIVIL RICO; TN Common Law)**

898.    By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing paragraphs 1-897 inclusive of this Complaint as if the same were hereat set forth in

full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

899.    MILLER sold PAEGELS/TBCS videotapes on the internet. EXHIBITS 49 and 58.

900.    CORNELL infringed on LEWIS'S copyrighted photographs by taking them from his Facebook page without his express permission despite his warning.

901.    LEWIS through his investigation as the PAG has been informed and believes, and thereon alleges, that at all times mentioned herein Defendant CORNELL marketed, the shows known as "Too Close For Comfort," without their owners' permission. The shows are owned by D.L.T., LTD. of 124 E. 55th St., New York, NY 10019. According to legal counsel for D.L.T., CORNELL had no such permission.

902.    PAEGELS and TBCS own exclusive rights to the material that was videotaped by the PAEGELS—stolen by MILLER and KING—because all other celebrity performers at the EVENT had waived their right to copyright ownership of their material.

903.    PAEGELS and TBCS were given express and/or implied permission by Variety EVENT organizers to videotape the red carpet, the rehearsals, the show itself, and the backstage interviews and were freely given their own EVENT badges and access to all areas of the venue.

904.    All content on all of the PAEGELS videotapes were and are original.

905.    KING and MILLER and their agents digitized said copyrighted material videotaped at the Variety EVENT on December 4, 2010 as well as other copyrighted material videotaped on or about September 1, 2010 through December 4, 2010 at NIVEN'S studio, CarStar/Nuke the Fridge, Frank and Sons, Extreme Green, and Interviews of KING, Randy Sotile, John Carter, and Walter Coulter and sold them. MILLER placed PAEGELS' material on onePakistan.com, Prismotube, tube.7s-b.com, mahaythi.com, bluesplayer.co.uk., ISPs, Youtube and Facebook without their permission. EXHIBIT 49.

906.    For damages as a result of this and all Criminal Schemes, see ¶ 958 and DAMAGES *infra.*

///

## THIRTY-FIFTH CAUSE OF ACTION

**COPYRIGHT PIRACY** asserted by Plaintiffs LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300 against Defendants MILLER and DOE Defendants 1-300 Inclusive.

**(The ACTS; CIVIL RICO; TN TITLE 39 statutory and/or common law)**

907.    By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing paragraphs 1-906 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

908.    KING and MILLER pirated TBCS/PAEGELS videotapes.

909.    CORNELL pirated LEWIS'S photographs.

910.    For damages as a result of this and all Criminal Schemes, see ¶ 958 and DAMAGES *infra.*

## THIRTY-SIXTH CAUSE OF ACTION

**FAILURE TO PROPERLY SUPERVISE/SUBBORNATION OF ILLEGAL ACTS** asserted by ALL Plaintiffs DOE Plaintiffs 1-300 asserted against KRATTI, BASLE, GOLDEN, WESLEY, EDMON, BORRIS, SLOUGH, INS, FIN INST, WILEMAN, KELETI, GRAMMER, ALMEIDA, STAROPOLY, JACKSON, FLEMING, VARONOS, MULLIGAN, MASTER CARD, PLUIM, NEWELL, YAO, MILLER, KING, and DOE Defendants 1-300 inclusive.

**(The ACTS; T.C.A. § 39-14-114; T.C.A. § 39-12-201 et seq.; T.C.A. § 39-16-602 et seq.; T.C.A. § 39-24-120; T.C.A. § 39-14-412; T.C.A. § 39-12-103; T.C.A. § 39-15-401 et seq.; T.C.A. § 39-17-309; T.C.A. § 39-17-315; T.C.A. § 39-16-702; T.C.A. § 39-14-103' T.C.A. § 39-14-903)**

911.    By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing paragraphs 1-910 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "A" PREDICATE ACTS

912.    FIN INST failed to properly supervise the activities of their licensees, BEATY, FLEMING, VARONOS, JACKSON, MULLIGAN, GRAMMER,   SIMMONS, HAYELAND, and CORNELL and their respective companies.

913.    MASTER CARD failed to properly supervise the use STAROPOLY, GRAMMER, VARONOS, and FLEMING made of its Payoneer Card.

914. INS failed to supervise WILEMAN, YAO, KELETTI, and NEWELL.

915. KRATTI, BASLE, GOLDEN subomed judicial racketeering committed by PLUIM, COLE, HAIGHT, WELCH, and SHERMAN including but not limited to acts of rulings that contravened existing law, perjury, bias, bribery, extortion, discovery, and due process violations.

916. WESLEY and EDMON failed to properly supervise PLUIM and COLE thereby suborning judicial racketeering.

917. SLOUGH failed to properly supervise HAIGHT and WELCH thereby suborning judicial racketeering.

918. BORRIS failed to properly supervise SHERMAN thereby suborning judicial racketeering.

919. BAC failed to properly mediate.

920. For damages as a result of this and all Criminal Schemes, see ¶ 958.

**CRIMINAL SCHEME "B" PREDICATE ACTS**

921. INS failed to properly supervise the activities of ALMEIDA, WILEMAN, YAO, NEWELL, and KELETI while defending KING and MILLER.

922. VIEWPARTNER, TSOFTNET, STAROPOLY, TODHD, and ESTARTV failed to properly supervise the activities of the executive officers of those respective "businesses."

923. As managing partner, ALMEIDA failed to properly supervise the activities of Veatch Carlson associates, WILEMAN, YAO and KELETI.

924. ALMEIDA intentionally failed to properly supervise by threatening NELLE in response to her inquiry about WILEMAN.

925. For damages as a result of this and all Criminal Schemes, see ¶ 958.

**CRIMINAL SCHEME "C" PREDICATE ACTS**

926. INS and ALMEIDA failed to properly supervise the activities of WILEMAN and KELETI, who defamed and harassed LEWIS.

927. INS failed to properly supervise WILEMAN, who represented the interests of all other defendants—including FIN INST, VARONOS, FLEMING, GRAMMER, STERNBERG,

CORNELL, JUNCO, TORO and their respective "businesses"—at hearings and did so even after PLUIM had dismissed the complaint against KING, who was supposed to have been his only client according to INS and WILEMAN. WILEMAN'S actions are imputed to all other Defendants.

928. For damages as a result of this and all Criminal Schemes, see ¶ 958.

<h2 align="center">THIRTY-SEVENTH CAUSE OF ACTION</h2>

**FAILURE TO SELF-REPORT** asserted by Plaintiffs **LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300** asserted against **FIN INST and DOE Defendants 1-300 inclusive.**

<h3 align="center">(The ACTS; RICO; Federal Deposit Insurance Corporation, the Federal Reserve Board, or the Office of the Comptroller of the Currency.)</h3>

929. By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing paragraphs 1-928 inclusive of this Complaint as if the same were hereat set forth in full.

930. FIN INST failed to report the complaints made against them in GC047909 to bank regulators and the Securities and Exchange Commission.

931. PLUIM, SHERMAN, COLE, HAIGHT and WELCH failed to report the income derived through racketeering activities.

932. For damages as a result of this and all Criminal Schemes, see ¶ 958.

<h2 align="center">THIRTY-EIGHTH CAUSE OF ACTION</h2>

**ASSAULT** asserted by Plaintiffs **LEWIS, TBCS, PAEGELS, and DOE Plaintiffs 1-300** asserted against **MILLER, VARONOS and DOE Defendants 1-300 inclusive.**

<h3 align="center">(The ACTS; RICO; T.C.A. § 39-13-101)</h3>

933. By this reference, Plaintiffs herein incorporates each and every allegation of the foregoing paragraphs 1-932 inclusive of this Complaint as if the same were hereat set forth in full.

**CRIMINAL SCHEME "A" PREDICATE ACTS**

934. Without her permission, MILLER assaulted NELLE at her office, in front of witnesses, by suddenly and uninvitingly springing toward her and applying pressure to her

spine.

935. WESTBROOK assaulted LEWIS, SCOTT and LEWIS'S mother with the specific intent of causing them physical injury and harassment in collusion with CORNELL, COX and KEHOE.

936. For damages as a result of this and all Criminal Schemes, see ¶ 958.

## CRIMINAL SCHEME "B" PREDICATE ACTS

937. VARONOS assaulted LEWIS by stating that LEWIS was a "dead man" at a court hearing in case no. GC 047909.

938. MILLER chased TBCS/PAEGEL'S process server up the street waiving a pistol at him.

939. For damages as a result of this and all Criminal Schemes, see ¶ 958.

## CRIMINAL SCHEME "C" PREDICATE ACTS

940. VARONOS assaulted LEWIS by stating, "LEWIS is a DEAD MAN" at a hearing in case no. GC047909.

941. For damages as a result of this and all Criminal Schemes, see ¶ 958.

## THIRTY-NINTH CAUSE OF ACTION

**FALSE IMPRISONMENT/ARREST asserted by LEWIS and DOE Plaintiffs 1-300 against CARMAX and FARGO and DOE Defendants 1-300 inclusive.**

### (The ACTS; RICO; T.C.A. § 39-13-302; T.C.A. § 39-13-304)

942. By this reference, Plaintiffs incorporates each and every allegation allegation of the foregoing paragraphs 1-941 inclusive of this Complaint as if the same were hereat set forth in full.

## CRIMINAL SCHEME "C" PREDICATE ACTS

943. CARMAX falsely claimed to authorities that LEWIS had "stolen" the vehicle that FARGO repossessed as members of the Criminal Scheme. EXHIBIT 95.

944. Prior to this, FARGO gave LEWIS a clear title on his automobile after it was paid off in full in March, 2013. EXHIBIT 95-C.

945. CARMAX was given a clear title by LEWIS when he traded his car. It was FARGO

1    that came onto the CARMAX lot and taken the vehicle, not LEWIS.

2    946.    FARGO and CARMAX conspired to report to law enforcement that LEWIS had
3    "stolen" a vehicle that he had traded in at CARMAX. CARMAX accused LEWIS of "theft" in
4    order to get the Knoxville Sheriff to arrest LEWIS.

5    947.    The truth was that LEWIS he had already paid off said vehicle and had already
6    received a clear title on it and a *refund from FARGO for over-payment.*

7    948.    It was FARGO who actually stole the car from CARMAX and blamed LEWIS for it.

8    949.    The true purpose of this *fiasco* was to get a mug shot of LEWIS available to distribute
9    on the internet, which SCHWARTZ distributed to NELLE and who knows who else—for a
10   reason he refused to explain, but since PLUIM, WILEMAN, KELETI, CORNELL and
11   MILLER were unsuccessful in finding an actual photo of LEWIS suitable to devise a mug shot
12   from when they conspired to get LEWIS arrested, this occurrence solved that problem.
13   Certainly, all will become clear after this suit is filed.

14   950.    Within a few weeks, SCHWARTZ e-mailed NELLE the link of LEWIS'S arrest from
15   a PAID sight, not one normally used by law enforcement; although said site had inaccurate
16   information about LEWIS'S arrest the members of the Criminal Scheme accomplished their
17   goal of effectuating an arrest of LEWIS.

18   951.    For damages as a result of this Criminal Scheme, see ¶ 958.

**FORTIETH CAUSE OF ACTION**

20   **PREDATORY LENDING/USURY asserted by LEWIS and PAEGELS and DOE Plaintiffs 1-
21   300 against CARMAX and DOE Defendants 1-300 inclusive.**

22       **(The ACTS; RICO; Consumer Credit Protection Act (CCPA) and anti-usury laws)**

23   952.    By this reference, Plaintiffs incorporates each and every allegation allegation of the
24   foregoing paragraphs 1-951 inclusive of this Complaint as if the same were hereat set forth in
25   full.

26   **CRIMINAL SCHEME "A" PREDICATE ACTS**

27   953.    CARMAX regularly over-charged interest on PAEGEL'S car loan.

28   954.    CARMAX charged interest upon interest in making their loan calculations.

COMPLAINT

1    955.    The "grace period" given for payments to be maid resulted in double interest being

2    charged.

3    956.    CARMAX'S methods of finance charges constitutes racketeering as a member of a

4    Criminal Scheme that also includes FARGO.

5    957.    For damages as a result of this Criminal Scheme, see ¶ 958.

6

7    DATED:              SUBMITTED BY: _____

8                                      RICHARD LEWIS, in *propria persona* and *ex rel* as a
                                        **Private Attorney General for Plaintiffs RICHARD**
9                                      **LEWIS, RICHARD LEWIS III; LORRAINE LEWIS,**
                                        **SCOTT E. LEWIS, MINORS 1, 2, 3, 4; THOMAS W.**
10                                     **PAEGEL; NELLE S. PAEGEL; THOMAS W.V.**
                                        **PAEGEL; THE BODY COMPANY SPORTS, INC.**
11

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

## 958.  DAMAGES

Based upon JOINT AND SEVERAL LIABILITY, the foregoing paragraphs 1-957 inclusive, LEWIS and ALL OTHER PLAINTIFFS pray for the following compensatory and punitive damages to be awarded:

1)    Damages for and/or resulting from OBSTRUCTION OF JUSTICE are as follows:

    A.    $100,000,000.00 + $3,000,000.00 + $250,000.00 + = $103,250,000.00 for LEWIS for obstruction of justice, violations of due process, and intimidation by court personnel.

        TOTAL= $103,250,000.00 x TREBLE = 309,750,000.00 for obstruction of justice,

    B.    ALL DEFENDANTS NAMED IN GCO47909 and all Supplements and Amendments:

        1.    $100,000,000.00 + $3,000,000.00 + $250,000.00 + = $103,250,000.00 for PAEGELS/TBCS for violations of due process, conspiracy, defamation, intimidation, collusion, attorney fees, costs, theft, and other charges such further damages as deemed appropriate by the Court and jury.

           TOTAL DAMAGES= $103,250,000.00 x TREBLE = 309,750,000.00

        2.    $100,000,000.00 for LEWIS'S and attempted murder, intimidation, due process, identity theft, defamation, RICO claims and travel.

           TOTAL DAMAGES x TREBLE = $300,000,000.00.

        3.    $50,000.00 for damages to LEWIS III's employment, reputation and moving costs.

           TOTAL DAMAGES x TREBLE = $150,000.00.

        4.    $50,000.00 for damages to LORRAINE employment, reputation and moving costs.

           TOTAL DAMAGES x TREBLE = $150,000.00.

        5.    $1,000,000.00 for damages to LORRAINE due to loss of consortium with Minors 1 and 2.

           TOTAL DAMAGES:  $1,000,000.00 x TREBLE = $3,000,000.00.

6.     $500,000,000.00 for damages to MINOR 1 for having her identity and residence broadcast widely on the internet and for lifelong exposure to predators.

TOTAL DAMAGES: $500,000,000.00 x TREBLE=$1,500,000,000.00.

7.     $1,500,000,000.00 for damages to MINOR 2 for having her identity and residence broadcast widely on the internet and for lifelong exposure to predators and owing to her special needs.

TOTAL DAMAGES: $1,500,000,000.00 x TREBLE=$4,500,000,000.00.

8.     $500,000,000.00 for damages to MINOR 3 for having her identity and residence broadcast widely on the internet and for lifelong exposure to predators.

TOTAL DAMAGES: $500,000,000.00 x TREBLE=$1,500,000,000.00.

9.     $500,000,000.00 for damages to MINOR 4 for having her identity and residence broadcast widely on the internet and for lifelong exposure to predators.

TOTAL DAMAGES: $500,000,000.00 x TREBLE=$1,500,000,000.00.

10.    $5,000,000.00 for damages to SCOTT for collusion to defame, harass, harm, invade privacy and any other harm caused by Defendants.

TOTAL DAMAGES: $5,000,000.00 x TREBLE= $15,000,000.00.

C.   $250,000.00 for attorney fees and costs damages to NELLE during PROPS0700007.

TOTAL DAMAGES: $250,000.00 x TREBLE=$750,000.00.

D.   $251,600.00 as justified in NELLE'S motion for sanctions, fees and costs during cases 30-2012-00609008-PR-TR-CJC and 30-2012-00609235-PR-TR-CJC for mail tampering and mailbox tampering.

TOTAL DAMAGES: $251,600.00 x TREBLE = $754,800.00

And for such further relief as the Court and/or jury may grant for said
Defendant's subornation of federal crimes, subornation of discovery violations,
collusion, due process, and perjury.

E.    $4,200 in sanctions against NELLE in cases 30-2012-00609008-PR-TR-CJC and
30-2012-00609235-PR-TR-CJC.

     TOTAL DAMAGES: $4,200.00 x TREBLE = $12,800.00.

F.    $8,250 in sanctions against NELLE in case GC047909.

     TOTAL DAMAGES: $8,250.00 x TREBLE = $24,750.00.

G.    $50,000.00 for each instance of judicial racketeering.

     TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

H.    $50,000.00 for each instance of judicial bias.

     TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

I.    $50,000.00 for each instance of collusion derived by or to a court or court
personnel .

     TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

J.    $50,000.00 for each instance of attempted murder by or to a court or court
personnel.

     TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

K.    $50,000.00 for each instance of violations of procedural and/or substantive due
process by a court or court personnel, county counsel, or presiding judge.

     TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

L.    $50,000.00 for each instance of conspiracy by or to a court, court personnel,
county counsel, or presiding judge.

     TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

M.    $50,000.00 for each instance of perjury by or to a court, court personnel,
county counsel, or presiding judge.

     TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

COPY

N. $50,000.00 for each instance of defamation by or to a court, court personnel, county counsel, or presiding judge.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

O. $50,000.00 for each instance of bribery by or to a court, court personnel, county counsel, or presiding judge.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

P. $50,000.00 for each instance of false reporting by or to a court, court personnel, county counsel, or presiding judge.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

Q. $50,000.00 for each instance of tax fraud by or to a court, court personnel, county counsel, or presiding judge.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

R. $50,000.00 for each instance of assault by or in a court of law.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

S. $50,000.00 for each instance of elder abuse by or to a court, court personnel, county counsel, or presiding judge.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

T. $50,000.00 for each instance of extrinsic fraud by or to a court, court personnel, county counsel, or presiding judge.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

U. $50,000.00 for each instance of any other, as yet unidentified, illegal act committed by or to a court, court personnel, county counsel, or presiding judge.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

V. $103,000,000.00 for FAILING TO ADJUDICATE NELLE'S petitions and motions in case GC047909.

TOTAL DAMAGES: $103,000,000.00 x TREBLE = $309,000,000.00

W. $100,000,000.00 for FAILING TO ADJUDICATE LEWIS'S petitions and motions in case GC047909.

TOTAL DAMAGES: $100,000,000.00 x TREBLE = $300,000,000.00

X. $500,000.00 for FAILING TO ADJUDICATE NELLE'S petitions and motions in case PROPS0700007.

TOTAL DAMAGES: $500,000.00 x TREBLE = $1,500,000.00.

Y. $250,000 for FAILING TO ADJUDICATE NELLE'S motion in case nos. 30-2012-00609008-PR-TR-CJC and 30-2012-00609235-PR-TR-CJC.

TOTAL DAMAGES: $250,000.00 x TREBLE = $750,000.00

Z. $50,000,000.00 for FAILING TO ADJUDICATE LEWIS'S motions in case SS022572.

AA. $50,000.00 for each instance of TECHNOLOGY HACKING by any Defendant.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

AB. $50,000.00 for each instance of WIRE TAPPING by any Defendant.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances.

AC. An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

2) Damages for and/or resulting from GRAND THEFT BY FALSE PRETENSES are as follows:

A. $100,000,000.00 as the loss of GC047909 incurred through criminal acts of Defendants.

TOTAL DAMAGES: $100,000,000.00 x TREBLE = $300,000,000.00.

B. $3,000,000.00 as the cost of litigation of GC047909.

TOTAL DAMAGES: $3,000,000.00 x TREBLE = $9,000,000.00.

C. $250,000.00 Restitution damages of GC047909.

TOTAL DAMAGES: $250,000.00 x TREBLE = $750,000.00.

D. $25,000 damages for money and property stolen from LEWIS.

TOTAL DAMAGES: $25,000.00 x TREBLE = $75,000.00.

E. An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

3) Damages for and/or resulting from CONSPIRACY are as follows:

    A.    $50,000 for each instance of conspiracy excluded by "1)L" above.

            TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

    B.    An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

4) Damages for and/or resulting from EXTORTION are as follows:

    A.    $50,000 for each instance of extortion.

            TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

    B.    An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

5) Damages for and/or resulting from CREDIT CARD FRAUD are as follows:

    A.    $1849.00 for damages derived as the result of fraud to LEWIS'S credit card.

            TOTAL DAMAGES: $1849.00 x TREBLE = $5,547.00.

    B.    $50,000.00 for each instance of credit card fraud.

            TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

    C.    An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

6) Damages for and/or resulting from CHILD ENDANGERMENT AND ABUSE are as follows:

    A.    $50,000 for life disruption, moving, relocation, loss of employment to LORRAINE LEWIS as a result of MINOR'S identities and residence placed on the internet.

            TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00.

    B.    $1,000,000.00 for MINOR 1's loss of consortium and affection with LORRAINE.

            TOTAL DAMAGES: $1,000,000.00 x TREBLE = $3,000,000.00.

    C.    $3,000,000.00 for MINOR 2's loss of consortium and affection with LORRAINE and extreme emotional distress due to her special needs.

            TOTAL DAMAGES: $3,000,000.00 x TREBLE = $9,000,000.00.

    D.    $50,000 for life disruption, moving, relocation, loss of employment to RICHARD LEWIS III as a result of MINOR'S identities and residence placed on the internet.

COPY

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00.

E.  $50,000.00 for each instance of child endangerment.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

F.  An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

7)  Damages for and/or resulting from UNFAIR/DECEPTIVE ACTS OR PRACTICES IN COMMERCE are as follows:

A.  $250,000.00 restitution damages for GC047909.

TOTAL DAMAGES: $250,000.00 x TREBLE = $750,000.00.

B.  $1,000.00 restitution damages for rent paid to CORNELL during litigation of GC047909.

TOTAL DAMAGES: $1,000.00 x TREBLE = $3,000.00.

C.  $50,000.00 for each instance of deception in commerce.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

D.  An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

8)  Damages for and/or resulting from  r  FRAUD BY INTENTIONAL MISREPRESENTATION are as follows:

A.  $103,000,000.00 for losses of PAEGELS/TBCS associated with GC047909.

TOTAL DAMAGES: $103,000,000.00 x TREBLE = $309,000,000.00.

B.  $250,000.00 restitution damages for PAEGELS/TBCS associated with GC047909.

TOTAL DAMAGES: $250,000.00 x TREBLE = $750,000.00.

C.  $1,000.00 restitution damages for rent paid to CORNELL during litigation of GC047909.

TOTAL DAMAGES: $1,000.00 x TREBLE = $3,000.00.

D.  $50,000.00 for each instance of fraud by intentional misrepresentation.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

E..  An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

9)  Damages for and/or resulting from FRAUD BY NEGLIGENCE are as follows:

A.  $103,000,000.00 for losses of PAEGELS/TBCS associated with GC047909.

TOTAL DAMAGES: $103,000,000.00 x TREBLE = $309,000,000.00.

B. $250,000.00 restitution damages for PAEGELS/TBCS associated with GC047909.

TOTAL DAMAGES: $250,000.00 x TREBLE = $750,000.00.

C. $1,000.00 restitution damages for rent paid to CORNELL during litigation of GC047909.

TOTAL DAMAGES: $1,000.00 x TREBLE = $3,000.00.

D. $50,000.00 for each instance of fraud by negligence.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

E. An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

10) Damages for and/or resulting from FRAUD BY FRAUDULENT INDUCEMENT are as follows:

A. $3,000,000.00 for NELLE'S attorney fees and costs of litigating GC047909.

TOTAL DAMAGES: $3,000,000.00 x TREBLE = $9,000,000.00.

B. $250,000.00 for TBCS/PAEGEL'S restitution in GC047909.

TOTAL DAMAGES: $250,000.00 x TREBLE = $750,000.00.

C. $12,600 for LEWIS'S restitution during GC047909.

TOTAL DAMAGES: $12,600.00 x TREBLE = $37,800.00.

D. $100,000,000.00 for inducing LORRAINE to sign child custody papers that were misrepresented to her.

TOTAL DAMAGES: $100,000,000.00 x TREBLE = $300,000,000.00.

E. $10,000,000.00 for inducing LORRAINE into believing that mediation was unbiased.

TOTAL DAMAGES: $10,000,000.00 x TREBLE = $30,000,000.00.

F. $103,000,000.00 for defending KING and MILLER in GC047909.

TOTAL DAMAGES: $103,000,000.00 x TREBLE = $309,000,000.00.

G. $50,000.00 for each instance of fraud by fraudulent inducement.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

H. An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

11) Damages for and/or resulting from INDUCEMENT TO COMMIT FRAUD are as follows:

 A. $100,000,000.00 for inducement of PAEGELS/TBCS to commit fraud on 3rd parties in association with GC047909.

  TOTAL DAMAGES: $100,000,000.00 x TREBLE = $3,000,000.00.

 B. $700.00 per month damages for stealing MINOR 2's SSI award for her disability.

  TOTAL DAMAGES: $700.00/mo. x TREBLE = $2,100.00/mo.

 C. $50,000.00 for each instance of inducement to commit fraud.

  TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

 D. An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

12) Damages for and/or resulting from CONVERSION are as follows:

 A. $250,000.00 for restitution in GC047909.

  TOTAL DAMAGES: $250,000.00 x TREBLE = $750,000.00.

 B. $12,600 for restitution during GC047909.

  TOTAL DAMAGES: $12,600.00 x TREBLE = $37,800.00.

 C. $2,000,000.00 for conversion of KING'S claim against INS. owed to PAEGELS/TBCS in GC047909.

  TOTAL DAMAGES: $2,000,000.00 x TREBLE= $6,000,000.00

 D. $2,000,000.00 per incident for interference and disruption of GC047909.

  TOTAL DAMAGES: $2,000,000.00 X TREBLE x $6,000,000.00 x No. of Incidents

 E. $1,100,000.00 for the conversion of money and property of an estate by HAYELAND and CORNELL.

  TOTAL DAMAGES: $1,100,000.00 x TREBLE = $3,300,000.00

 F. $1849.00 for damages derived as the result of conversion of LEWIS'S credit card.

  TOTAL DAMAGES: $1849.00 x TREBLE = $5,547.00.

 G. $3,000,000.00 for attorney fees and costs associated in conversion of GC047909.

TOTAL DAMAGES: $3,000,000.00 x TREBLE = $9,000,000.00.

H.  $50,000.00 for each instance of conversion.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

I.  An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

13)  Damages for and/or resulting from GRAND LARCENY/THEFT OF PERSONAL PROPERTY are as follows:

A.  $92,000 for theft of LEWIS'S money and property.

TOTAL DAMAGES: $92,000 x TREBLE = $276,000.00.

B.  $100,000,000.00 for theft of material recorded on TBCS/PAEGEL'S videotapes.

TOTAL DAMAGES: $100,000,000.00 x TREBLE = $300,000,000.00.

C.  $251,025.00 for theft of PAEGELS/TBCS money and property.

TOTAL DAMAGES: $251,025.00 x TREBLE = $753,075.00.

D.  $1,000,000.00 for theft of LEWIS'S Purple Heart Set.

TOTAL DAMAGES: $1,000,000.00 x TREBLE = $3,000,000.00.

E.  $10,000.00 for theft of LEWIS'S photos from his internet site.

TOTAL DAMAGES: $10,000.00 x TREBLE = $30,000.00.

F.  $2,000,000.00 theft of KING'S insurance claim FBO PAEGELS/TBCS in GC047909.

TOTAL DAMAGES: $2,000,000.00 x TREBLE = $6,000,000.00.

G.  $2,000,000.00 theft of LEWIS'S identity as a result of avoiding the payment of KING'S insurance claim in GC047909.

TOTAL DAMAGES: $2,000,000.00 x TREBLE = $6,000,000.00.

H.  $2,000,000.00 theft of LEWIS III'S identity as a result of avoiding the payment of KING'S insurance claim in GC047909.

TOTAL DAMAGES: $2,000,000.00 x TREBLE = $6,000,000.00.

I.  $2,000,000.00 theft of LORRAINE'S identity as a result of avoiding the payment of KING'S insurance claim in GC047909.

TOTAL DAMAGES: $2,000,000.00 x TREBLE = $6,000,000.00.

J. $2,000,000.00 theft of MINOR 1's identity as a result of avoiding the payment of KING'S insurance claim in GC047909.

TOTAL DAMAGES: $2,000,000.00 x TREBLE = $6,000,000.00.

K. $2,000,000.00 theft of MINOR 2's identity as a result of avoiding the payment of KING'S insurance claim in GC047909.

TOTAL DAMAGES: $2,000,000.00 x TREBLE = $6,000,000.00.

L. $2,000,000.00 theft of MINOR 3's identity as a result of avoiding the payment of KING'S insurance claim in GC047909.

TOTAL DAMAGES: $2,000,000.00 x TREBLE = $6,000,000.00.

M. $2,000,000.00 theft of MINOR 4's identity as a result of avoiding the payment of KING'S insurance claim in GC047909.

TOTAL DAMAGES: $2,000,000.00 x TREBLE = $6,000,000.00.

N. $2,000,000.00 theft of NELLE's identity as a result of avoiding the payment of KING'S insurance claim in GC047909.

TOTAL DAMAGES: $2,000,000.00 x TREBLE = $6,000,000.00.

O. $2,000,000.00 theft of SCOTT's identity as a result of avoiding the payment of KING'S insurance claim in GC047909.

TOTAL DAMAGES: $2,000,000.00 x TREBLE = $6,000,000.00.

P. $700.00/mo. of MINOR 2's SSI payments.

TOTAL DAMAGES: $700.00 x TREBLE = $2100.00/mo.

Q. $50,000.00 for each instance of conversion.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

R. An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

14) Damages for and/or resulting from GRAND THEFT OF MATERIAL are as follows:

A. $89,400 for theft of LEWIS'S money and property.

TOTAL DAMAGES: $89,400 x TREBLE = $268,200.00.

B. $100,000,000.00 for theft of material recorded on TBCS/PAEGEL'S videotapes.

TOTAL DAMAGES: $100,000,000.00 x TREBLE = $300,000,000.00.

C.   $251,025.00 for theft of PAEGELS/TBCS videotapes.

   TOTAL DAMAGES: $251,025.00 x TREBLE = $753,075.00.

D.   $1,000,000.00 for theft of LEWIS'S Purple Heart Set.

   TOTAL DAMAGES: $1,000,000.00 x TREBLE = $3,000,000.00.

E.   $10,000.00 for theft of LEWIS'S photos from his internet site.

   TOTAL DAMAGES: $10,000.00 x TREBLE = $30,000.00.

F.   $2,000,000.00 theft of KING'S insurance claim FBO PAEGELS/TBCS in GC047909.

G.   $700.00/mo. of MINOR 2's SSI payments.

   TOTAL DAMAGES: $700.00 x TREBLE = $2,100.00/mo.

H.   $50,000.00 for each instance of grand theft of material.

   TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

I.   An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

15)   Damages for and/or resulting from UNFAIR COMPETITION BY TORTIUS INTERFERENCE are as follows:

A.   $3,000,000,000.00 (3 bil.) for reasonable losses caused by Defendant's interfering with PAEGELS/TBCS prior business relationships.

   TOTAL DAMAGES: $3 bil. x TREBLE = $9 bil.

B.   $500,000.00 for interference with NELLE'S children's book.

   TOTAL DAMAGES: $500,000.00 x TREBLE = $1,500,000.00.

C.   $1,200,000.00 for interference with LEWIS'S research firm.

   TOTAL DAMAGES: $1,200,000.00 x TREBLE = $3,600,000.00.

D.   $50,000.00 for interference with LORRANE'S employment.

   TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00.

E.   $50,000.00 for interference with LEWIS III'S employment.

   TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00.

F.   $50,000.00 for each instance of unfair competition.

   TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

COMPLAINT

G.   An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

16)  Damages for and/or resulting from the UNAUTHORIZED PRACTICE OF LAW are as follows:

A.   $100,000,000.00 for the intentional mishandling and/or misleading Plaintiffs' regarding their requests for default in case GC047909.

TOTAL DAMAGES: $100,000,000.00 x TREBLE = $300,000,000.00.

B.   $5,000.00 for payments for unauthorized legal work.

TOTAL DAMAGES: $5,000.00 x TREBLE = $15,000.00.

C.   $100,000,000.00 for intentional corruption of Complaint filed in GC047909.

TOTAL DAMAGES: $100,000,000.00 x TREBLE = $300,000,000.00.

D.   $8,500 for sanctions against NELLE in GC047909.

TOTAL DAMAGES: $8,500.00 x TREBLE = $25,500.00

E.   $4,200 for sanctions against NELLE in cases 30-2012-00609008-PR-TR-CJC and 30-2012-00609235-PR-TR-CJC.

TOTAL DAMAGES: $4,200.00 x TREBLE = $12,600.00

F.   $250,000.00 for attorney fees and costs associated with PROPS0700007.

TOTAL DAMAGES: $250,000.00 x TREBLE = $750,000.00

G.   $1,600.00 for attorney fees and costs associated with BC495150.

TOTAL DAMAGES: $1,600.00 x TREBLE = $4,800.00

H.   $500.00 for fees and costs associated with SS022572.

TOTAL DAMAGES: $500.00 x TREBLE = $1,500.00

I.   $1,000,000.00 for deceptive legal practices that harmed LORRAINE in case 12001807ca.

TOTAL DAMAGES: $1,000,000.00 x TREBLE = $3,000,000.00

J.   $3,000,000.00 for deceptive legal practices that harmed MINOR 2 in case 12001807ca.

TOTAL DAMAGES: $3,000,000.00 x TREBLE = $9,000,000.00

K.  $1,000,000.00 for deceptive legal practices that harmed MINOR 1 in   case
12001807ca.

TOTAL DAMAGES:  $1,000,000.00 x TREBLE = $3,000,000.00

L.  $50,000.00 for each instance of practicing law without a license.

TOTAL DAMAGES:  $50,000.00 x TREBLE = $150,000.00 x No. of Instances

M.  $2,000,000.00 for each instance of recklessly endangering LEWIS'S life.

TOTAL DAMAGES:  $2,000,000.00 x TREBLE = $6,000,000.00.

N.  An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

17)  Damages for and/or resulting from BREACH OF CONTRACT are as follows:

A.  $250,000.00 for restitution related to monies paid by TBCS/PAEGELS.

TOTAL DAMAGES:   $250,000.00 x TREBLE = $750,000.00.

B.  $3,000,000.00 for attorney fees and costs of suit for GC047909.

TOTAL DAMAGES:  $3,000,000.00 x TREBLE = $9,000,000.00.

C.  3,000,000,000.00 (3 bil.) for lost future profits from sales of videotaped material.

TOTAL DAMAGES:   $3 bil x TREBLE = $9 bil.

D.  5,000,000,000.00 (3 bil.) for lost future profits from sales generated from exercise
assets.

TOTAL DAMAGES:   $5bil x TREBLE = $15 bil.

E.  $2769.00 for restitution related to monies paid by LEWIS.

TOTAL DAMAGES:  $2769.00 x TREBLE = $8307.00.

F.  $10,000.00 for restitution related to costs of suit paid by LEWIS.

TOTAL DAMAGES:   $10,000.00 x TREBLE = $30,000.00.

G.  Such further treble damages for breaches of contracts as yet unidentified.

H.  An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

18)  Damages for and/or resulting from BREACH OF COVENANT OF GOOD FAITH
AND FAIR DEALING are as follows:

A.  $50,000.00 for each instance of breach of this covenant by any Defendant.

TOTAL DAMAGES: $50,000.00 x TREBLE  = $150,000.00 x No. of Instances

B.  An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

19) Damages for and/or resulting from INTENTIONAL INTERFERENCE are as follows:

A.  $5 bil. for lost potential profits from exercise programs business.

TOTAL DAMAGES: $5 bil. x TREBLE = $15 bil.

B.  Such further treble damages for breaches of contracts as yet unidentified.

C.  An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

20) Damages for and/or resulting from FRAUD AND ABUSE are as follows:

A.  $250,000.00 for defrauding TBCS/PAEGELS.

TOTAL DAMAGES: $250,000.00 x TREBLE = $750,000.00

B.  $3,000,000.00 for defrauding NELLE regarding attorney fees and costs , case GCo47909.

TOTAL DAMAGES: $3,000,000.00 x TREBLE = $9,000,000.00

C.  $250,000.00 attorney fees of NELLE in PROPS0700007.

TOTAL DAMAGES: $250,000.00 x TREBLE = $750,000.00

D.  $5,000,000.00 for each instance of loss of NELLE'S reputation by any Defendant.

TOTAL DAMAGES: $5,000,000.00 x TREBLE = $15,000,000.00 x No. of Instances

E.  $50,000.00 for each instance of abuse of any Plaintiff caused by any Defendant.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

F.  $700.00 per month for defrauding MINOR 2.

TOTAL DAMAGES: $700.00 x TREBLE x No. of Months

G.  $12,769.00 for defrauding LEWIS.

TOTAL DAMAGES: $12,769.00 x TREBLE = $38,307.00.

H.  Such further treble damages for fraud and/or abuse as yet unidentified.

I.  An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

21) Damages for and/or resulting from INTERNET PIRACY are as follows:

A.  $50,000.00 for each instance of internet piracy.

TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances

B.   Such further treble damages for internet piracy as yet unidentified.

C.   An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

22)   Damages for and/or resulting from NEGLIGENCE/GROSS NEGLIGENCE are as follows:

A.   $10 bil. for negligence/gross negligence as compensation for losses and harm to any Plaintiffs.

TOTAL DAMAGES:  $10 bil. x TREBLE = $30 bil.

B.   Such further treble damages for negligence/gross negligence as yet unidentified.

C.   An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

23)   Damages for and/or resulting from GRAND THEFT BY EMBEZZLEMENT are as follows:

A.   $250,000.00 for embezzling from TBCS/PAEGELS.

TOTAL DAMAGES:  $250,000.00 x TREBLE = $750,000.00

B.   $3,000,000.00 for embezzling NELLE'S attorney services during case GCo47909.

TOTAL DAMAGES:  $3,000,000.00 x TREBLE = $9,000,000.00

C.   $50,000.00 for each additional instance of embezzlement of any Plaintiff caused by any Defendant, directly or indirectly.

TOTAL DAMAGES:  $50,000.00 x TREBLE = $150,000.00 x No. of Instances

D.   Such further treble damages for embezzlement as yet unidentified.

E.   An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

24)   Damages for and/or resulting from FALSE LIGHT INVASION OF PRIVACY are as follows:

A.   $50,000.00 per instance of invading the privacy of a Plaintiff.

TOTAL DAMAGES:  $50,000.00 x TREBLE = $150,000.00 x No. of Instances.

B.   Such further treble damages for invasion of privacy as yet unidentified.

C.   An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

25)   Damages for and/or resulting from COMPUTER FRAUD AND ABUSE are as follows:

1   A.   $50,000.00 per instance of BUSINESS INTERFERENCE by any Defendant.

2        TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances.

3   B.   Such further treble damages for harassment or IIED as yet unidentified.

4   C.   An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

5   30) Damages for and/or resulting from DEFAMATION are as follows:

6   A.   $50,000.00 per instance of DEFAMATION by any Defendant.

7        TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances.

8   B.   Such further treble damages for defamation as yet unidentified.

9   C.   An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

10  31) Damages for and/or resulting from VIOLATIONS OF DISCOVERY are as follows:

11  A.   $50,000.00 per instance of a single violation of the rules of discovery by any

12       Defendant.

13       TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances.

14  B.   Such further treble damages for violations of discovery as yet unidentified.

15  C.   An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

16  32) Damages for and/or resulting from INCOME TAX FRAUD AND EVASION are as

17      follows:

18  A.   Actual taxes owed by any Defendant for each instance of tax fraud or evasion.

19       TOTAL DAMAGES: $TBD x TREBLE x No. of Instances.

20  B.   An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

21  33) Damages for and/or resulting from MONEYLAUNDERING.

22  A.   $50,000.00 per instance of moneylaundering by any Defendant.

23       TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances.

24  B.   Such further treble damages for moneylaundering as yet unidentified.

25  C.   An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

26  34) Damages for and/or resulting from COPYRIGHT INFRINGEMENT are as follows:

27  A.   $50,000.00 per instance of copyright infringement by any Defendant.

28       TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances.

1     B.     Such further treble damages for copyright infringement as yet unidentified.

2     C.     An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

3   35)     Damages for and/or resulting from COPYRIGHT PIRACY are as follows:

4     A.     $50,000.00 per instance of copyright piracy by any Defendant.

5         TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances.

6     B.     Such further treble damages for copyright piracy as yet unidentified.

7     C.     An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

8   36)     Damages for and/or resulting from FAILURE TO PROPERLY SUPERVISE are as

9     follows:

10     A.     $1 bil. for failure to properly supervise Defendants that resulted in harm to

11         Plaintiffs and/or the public.

12         TOTAL DAMAGES: $1 bil. x TREBLE = $3 bil.

13     B.     Such further treble damages for failure to supervise as yet unidentified.

14     C.     An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

15   37)     Damages for and/or resulting from FAILURE TO SELF-REPORT are as follows:

16     A.     $1 bil. for failure to properly supervise Defendants that resulted in harm to

17         Plaintiffs and/or the public.

18         TOTAL DAMAGES: $1 bil. x TREBLE = $3 bil.

19     B.     Such further treble damages for failure to self-report as yet unidentified.

20     C.     An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

21   38)     Damages for and/or resulting from ASSAULT are as follows:

22     A.     $50,000.00 per instance of copyright piracy by any Defendant.

23         TOTAL DAMAGES: $50,000.00 x TREBLE = $150,000.00 x No. of Instances.

24     B.     Such further treble damages for assault as yet unidentified.

25     C.     An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

26   39)     Damages for and/or resulting from FALSE IMPRISONMENT/ARREST are as follows:

27     A.     $1 bil. for the false arrest and imprisonment of LEWIS, embarrassment and

28

COMPLAINT

resulting widespread internet distribution *inter alia* of false mug shot on a paid website.

        TOTAL DAMAGES: $1 bil. x TREBLE = $3 bil.

B.     An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

40)     Damages for and/or resulting from PREDATORY LENDING are as follows:

A.     $27,000.00 for predatory lending on PAEGEL'S automobile loan.

        TOTAL DAMAGES: $27,000.00 x TREBLE = $81,000.00.

B.     Such further treble damages for predatory lending as yet unidentified.

C.     An award of PUNITIVE DAMAGES as determined by the Court and/or Jury.

WHEREAS for all the foregoing reasons PLAINTIFFS pray for the following;

1.) All damages claimed as prayed,

2.) Sanctions/arrest/disbarment/loss of retirement benefits against all Defendants whose actions are governed by at least one law enforcement or regulatory authority;

3.) All charges affirmed, and

4.) Such other relief as the court deems proper

DATED:           SUBMITTED BY: _____

                         RICHARD LEWIS, in *propria persona* and *ex rel* as a Private Attorney General for Plaintiffs RICHARD LEWIS, RICHARD LEWIS III; LORRAINE LEWIS, SCOTT E. LEWIS, MINORS 1, 2, 3, 4; THOMAS W. PAEGEL; NELLE S. PAEGEL; THOMAS W.V. PAEGEL; THE BODY COMPANY SPORTS, INC.

///
///
///
///
///
///
///
///

# REQUEST FOR DECLARATORY RELIEF

**Constructive Trust**

"A constructive trust is an involuntary equitable trust created as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner." *In re Real Estate Associates Ltd. Partnership Litig.*, 223 F. Supp. 2d 1109, 1139 (C.D. Cal. 2002).

"The imposition of a constructive trust requires: (1) the existence of res (property or some interest in property); (2) the right of the complaining party to that res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to it." See *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1069 (1998).

PAEGELS/TBCS claim that a constructive trust must be imposed against those Defendants who are in possession of their property. Last seen, MILLER, KING and NIVEN were in actual possession of some 41 or so videotapes belonging solely and unquestionably to said Plaintiffs that said Defendants refused to voluntarily return. The Court is urged to immediately order their return in original condition. The videotapes include the EVENT, Frank and Sons interviews, NELLE'S interviews, NIVEN training interviews, Extreme Green videos and any others also described in detail *supra*.

CORNELL or any Defendant in possession thereof, must return LEWIS'S Purple Heart Set, two cell phones, identification and veterans administration cards (2), and his gold gentlemen's bracelet.

Furthermore, any Defendant or his/her associate who has used the foregoing material to create derivative material(s) must now divest any and all of those materials as well.

**Preliminary Injunction**

Preliminary injunction is appropriate where the party seeking a preliminary injunction must show a substantial likelihood of success on the merits of the lawsuit and a substantial threat of irreparable harm if the injunction is not granted. Defendants' racketeering included, but was not limited to, the theft of property and identities of the Plaintiffs for a two-pronged purpose: First, to acquire property for their own benefit and second to punish to the *greatest degree possible* the Plaintiffs for demanding that Defendants return their property and "cease and desist" using it. To wit,

Defendants have *inter alia* sought to: attract predators to the MINORS, ruin careers by damaging reputations, cause further financial harm Plaintiffs, get LEWIS and NELLE arrested, discredit LEWIS, separate MINORS 1 & 2 from their mother, abuse MINORS, and cause LEWIS so much emotional and physical distress with the goal of his premature death. Defendants "assault" on all of the Plaintiffs has been well-organized and has already resulted in irreparable harm.

As described in detail *supra*, ALL Plaintiffs seek a preliminary injunction against any and all Defendants and their associates precluding continued exposure of the identities of MINORS; defamation(s) of any Plaintiff; selling of Plaintiff's material; conducting on-line businesses illegally; conducting in-person businesses illegally; infringing copyrights; infringing domain names; impersonating any Plaintiff; using or deriving a benefit from any derivative(s) acquired through the use of Plaintiff's possession(s) of any kind; and any further attempts to harm or cause the harm to any Plaintiff.

Owing to the criminal nature of Defendants actions, Plaintiffs will not only succeed on the merits of their case, but continued criminal activities have already caused irreparable harm and will certainly continue to do so.

**Respectfully, Plaintiffs request an immediate constructive trust and preliminary injunction be ordered by the Court.**

DATED:            SUBMITTED BY: _____

**RICHARD LEWIS, in** *propria persona* **and** *ex rel* **as a Private Attorney General for Plaintiffs RICHARD LEWIS, RICHARD LEWIS III; LORRAINE LEWIS, SCOTT E. LEWIS, MINORS 1, 2, 3, 4; THOMAS W. PAEGEL; NELLE S. PAEGEL; THOMAS W.V. PAEGEL; THE BODY COMPANY SPORTS, INC.**

## VERIFICATION OF RICHARD LEWIS

I, Richard LEWIS, III have read the herein complaint and verify under oath that to the best of my knowledge and belief that the allegations are true and accurate.

DATED:           Submitted By: 

                                     RICHARD LEWIS

## VERIFICATION OF THOMAS W. PAEGEL

I, Thomas William Paegel, an individual and as Treasurer of The Body Company Sports, Inc. have read the herein complaint and verify under oath that to the best of my knowledge and belief that the allegations are true and accurate.

DATED: 10-19-13          By: _Thomas W. Paegel_
                              THOMAS W. PAEGEL

## VERIFICATION OF THOMAS W. V. PAEGEL

I, Thomas Wolfgang Von Paegel, an individual and as Secretary of The Body Company Sports, Inc. have read the herein complaint and verify under oath that to the best of my knowledge and belief that the allegations are true and accurate.

DATED: 10-14-2013

BY: _____
THOMAS W V PAEGEL

COMPLAINT

## VERIFICATION OF NELLE S. PARDEE

I, NELLE S. Pardee, Esq., an individual and President of The Body Company Sports, Inc. have read the herein complaint and verify, under oath that to the best of my knowledge and belief that the allegations are true and accurate.

DATED Oct. 19, 2013      By: _____

NELLE S. PARDEE

COMPLAINT

## VERIFICATION OF RICHARD LEWIS, III

I, Richard Lewis, III have read the herein complaint and verify under oath that to the best of my knowledge and belief that the allegations are true and accurate.

DATED: 9/28/13          Submitted By: _____

RICHARD LEWIS, III and PBO MINORS 3 & 4

## VERIFICATION OF LORRAINE LEWIS

I, Lorraine Lewis have read the herein complaint and verify under oath that to the best of my knowledge and belief that the allegations are true and accurate.

DATED: 7/28/13          Submitted By: _____

LORRAINE LEWIS and FBO MINORS 1 & 2

## VERIFICATION OF SCOTT E. LEWIS

I, *Scott* LEWIS have read the herein complaint and verify under oath that to the best of my knowledge and belief that the allegations are true and accurate.

DATED: 11/4/13  Submitted By: _____

SCOTT E. LEWIS

1.   LEWIS SUPPLEMENT filed August 6, 2012 in case no. GC047909.

2.   Excerpts of Transcripts in case no. GC047909.

3.   Tentative Rulings for certain hearings.

4.   CourtCall cancellations by THOMAS and VARGAS.

5.   Case: *Firestone v. Hoffman* showing WILEMAN admonished by California Appellate Court for lying to the court.

6.   Comparative analysis between original complaint filed in case no. GC047909 and WILEMAN'S corrupted version submitted by him directly to federal court.

7.   TMZ posting by CORNELL admitting to helping "KELSEY'S TEAM."

8.   Fraudulent profile on LEWIS created by WILEMAN to defame and discredit LEWIS.

9.   CORNELL admission to posting private information about MINORS.

10.  IRS letters to LEWIS where his 1040 form had been altered by hacking into the IRS database.

11.  Excerpt of Docket/Case Summary for GC047909.

12.  Notice of No-Bail arrest warrant filed by WILEMAN, that was never issued or served.

13.  Notes from LEWIS'S medical doctors and device cards.

14.  Transcription of "meet and confer" on January 16, 2012.

15.  CORNELL'S accusations against LEWIS; LEWIS'S military I.D. to refute.

16.  Demands and proof of payments by Plaintiffs.

17.  Free Press Release for TODHD Child-A-Thon fundraiser.

18.  CORNELL'S STAROPOLY "pitch" for new Associates and list of CORNELL'S "Recruits."

19.  STAROPOLY advertising materials.

20.  STAROPOLY conference call reminder re: GRAMMER.

21.  HAYELAND LinkedIn biography.

22.  GRAMMER'S TODHD ads and "launch" call invitation.

23.  MILLER/HITMAN "sales pitch" and Agreement with TBCS.

24. Variety/Williams/VARONOS/TODHD Agreement and Power of Comedy advertising.

25. MILNER/ROBINSON Agreement with TBCS/PAEGELS and payment.

26. Excerpts of GREEN/TORO Agreement with VIEWPARTNER/VARONOS & GREEN/TORO Agreement with TBCS and some cancelled checks.

27. MYEZTV description and abandonment status.

28. HITMAN/ALLEN S. MILLER advertisement.

29. VIEWPARTNER proposed Agreement with TBCS drafted by ROBINSON and signed by VARONOS. Invoice and payments.

30. Excerpt of ESTARHD terms of service and FLEMING promotional.

31. STAROPOLY ad by VARONOS and FLEMING.

32. E-mail from MILLER promising to return video tapes; digitizing invoice and payment.

33. Variety full-page ad to TODHD with CORNELL and GRAMMER featured.

34. TODHD Channel Guide.

35. Secretary of state entity searches of STAROPOLY and MERITUS documents. E-mail from BEATY with MERITUS Application.

36. News article about CORNELL and HAYELAND investigation by L.A.P.D.

37. MILLER extortion demands and notice of small claims ruling.

38. PRLog and HITMANPR.COM by MILLER/HITMAN defaming NELLE PAEGEL on the internet.

39. STAROPOLY credit card report for automatic monthly charges to Associate CORNELL.

40. Photocopy of STAROPOLY Payoneer card issued by MasterCard.

41. STAROPOLY Commission statement.

42. MILLER demand for payment via credit card to Russian National for "artwork."

43. MILLER/HITMAN PRLog on Cavi-Lipo/KING deception.

44. Assorted proof of deceptive business practices and KING'S false advertising and fraud on internet and City of San Marino.

45.     LEWIS loans of money to CORNELL.

46.     One of MILLER'S complaints to California State Bar against NELLE PAEGEL.

47.     Excerpt of MILLER'S advertisement brochure for TBCS use.

48.     CORNELL'S Military Godshots Basic Info.

49.     Excerpt of material pirated by MILLER on internet site, One Pakistan, and site of MILLER'S sales of PAEGEL'S infringed material.

50.     I.R.S. inquiry of MILLER and TORO.

51.     California State Franchise Tax Board Demand to Furnish Information about MILLER.

52.     E-mail from MILLER refusing to give tax I.D. number to NELLE PAEGEL.

53.     Discovery demands during case no. GC047909.

54.     Admission by CORNELL to child endangerment.

55.     HADDOCK/LORRAINE Child Custody and Mediation Documentation re: MINORS 1 & 2.

56.     GRAMMER/STAROPOLY advertising.

57.     GRAMMER/TODHD advertising admission.  GRAMMER name linked to ESTAR.

58.     MILLER'S internet sales of videos

59.     SCHWARTZ'S e-mail correspondence to NELLE and subsequent correspondence.

60.     Domain registrations of illegal businesses by CORNELL and HAYELAND OF, GODSHOTS.TV AND GODSHOTS.ORG at the same address.

61.     WILEMAN'S false lawsuit against PAEGELS and Steve Daubenspeck.

62.     Sampling of LEWIS'S complaints against CORNELL for Identity Theft.

63.     News article about HAYELAND and CORNELL theft investigation by Los Angeles Police Department.

64.     FARGOS' admission to stealing automobile from CarMax and false allegation against LEWIS.

65.     CORNELL copyright infringement of NELLE'S Iphone video.

66.     Applications and COUNTY COUNSEL/PLUIM'S response to attempts to disqualify

COMPLAINT                                                    Page 161

PLUIM.

67.     Sample of CORNELL'S internet selling.

68.     City of Beverly Hills Business Tax Registration and Fees List

69.     FANGARY documents showing harassment and unreasonable discovery demands.

70.     NELLE'S motion for sanctions against FANGARY.

71.     FANGARY'S e-mail demand.

72.     FANGARY'S notice of ruling and copy of minute order.

73.     DEMAND by NELLE for signed court order and cease and desist harassment and extortion.

74.     FANGARY e-mails.

75.     SHERMAN'S standing order for "prevailing parties."

76.     WARRANT NOTICE from Beverly Hills P.D. to LEWIS.

77.     Order of Protection of MINORS against CORNELL.

78.     State of California Fair Political Practices Commission 2006-2012 Form 700s submitted by COLE. HAIGHT, WELCH, SHERMAN and PLUIM.

79.     E-mail to agencies from CORNELL with false allegations against LEWIS.

80.     MILLER and KING false reporting documentation and response letter from the City of San Marino.

81.     STELL'S perjured Affidavit of Sole Survivor and payout of funds that should have been distributed to heirs under laws of intestacy.

82.     One instance of CAMPION/STELL perjured testimony about a document that did not exist.

83.     Fraudulent Bank records submitted to the court by CAMPION/STELL (A-K) and actual bank records received from the bank (L-AL).

84.     NELLE'S M.S.C. BRIEF of issues against STELL and CAMPION including a list of CAMPION'S disruptions/violations of discovery rules during STELL'S deposition.

85.     HAIGHT'S ruling, undated and unsigned.

86.     Some motions and Petition for Removal of Administrator filed by heirs not timely ruled

COMPLAINT                                                                    Page 162

on by WELCH or HAIGHT, or at all.

87.     COX'S false advertising of Event Staffing Professionals on lyrixenterprises.com.

88.     Copyright catalogue showing "Event Staffing Professionals" is not copyrighted as claimed by COX in EXHIBIT 87.

89.     Cross-promotional false advertising: KEITH'S ad for DBA: AV COMPUTER DOCTOR containing ad for COX'S Lyrix Enterprises.

90.     LEWIS'S Godaddy registrations for Lyrix Enterprises as proof of COX'S infringement.

91.     CORNELL'S Facebook containing false ad for "Recovery Godshots" book for sale and proof of infringement and other falsities.

92.     Sworn Official Deposition of Gary A. Arbaugh.

93.     WESTBROOK messages on SCOTT'S Facebook.

94.     Proof by FARGO that LEWIS paid off his vehicle.

**95.**     CARMAX payment history.

DATED:                    SUBMITTED BY: _____

**RICHARD LEWIS**, in *propria persona* and *ex rel* as a **Private Attorney General for Plaintiffs RICHARD LEWIS, RICHARD LEWIS III; LORRAINE LEWIS, SCOTT E. LEWIS, MINORS 1, 2, 3, 4; THOMAS W. PAEGEL; NELLE S. PAEGEL; THOMAS W.V. PAEGEL; THE BODY COMPANY SPORTS, INC.**